LATHAM & WATKINS LLP
Steven N. Feldman (*CA Bar No. 281405*)
  steve.feldman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

LATHAM & WATKINS LLP
David K. Callahan (*pro hac vice pending*)
  david.callahan@lw.com
Matthew W. Walch (*pro hac vice pending*)
  matthew.walch@lw.com
Sophia L. Méndez (*pro hac vice pending*)
  sophia.mendez@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767

*Attorneys for Plaintiff*
*Scilex Pharmaceuticals Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCILEX PHARMACEUTICALS INC., | CASE NO. 21-CV-1280 |
| Plaintiff, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| SANOFI-AVENTIS U.S. LLC and HISAMITSU AMERICA, INC., | |
| Defendants. | |

Plaintiff Scilex Pharmaceuticals Inc. ("Scilex"), by and through its attorneys, alleges as follows for its complaint against defendants Sanofi-Aventis U.S. LLC ("Sanofi") and Hisamitsu America, Inc. ("Hisamitsu") (collectively, "Defendants"):

## NATURE OF THE ACTION

1.      Through this action, Scilex seeks an award of damages and the entry of injunctive relief to address Defendants' ongoing false and deceptive advertising of their respective over-the-counter ("OTC") lidocaine patch products, namely, Sanofi's IcyHot® Lidocaine Patch, Aspercreme® Lidocaine Patch and Aspercreme® XL Lidocaine Patch, and Hisamitsu's Salonpas® Lidocaine Pain Relieving Gel-Patch (collectively, the "OTC Lidocaine Patches").

2.      Lidocaine is a topical anesthetic that is used to treat pain by depressing sensory receptors in the nerve endings in the skin, which prevents pain signals from reaching the brain. The United States Food and Drug Administration ("FDA") first approved lidocaine for topical use in the early 1950s.

3.      In 1983, the FDA published the Tentative Final Monography for External Analgesic Drug Products for Over-the-Counter Human Use, 48 Fed. Reg. 5852-01 (Feb. 8, 1983) ("TFM"), which provides permissible language for the labeling, ingredients, and doses for OTC external analgesic products, including those containing 0.5% to 4% lidocaine.

4.      In 1999, the FDA approved the first transdermal lidocaine patch, in which 5% topical lidocaine is included in a pressure-sensitive adhesive material that attaches to the skin. The patches are indicated by the FDA only for relief of pain associated with post-herpetic neuralgia ("PHN"), a complication of shingles.  The FDA has since approved other prescription-only lidocaine patch products to treat PHN pain.  While the FDA has approved these products to treat the symptoms of PHN and to provide temporary pain relief, many patients have experienced various problems with their adhesion and efficacy.

5.      These problems led Scilex to develop its ZTlido® (lidocaine topical system) 1.8% product, a patch containing 1.8% lidocaine by weight, which is dissolved in Scilex's proprietary single-layer nonaqueous polymer matrix system, allowing for a thinner patch that both provides superior adhesion to the skin over patches containing 5% lidocaine by weight, and efficiently delivers lidocaine to the area of pain.

6.      Extensive scientific studies have demonstrated both the bioequivalence of the 1.8% lidocaine in Scilex's ZTlido® patch to the 5% lidocaine in other companies' FDA-

LATHAM&WATKINS LLP

approved, prescription-only lidocaine patches, as well as the superiority in adhesion of Scilex's ZTlido® patch over other companies' FDA-approved, prescription-only 5% lidocaine patches. The results of these studies show that Scilex's ZTlido® patch delivers the same amount of lidocaine to the area of pain as other companies' prescription-only 5% lidocaine patches.  In addition, the superior adhesion of Scilex's ZTlido® patch allows it to adhere to the skin for a full 12 hours and provide pain relief for 24 hours.

7.     In 2018, the FDA approved Scilex's ZTlido® product to treat pain associated with PHN.  However, doctors routinely prescribe Scilex's ZTlido® product for off-label indications, such as general neuropathic pain, including back and spinal pain.  While ZTlido® can be used for such off-label indications, Scilex is precluded by FDA regulations from advertising its product for such indications.

8.     In 2003, the FDA issued a proposed rule to amend the TFM to explicitly exclude patches and to classify OTC patches containing analgesic ingredients as Category III products, for which "more data [is] needed" to determine if the products are "generally recognized as safe and effective."  *See* External Analgesic Drug Products for Over-the-Counter Human Use; Reopening of the Administrative Record and Amendment of Tentative Final Monograph, 68 Fed. Reg. 42324-01, 42326 (July 17, 2003).  Category III products may only be marketed and sold following FDA review and approval of the product and its labeling through a New Drug Application ("NDA") or Abbreviated New Drug Application ("ANDA").

9.     In 2016, despite neither complying with the TFM labeling requirements for products containing Category I ingredients nor undergoing the FDA review and approval process for products containing Category III ingredients, Defendants began marketing, distributing and selling their OTC Lidocaine Patches containing 4% lidocaine by weight under the guise of being compliant with FDA regulations.  However, Defendants' labeling and marketing of their OTC Lidocaine Patches not only fail to comply with the FDA regulations for OTC lidocaine-containing drug products, but are independently false and deceptive.

10.     Using glossy advertisements featuring Shaquille O'Neil and "Dr. Bob" Arnot, among others, along with other highly deceptive packaging and online marketing, Defendants

1   have embarked on an advertising blitz propagating claims that their OTC products:  (a) contain

2   and/or deliver to the area of pain the maximum amount of lidocaine available in patch form; (b)

3   block and/or numb pain; (c) target and/or desensitize aggravated nerves; (d) target more pain

4   receptors than other lidocaine patch products; (e) adhere to the skin and provide pain relief for

5   periods of 8 or 12 hours, depending on the product; (f) are indicated by the FDA for treatment of

6   nerve and neuropathic pain, including back and spinal pain; and/or (g) are FDA-approved,

7   prescription products.

8   11.   In addition to lacking any FDA review or approval for their products' marketing

9   and labeling, Defendants' advertising claims are inaccurate and misleading.  Defendants' false

10   and deceptive claims have duped consumers and others into purchasing Defendants' OTC

11   Lidocaine Patches, rather than prescription lidocaine patches produced by Scilex and other FDA-

12   approved, prescription-only lidocaine patch producers.  Indeed, the FDA has already recognized

13   that several of the claims Defendants are making with respect to their OTC Lidocaine Patches

14   are misleading to consumers.  And cumulatively, Defendants' claims give the false impression

15   that Defendants' OTC Lidocaine Patches are superior, or equivalent, in efficacy to FDA-

16   approved, prescription-only lidocaine patches, such as those offered by Scilex.

17   12.   By making such false and misleading advertising claims through various

18   channels—including their product packaging, online content, social media, and television

19   advertisements—Defendants have achieved their intended goal of increasing their sales and

20   profits by deceiving consumers regarding the nature, characteristics and efficacy of Defendants'

21   OTC Lidocaine Patches, which directly compete with Scilex's ZTlido® patch products.

22   Defendants' unfair and deceptive practices have also caused Scilex to experience significant

23   damages, including an adverse impact on the sales of its ZTlido® products and a diminution of

24   goodwill in its ZTlido® mark, as Defendants have deceived consumers into buying Defendants'

25   patches instead of prescription patches, such as ZTlido®.

26   13.   Based on the foregoing conduct, as alleged in more detail below, Scilex seeks an

27   award of damages against Defendants and the entry of injunctive relief enjoining further

28   dissemination of Defendants' false and deceptive advertising.  Such relief is appropriate because

LATHAM&WATKINS LLP

4

Defendants have violated Sections 43(a)(1)(A) and 43(a)(1)(B) of the Lanham Act (15 U.S.C. §§ 1125(a)(1)(A) & 1125(a)(1)(B)), California's False Advertising Law (Cal. Bus. & Prof. Code §17500) ("FAL"), and California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) ("UCL").

## JURISDICTION AND VENUE

14.    The Court has jurisdiction over the subject matter presented by this Complaint pursuant to 28 U.S.C. § 1331 because it includes a claim of false and deceptive advertising under the Lanham Act (15 U.S.C. §§ 1051, *et seq*.), including 15 U.S.C. § 1121, which expressly provides that claims arising thereunder are subject to federal subject matter jurisdiction.

15.    Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over Scilex's state law claims, in that those claims are joined with substantial and related claims under the Lanham Act.  This Court also has supplemental jurisdiction over Scilex's state law claims pursuant to 28 U.S.C. § 1367(a), in that all of Scilex's claims arise out of a common nucleus of operative facts.

16.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Scilex's claim occurred in this district, as Defendants conduct substantial business within California, including the marketing, distribution, and sale of their respective products in California, and because Scilex's claims arise from the marketing, distribution and sale of Defendants' respective products in California.

## PARTIES

17.    Plaintiff Scilex is a Delaware corporation, with its principal place of business at 960 San Antonio Road, Palo Alto, CA 94303.  Plaintiff Scilex markets, distributes, and sells the FDA-approved, prescription-strength topical analgesic self-adhesive patch under the brand name ZTlido®.  ZTlido® is manufactured by Oishi Koseido Co., Ltd.

18.    Defendant Sanofi is a Delaware corporation, with its principal place of business at 55 Corporate Drive Bridgewater, New Jersey 08807.  Defendant Sanofi markets, distributes, and sells the IcyHot® Lidocaine Patch, the Aspercreme® Lidocaine Patch, and the Aspercreme® Lidocaine Patch XL, which are manufactured by Chattem, Inc.  Defendant Sanofi markets,

1   distributes and sells the aforementioned products to California citizens through drug stores, mass

2   retailers, and online retailers.

3       19.     Defendant Hisamitsu is a California corporation, with its principal place of

4   business at 100 Campus Drive, Suite 117, Florham Park, New Jersey 07932.  Defendant

5   Hisamitsu markets, distributes, and sells the Salonpas® Lidocaine Pain Relieving Gel-Patch,

6   which is manufactured by its parent company, Hisamitsu Pharmaceutical Co., Inc.  Defendant

7   Hisamitsu markets, distributes and sells the Salonpas® Lidocaine Pain Relieving Gel-Patch to

8   California citizens through drug stores, mass retailers, and online retailers.

9                                    **FACTUAL BACKGROUND**

10      **A.      Scilex's Prescription ZTlido® Patch**

11      20.     ZTlido® is a prescription topical analgesic, self-adhesive patch.  The patch

12   contains lidocaine—a local anesthetic and topical analgesic—in the amount of 1.8% by weight,

13   or 36 mg per patch.  The ZTlido® patch is administered by applying the patch to intact skin

14   covering the painful area.  The patch design is intended to provide improved adhesion compared

15   to other prescription lidocaine patches, which contain 5% lidocaine by weight.  Scilex has an

16   exclusive license to market, distribute, and sell ZTlido® within the United States.

17      21.     The FDA approved a New Drug Application for ZTlido® on February 28, 2018

18   under § 505(b) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(b)), for the relief

19   of pain associated with PHN.

20      22.     PHN is a syndrome of persistent neuropathic pain, which frequently follows an

21   outbreak of shingles (also known as herpes zoster rash).  Shingles is a painful vesicular skin rash

22   caused by the reactivation of latent varicella zoster virus—the same virus that causes

23   chickenpox.

24      23.     Pain associated with PHN may include itching, burning, aching, or throbbing as a

25   result of damaged nerve fibers and can last for as little as three months or as long as several

26   years.  Approximately one million people develop shingles annually, and 5-20% of those

27   individuals will develop PHN.

28

24.     The FDA-approved product labeling for ZTlido® provides that up to three patches may be applied for up to 12 hours within a 24-hour period.  Patches may be cut into smaller sizes with scissors before the adhesive backing is peeled away.  A user may wear clothing over the area of application.

25.     In addition to its indicated use, ZTlido® is often prescribed for off-label uses, including general neuropathic pain, such as back and spinal pain.  There is evidence that prescription-strength lidocaine patches, such as ZTlido®, can be effective as first-line therapy in the management of neuropathic pain.  A 2012 study found that over 82% of usage of prescription lidocaine patches was off-label.

26.     Experts in the field have concluded that the therapeutic effectiveness of the ZTlido® patch stems from its proprietary single-layer nonaqueous polymer matrix technology that delivers a controlled dose of lidocaine through the skin to provide an analgesic effect.  This proprietary formulation allows ZTlido® to provide the same efficacy as prescription 5% lidocaine patches with less lidocaine by weight, allowing for a thinner patch with superior adhesion to the skin.  Formulations that deliver less lidocaine through the skin have not been shown to be as effective (or more effective) than ZTlido®.

27.     The superior adhesion of ZTlido® over other lidocaine patches allows it adhere to the body for a full 12 hours and provide pain relief for 24 hours, and allows ZTlido® patches to continue to work and have the same efficacy during physical exercise.  ZTlido®'s superior adhesion also reduces the incidence of possible negative consequences of patch detachment, including the dangers posed by consumption of patches by children or pets and the cost of replacement patches.

28.     ZTlido® is a Tier 2 or Tier 3 product on the formularies of many managed health care organizations in the U.S., meaning that many patients prescribed ZTlido® can obtain it with only a reasonable co-pay.

**B.      FDA Regulations Applicable to Defendants' OTC Lidocaine Patches**

29.     The FDA regulates the sale and advertising of all drugs, whether available only by prescription or OTC.  Under the FDA's current statutory and regulatory framework, an OTC

drug product can enter the market in one of three ways: (i) by complying with the applicable monograph; (ii) as the subject of an FDA-approved NDA or, in the case of generic approval, an ANDA; or (iii) through an FDA-approved prescription-to-OTC switch.  Obtaining FDA approval through the second and third options requires extensive clinical studies or, at a minimum, a finding by the FDA that a generic drug is bioequivalent to an already approved drug.

30.     Currently, drug products containing 0.5% to 4% lidocaine, such as Defendants' OTC Lidocaine Patches, are governed by the FDA's TFM for external analgesic products.  48 Fed. Reg. 5852-01 (Feb. 8, 1983).  The TFM provides that such products containing lidocaine as the active ingredient are indicated only for the temporary relief of pain and itching associated with minor burns, sunburn, minor cuts, scrapes, insect bites or minor skin irritations.  *Id.* at 5863. The TFM states that "the labeling of the product . . . is limited" to this indication.  *Id*.

31.     In its 2003 proposed rule, the FDA proposed adding the following language to the TFM for external analgesic products until the FDA could determine whether patches containing analgesic ingredients, such as lidocaine, were "generally recognized as safe and effective": "The active ingredients of the product consist of any of the following, within the established concentration for each ingredient, **but not for use in a patch**, plaster, or poultice dosage form." 68 Fed. Reg. 42324-01, 42325-26 (July 17, 2003) (emphasis added).

32.     The FDA proposed this amendment because it had become aware that it needed further data on "[t]he safe and effective concentration of the drug ingredient(s)," "how often the plaster or poultice needs to be changed for effective use," and "[t]he frequency of application that is considered safe and effective," among other areas of concern with external analgesic patches.  *Id.* at 42325.  The FDA further noted that it "is not aware of sufficient data to classify any OTC external analgesic active ingredient in a patch, plaster, or poultice dosage form as Category I."  *Id*.  Category I products are those which have been determined by the FDA to be generally accepted as safe and effective and can be marketed without FDA review and approval by complying with the applicable monograph.

33.     Due to the concerns regarding safety and efficacy, the FDA proposed classifying external analgesic patches as Category III products, which may only be marketed and sold

1   following FDA testing, review, and approval of the product through the NDA or ANDA process.

2   *Id*. at 42325-26.

3        34.     As detailed below, Defendants' marketing and sale of their OTC Lidocaine

4   Patches does not comply with either the TFM or the FDA requirements for review and approval

5   of OTC drug products offered outside an applicable TFM.  Given that Defendants' marketing

6   and labeling of their OTC Lidocaine Patches fails to comply with either the FDA's TFM or its

7   proposed rule, Scilex submitted a Citizen Petition under 21 U.S.C §§ 321, 352, and 355 and 21

8   C.F.R. § 10.30 in December 2018 to request that the Commissioner of the FDA finalize the 2003

9   proposed amendment to the TFM and remove any OTC lidocaine-containing patches that lack

10   FDA approval from the market, among other requests.  Scilex noted in its petition that OTC

11   lidocaine patch producers, such as Defendants, have been marketing and selling OTC lidocaine

12   patch products for several years without complying with the TFM or undergoing FDA review

13   and approval, which presents both safety and efficacy concerns.  Scilex's petition is currently

14   pending, and Defendants' noncompliant and misleading marketing of their OTC Lidocaine

15   Patches is ongoing.  With this Complaint, Scilex addresses the false and deceptive nature of the

16   Defendants' advertising claims under federal and state law, claims that are independent of those

17   addressed in Scilex's Citizen Petition.

18        **C.**     **Defendants' Misleading Marketing Campaign**

19        35.     Defendants' packaging for and other marketing of their respective products

20   contain a variety of false and deceptive claims aimed at enticing consumers to purchase

21   Defendants' OTC Lidocaine Patches instead of prescription lidocaine patches, such as Scilex's

22   ZTlido® product.

23

24

25

26

27

28

1. **Sanofi's False and Deceptive Advertisements Regarding Its IcyHot® Lidocaine Patch**

36.     Defendant Sanofi's packaging for its IcyHot® Lidocaine Patch makes the following claims with respect to the product in bold, all caps lettering: "MAX STRENGTH LIDOCAINE" and "DESENSITIZES AGGRAVATED NERVES."  The packaging portrays additional claims that the product: "targets more pain receptors," "blocks pain signals," and "numbs away pain," providing "targeted relief" for the "back" and "neck."  The packaging further claims that the product is "fast acting" and that consumers may "use 1 patch for up to 12 hours."

  

37.     Defendant Sanofi, on its product webpage for the IcyHot® Lidocaine Patch, claims that the product "relieve[s] pain fast," "targets more pain receptors," "numbs away pain," and "temporarily relieves pain caused by [the] back" and "neck," in addition to the claims depicted on an image of the product's packaging.

38.     Defendant Sanofi, in the "Frequently Asked Questions" page accessible via a link on its product webpage for the IcyHot® Lidocaine Patch, claims that "Icy Hot pain relief patches are designed to work on muscle aches, strains, sprains, simple backache, and bruises."

LATHAM&WATKINSLLP

COMPLAINT & DEMAND
FOR JURY TRIAL
CASE NO. 21-CV-1280

39.     Defendant Sanofi reiterates these false and deceptive claims in its television commercials featuring ex-NBA player Shaquille O'Neal, wherein Defendant Sanofi shows various individuals suffering from back pain and Mr. O'Neal asks viewers: "Ready to take control of your back pain?"  Defendant Sanofi then claims in bold, all caps lettering on the screen that the product "DESENSITIZES NERVES," over an image of the patch on an individual's lower back.  Defendant Sanofi makes additional claims that the IcyHot® Lidocaine Patch "desensitizes aggravated nerves with the max strength lidocaine available."



**2.     Sanofi's False and Deceptive Advertisements Regarding Its Aspercreme® Lidocaine Patch and Aspercreme® Lidocaine XL Patch**

40.     Defendant Sanofi's packaging for its Aspercreme® Lidocaine Patch and Aspercreme® Lidocaine XL Patch include the following claims with respect to its products, in bold, all caps lettering: "FAST ACTING," "MAX STRENGTH," "NUMBS AWAY PAIN," "TARGETS NERVES," and "TARGETED NO MESS RELIEF" for the "BACK" and "NECK."

  

41.     Defendant Sanofi, on its product webpages for the Aspercreme® Lidocaine Patch and Aspercreme® Lidocaine Patch XL, claims that both products offer "targeted, maximum

LATHAM&WATKINS LLP

1   strength pain relief to numb pain away" and "temporarily relieve[] minor pain associated with

2   [the] back" and "neck," in addition to the claims on images of the products' packaging.

3   Defendant Sanofi further claims that consumers may "[u]se 1 patch for up to 12 hours."

4       42.    Defendant Sanofi reiterates these false and deceptive claims in its print

5   advertisements, wherein Defendant Sanofi claims that the Aspercreme® Lidocaine Patch

6   provides the "MAX STRENGTH LIDOCAINE" and is "fast acting."

7       43.    Defendant Sanofi repeats these false and deceptive claims in its television

8   commercials, wherein Defendant Sanofi claims in bold lettering on the screen that the product

9   "Desensitizes Aggravated Nerves," over an image of the product on an individual's lower back.

10  Defendant Sanofi makes additional claims that its Aspercreme Lidocaine Patch "quickly

11  desensitizes aggravated nerves to block pain for maximum strength relief" and can "Relieve the

12  nerves. Stop the pain."

13          **3.    Hisamitsu's False and Deceptive Advertisements Regarding Its
                    Salonpas® Pain Relieving Gel-Patch**

14      44.    Defendant Hisamitsu's packaging for its Salonpas® Lidocaine Pain Relieving Gel-

15  Patch makes the following claims with respect to the product, in bold, all caps lettering:

16  "MAXIMUM STRENGTH" with "IMPROVED ADHESION."  The packaging further claims

17  that the product "desensitize[s] aggravated nerves for temporary relief of pain [in] back, neck,

18  shoulders, knees & elbows," and provides "numbing relief."  The packaging also claims that

19  consumers may "apply [the product] for 8 hours."

 

LATHAM&WATKINS LLP

45.     Defendant Hisamitsu, on its product webpage for the Salonpas® Lidocaine Pain Relieving Gel-Patch, makes the following claims with respect to the product: "desensitizes aggravated nerves" and "provides numbing relief," in addition to those displayed on an image of the product's packaging.

46.     Defendant Hisamitsu makes further misleading statements in its television commercials, claiming that its Salonpas® Lidocaine Pain Relieving Gel-Patch product "blocks pain receptors for effective, non-addictive relief."  Defendant Hisamitsu's commercials feature "Dr. Bob" Arnot, misleadingly indicating to consumers that its product is an FDA-approved or prescription product.  In at least one commercial, which is accessible via a link on the Salonpas® Lidocaine Pain Relieving Gel-Patch product webpage, Defendant Hisamitsu depicts Dr. Bob wearing a white lab coat in a doctor's office, telling an apparent patient that the Salonpas® Lidocaine Pain Relieving Gel-Patch "blocks pain receptors for effective, non-addictive relief" and recommending the product for the patient's back pain.  A screen shot of that advertisement is shown below.



47.     Defendant Hisamitsu repeats these false and deceptive claims in its social media. In an October 16, 2017 blog post titled "Frequently Asked Questions with Dr. Bob Arnot," which is found on Hisamitsu's website for Salonpas®, "Dr. Bob" states that "many doctors prescribe off-label uses for [prescription] lidocaine patches including aggravated nerve pain in the back, neck, shoulders, knees and elbows," and claims that the Salonpas® Lidocaine Pain Relieving Gel-Patch has "4% of lidocaine which I'd argue **is close to the 5% lidocaine patch**

you would get with a prescription" and that "Salonpas® **followed the same principles used for the Rx (5% Lidocaine) version**, making it the same size and using the same hydrogel technology as its Rx cousin. **The only change they made was to improve the price** so as to make the product more accessible to the general public." (emphasis added). The same claims are found in a January 9, 2017 blog post on Defendant Hisamitsu's website for Salonpas®, titled "Dr. Bob Arnot on Keeping Healthy and Active with Salonpas."

48.  Defendant Hisamitsu further compares its product to prescription-strength lidocaine patches in an October 2, 2017 blog post on its website for Salonpas®, titled "Lidocaine for Pain Relief." Defendant Hisamitsu claims that "Medicare and many insurance companies are no longer providing coverage for off-label use of lidocaine patches. A monthly supply of lidocaine patches can cost hundreds of dollars[,]" and again represents that its Salonpas Lidocaine Pain Relieving Gel-Patch "us[es] the same size and hydrogel technology as the prescription lidocaine patch."

#### 4.  The False and Deceptive Nature of Defendants' Claims

49.  Defendants' marketing of their OTC Lidocaine Patches misleads managed health care companies, pharmacies, doctors and consumers regarding the characteristics and efficacy of Defendants' products.

50.  Cumulatively, Defendants' claims misleadingly imply that their OTC Lidocaine Patches have FDA approval for certain indications, and are superior, or at least equivalent, in efficacy and results to prescription lidocaine patches, such as Scilex's ZTlido® patch, and that the products are otherwise substantially similar or identical in all material respects.

51.  Defendants have targeted consumers of prescription lidocaine patches, such as ZTlido® patches, through their false and misleading advertisements, and in doing so have secured substantial sales to the detriment of Scilex as a result of their misconduct. On information and belief, Defendant Sanofi's 2019 U.S. sales for its IcyHot® and Aspercreme® products exceeded $155 million and $106 million, respectively. On information and belief, Defendant Hisamitsu's 2019 U.S. sales for its Salonpas patch products exceeded $125 million.

52.     Defendants have implemented their marketing plan through the following statements, conveying false and deceptive messages to consumers:

| Defendants' Statements and Sources | False/Misleading Messages |
| --- | --- |
| • *"MAX STRENGTH LIDOCAINE"* (IcyHot® patch packaging)<br><br>• *"max strength lidocaine available"* (IcyHot® patch commercial)<br><br>• *"MAX STRENGTH"* (Aspercreme® patches packaging)<br><br>• *"maximum strength pain relief"* (Aspercreme® patches webpages)<br><br>• *"MAX STRENGTH LIDOCAINE"* (Aspercreme® patches print advertisements)<br><br>• *"maximum strength relief"* (Aspercreme® patches commercials)<br><br>• *"MAXIMUM STRENGTH"* (Salonpas® patch packaging) | • Falsely states that Defendants' products contain and deliver to the area of pain the maximum amount of lidocaine available in patch form<br><br>• Misleadingly implies that Defendants' products are superior, or at least equivalent, in efficacy and results to prescription-strength lidocaine patch products |
| • *"use 1 patch for up to 12 hours"* (IcyHot® patch packaging)<br><br>• *"Use 1 patch for up to 12 hours"* (Aspercreme® patch product webpage)<br><br>• *"apply for 8 hours"* (Salonpas® patch packaging) | • Misleadingly implies that Defendants' products continuously adhere to the body and continuously relieve pain for the specified amount of time |
| • *"blocks pain signals"* (IcyHot® patch packaging)<br><br>• *"numbs away pain"* (IcyHot® patch packaging and product webpage)<br><br>• *"block pain"* (Aspercreme® patches commercials)<br><br>• *"numb pain away"* and *"NUMBS AWAY PAIN"* (Aspercreme® patches packaging and product webpages)<br><br>• *"numbing relief"* (Salonpas® patch packaging and product webpage)<br><br>• *"blocks pain receptors"* (Salonpas® patch commercials) | • Misleadingly implies that Defendants' products completely block pain receptors, eliminate responses to painful stimuli, and provide a numbing sensation |

| Defendants' Statements and Sources | False/Misleading Messages |
|---|---|
| • *"Targets More Pain Receptors"* (IcyHot® patch packaging)<br><br>• *"DESENSITIZES AGGRAVATED NERVES"* and *"DESENSITIZES NERVES"* (IcyHot® patch packaging and commercials)<br><br>• *"TARGETS NERVES"* (Aspercreme® patches packaging)<br><br>• *"Desensitizes Aggravated Nerves," "quickly desensitizes aggravated nerves,"* and *"Relieve the nerves. Stop the pain."* (Aspercreme® patches commercials)<br><br>• *"desensitizes aggravated nerves"* (Salonpas® patch packaging and product webpage) | • Misleadingly implies that Defendants' products provide pain relief by desensitizing nerves and/or pain receptors<br><br>• Misleadingly implies that Defendants' products contain ingredients that target nerves<br><br>• Misleadingly implies that Defendants' products are indicated and FDA-approved for treatment of nerve pain |
| • *Television commercial containing individual in white lab coat, referred to as "Dr. Bob" in a doctor's office and labeled as "Bob Arnot, MD, Former Chief Medical Correspondent," recommending Salonpas® product to apparent patient who asks what he should use for back pain* (Salonpas® patch television commercial)<br><br>• *"[product has] 4% of lidocaine which I'd argue is close to the 5% lidocaine patch you would get with a prescription"* (Salonpas® patch social media)<br><br>• *"Salonpas® followed the same principles used for the Rx (5% Lidocaine) version, making it the same size and using the same hydrogel technology as its Rx cousin. The only change they made was to improve the price so as to make the product more accessible to the general public."* (Salonpas® patch social media) | • Misleadingly implies that Defendants' products are FDA-approved or prescription-only products, and are indicated for the treatment of neuropathic and musculoskeletal pain, including back and spinal pain<br><br>• Misleadingly implies that Defendants' products contain and deliver the same amount of lidocaine to the area of pain as prescription patch products<br><br>• Misleadingly implies that Defendants' products and prescription patch products are interchangeable<br><br>• Misleadingly implies that Defendants' products are equivalent in efficacy and results to prescription products |

| Defendants' Statements and Sources | False/Misleading Messages |
|---|---|
| • *"Targeted relief"* for *"back"* and *"neck"* (IcyHot® patch packaging)<br><br>• *"Temporarily relieves pain caused by back"* and *"neck"* (IcyHot® patch product webpage)<br><br>• *"Icy Hot pain relief patches are designed to work on muscle aches, strains, sprains, simple backache, and bruises."* (IcyHot® patch product FAQs)<br><br>• *"TARGETED NO-MESS RELIEF [for] BACK [and] NECK"* (Aspercreme® patches packaging)<br><br>• *"Temporarily relieves minor pain associated with back [and] neck"* (Aspercreme® patches product webpages)<br><br>• *"for temporary relief of pain [in] back, neck, shoulders"* (Salonpas® patch packaging)<br><br>• *Television commercial recommending Salonpas® product to apparent patient who asks what he should use for back pain* (Salonpas® patch television commercial) | • Misleadingly implies that Defendants' products are indicated by the FDA for the treatment of neuropathic and musculoskeletal pain, including back and spinal pain |
| • *"fast acting"* (IcyHot® patch packaging)<br><br>• *"relieve[s] pain fast"* (IcyHot® patch product webpage)<br><br>• *"FAST ACTING"* (Aspercreme® patches packaging and print advertisements)<br><br>• *"quickly desensitizes aggravated nerves"* (Aspercreme® patches commercials) | • Misleadingly implies that Defendants' products provide immediate pain relief |

53.     Defendants' false and misleading advertising causes consumers to be misled and to choose Defendants' products over FDA-approved lidocaine patches, including Scilex's ZTlido® product, causing Scilex significant harm.

54.     ZTlido® contains 1.8% lidocaine dissolved into a single-layer nonaqueous polymer matrix system—a system which has been shown through clinical testing to deliver the

same amount of lidocaine to the area of pain as prescription-only 5% lidocaine patches, which use a multi-layer hydrogel matrix.

55.     Defendants represent that their patches, like prescription 5% lidocaine patches, use a hydrogel matrix to transfer lidocaine to the skin.  However, Defendants' patches only include 4% lidocaine.  Defendants marketing claims that their products deliver the "maximum strength lidocaine" are false and misleading, as their patches contain less lidocaine than prescription patches.

56.     Moreover, Defendants "maximum strength" and "fast acting" claims are misleading because their OTC Lidocaine Patches use a thicker patch matrix than ZTlido®, which results in less effective delivery of the lidocaine to the area of pain, meaning Defendants' products deliver a lower amount of lidocaine to the area of pain and require a longer amount of time for that delivery.  Lidocaine patch studies have found that "topical system delivery technologies have advanced such that product strength and drug load are not necessarily indicators of biopharmaceutical efficiency, and thus, can be misleading and may contribute to physician, pharmacy, and patient confusion over strength and dose."

57.     On information and belief, consumers using Defendants' OTC Lidocaine Patches have experienced considerable problems with patch adhesion and patch detachment prior to the 8 to 12 hours for which Defendants claim their patches adhere.  This is critical because, as the FDA has noted, when a transdermal drug delivery product, such as Defendants' OTC Lidocaine Patches, becomes even "partially detached, there may be uncertainty about the resulting drug delivery profile and, hence, uncertainty about the rate and extent of drug absorption." Defendants' advertising claims present a false message that their OTC Lidocaine Patches both adhere to the skin for a full 8-12 hours and deliver adequate amounts of lidocaine to provide "maximum strength" pain relief for a full 8-12 hours.

58.     In addition, under the FDA's TFM for external analgesic products containing lidocaine, the FDA declined to grant approval for external analgesic products to be permitted to state on product labels that these products "numb[]" pain or "completely block[] pain receptors." 48 Fed. Reg. 5852-01, 5860-61 (Feb. 8, 1983).  The FDA concluded that "[c]laims regarding

numbness or similar claims, such as completely blocking pain receptors or abolishing responses to painful stimuli, may be misleading to consumers because the manner in which external analgesic drug products are used determines whether they cause numbness or not." *Id*.

59.     Defendants continue to include statements that their OTC Lidocaine Patches "numb[] away pain" and "block[] pain receptors" both on their product packaging and in their other advertisements, even though the FDA has found these statements to be misleading to consumers.

60.     The FDA's TFM further provides that drug products containing 4% lidocaine or less are indicated only for "temporary relief" of "pain", "itching", or "pain and itching" "associated with" "minor burns," "sunburn," "minor cuts," "scrapes," "insect bites," or "minor skin irritations."  48 Fed. Reg. 5852-01, 5868 (Feb. 8, 1983).

61.     Nothing on Defendants' packaging indicates to consumers that the products are only approved for these indications.  The terms "minor burns," "sunburn," "minor cuts," "scrapes," "insect bites," or "minor skin irritations" do not appear at all on Defendants' packaging, except as warnings related to adverse reactions a consumer might experience from using the OTC Lidocaine Patches.

62.     Instead, ignoring the FDA's permitted indications, Defendants represent that their OTC Lidocaine Patches provide pain relief from "aggravated nerves," "back, neck, [and] shoulder[]" pain, and "muscle aches, strains, sprains, simple backache," the same uses for which ZTlido® is regularly prescribed off-label.  Defendants' advertisements misleadingly imply that their OTC Lidocaine Patches have been indicated or approved by the FDA for treatment of nerve, neuropathic, and musculoskeletal pain, including back and spinal pain.  None of these claims is accurate.

63.     Given the absence of any publicly available records from the FDA regarding Defendants' OTC Lidocaine Patches, Scilex is informed and believes that neither of Defendants has sought FDA approval of their respective OTC Lidocaine Patch products or their marketing or labeling, whether as a new drug through an NDA, as a generic through an ANDA, or through a prescription-to-OTC switch.

64.    In addition, due to the lack of any records of FDA approval for Defendants' OTC Lidocaine Patch products, and the lack of any publicly available studies or testing on Defendants' OTC Lidocaine Patches, Scilex is informed and believes and therefore alleges that neither of Defendants has either performed, nor had any third party perform, scientific testing or clinical trials to determine the accuracy of the marketing statements Defendants have made regarding effectiveness, method of effectiveness, duration of effectiveness, strength of lidocaine, or results portrayed in their marketing of their respective OTC Lidocaine Patch products.

## CAUSES OF ACTION

### Count I – False and Misleading Representations Regarding FDA Approval
### (15 U.S.C. § 1125(a)(1)(A))

65.    Scilex incorporates and realleges by references the allegations above, as if fully set forth herein.

66.    Defendants' marketing and advertising of their OTC Lidocaine Patch products, which directly compete with Scilex's ZTlido® product, constitute false and misleading representations under the Lanham Act.

67.    Defendants have made, and continue to make, false and misleading statements and claims about their OTC Lidocaine Patch products by representing to current and potential consumers—in advertising material and on their products' packaging—that the products are indicated by the FDA for treatment of nerve and neuropathic pain, including back and spinal pain, and/or are FDA-approved, prescription products, among other claims.  Defendants knew or should have known that their statements and claims are false.

68.    Defendants' false and deceptive statements and claims have a tendency to confuse, mislead and deceive a substantial segment of its audience as to the sponsorship or approval of Defendants' products and their indications by the FDA.

69.    Defendants' false and deceptive statements and claims are material in that they are likely to influence consumer purchasing decisions.

70.    Defendants placed these false and deceptive statements and claims in interstate commerce by disseminating these representations nationwide.

71.     As a direct and proximate result of these deceptive acts, Scilex has been damaged, and will continued to be damaged, in an amount that will be ascertained according to proof. Scilex's damages include actual damages in the form of the diminished goodwill of the ZTlido® mark associated with its product offered under that mark and lost profits stemming from reduced demand for ZTlido® caused by Defendants' false and deceptive advertising; the disgorgement of any profits that Defendants unfairly realized, retained or gained through their unlawful conduct in the course of their false and deceptive marketing campaigns; and the costs of this action. Scilex will continue to suffer injury to the goodwill of its ZTlido® brand and to its business associated with the sale of ZTlido® patches unless and until Defendants and any others in active concert with Defendants are enjoined from continuing their wrongful acts, as described herein.

72.     Based on the foregoing, Defendants have engaged in false and deceptive representations that are likely to cause confusion or deceive as to the approval of Defendants' OTC Lidocaine Patch products by the FDA in violation of 15 U.S.C. § 1125(a)(1)(A).

73.     On information and belief, Defendants have engaged in this activity knowingly, willfully, and in bad faith, justifying the assessment of enhanced damages against them.

74.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and Scilex is thus entitled to an award of its attorneys' fees and costs.

**Count II – False and Deceptive Advertising**

**(15 U.S.C. § 1125(a)(1)(B))**

75.     Scilex incorporates and realleges by references the allegations above, as if fully set forth herein.

76.     Defendants' marketing and advertising of their OTC Lidocaine Patch products, which directly compete with Scilex's ZTlido® product, constitute false and deceptive advertising under the Lanham Act.

77.     Defendants have made, and continue to make, false and deceptive statements and claims about their OTC Lidocaine Patch products by representing to current and potential consumers—in advertising material and on their products' packaging—that the products "block[] pain receptors," provide "numb[ing]" relief, "desensitize[] nerves," are "fast acting," provide

relief and adhere to the skin for 8 or 12 hours, are "maximum strength" and/or provide the "maximum strength of lidocaine available, and provide "close" to the same amount of lidocaine as prescription lidocaine patches, such as ZTlido®, among other claims.  Defendants knew or should have known that their advertising claims have not been substantiated and, in any event, are false and deceptive.

78.     These statements constitute commercial advertising or promotion within the meaning of the Lanham Act.

79.     Defendants' false and deceptive advertising statements and claims have a tendency to confuse, mislead and deceive a substantial segment of its audience as to the nature, characteristics, and qualities of their OTC Lidocaine Patch products.

80.     Defendants' false and deceptive advertising statements and claims are material in that they are likely to influence consumer purchasing decisions.

81.     Defendants placed these false and deceptive advertising statements and claims in interstate commerce by disseminating these representations nationwide.

82.     As a direct and proximate result of these deceptive acts, Scilex has been damaged, and will continued to be damaged, in an amount that will be ascertained according to proof. Scilex's damages include actual damages in the form of the diminished goodwill of the ZTlido® mark associated with its product offered under that mark and lost profits stemming from reduced demand for ZTlido® caused by Defendants' false and deceptive advertising; the disgorgement of any profits that Defendants unfairly realized, retained or gained through their unlawful conduct in the course of their false and deceptive marketing campaigns; and the costs of this action. Scilex will continue to suffer injury to the goodwill of its ZTlido® brand and to its business associated with the sale of ZTlido® patches unless and until Defendants and any others in active concert with Defendants are enjoined from continuing their wrongful acts, as described herein.

83.     Based on the foregoing, Defendants have engaged in false and deceptive advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

84.     On information and belief, Defendants have engaged in this activity knowingly, willfully, and in bad faith, justifying the assessment of enhanced damages against them.

85.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and Scilex is thus entitled to an award of its attorneys' fees and costs.

### Count III – Violations of California's False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

86.     Scilex incorporates and realleges by references the allegations above, as if fully set forth herein.

87.     The FAL makes it "unlawful for any person…to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

88.     Defendants committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of their OTC Lidocaine Patches representing—in advertising material and on the products' packaging—that the products "block[] pain receptors," provide "numb[ing]" relief, "desensitize[] nerves," are "fast acting," provide relief and adhere to the skin for 8 or 12 hours, are "maximum strength" and/or provide the "maximum strength of lidocaine available, and provide "close" to the same amount of lidocaine as prescription lidocaine patches, such as ZTlido®, among other claims.  Defendants knew or should have known that their advertising claims have not been substantiated and are misleading and/or false.

89.     Defendants knew or should have known, through the exercise of reasonable care, that their representations were false and misleading and likely to deceive consumers and cause them to purchase Defendants' OTC Lidocaine Patches.

90.     Defendants' wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

91.     Section 17535 effectively provides that the Court may enjoin any corporation or other person who violates the FAL and may make such orders or judgments as may be necessary

1   to prevent the use of such practices, or which may be necessary to restore to any person in

2   interest any money or property which may have been acquired by means of such practices.

3          92.    As a direct and proximate result of these deceptive acts, Scilex has been damaged

4   and will continue to be damaged by Defendants' unlawful, unfair, and fraudulent business

5   practices, as described above.  Accordingly, Scilex is entitled to an injunction prohibiting

6   Defendants from continuing their practices in violation of the FAL, as described above.

7                    **Count IV – Violations of California's Unfair Competition Law**

8                           **(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

9          93.    Scilex incorporates and realleges by references the allegations above, as if fully

10  set forth herein.

11         94.    The UCL broadly prohibits acts of "unfair competition," including any "unlawful,

12  unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading

13  advertising."  Cal. Bus. & Prof. Code § 17200.  Defendants' acts, as described above, constitute

14  unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions

15  Code §§ 17200, *et seq*.

16         95.    In addition to marketing their products without FDA review or approval or

17  compliance with the TFM, Defendants have engaged in unlawful conduct by virtue of their

18  promotion and sale of their respective OTC Lidocaine Patches through means of false

19  advertisements in violation of Section 43(a) of the Lanham Act and the FAL.

20         96.    Defendants have engaged in unfair conduct by impairing competition within the

21  market for lidocaine patch products because their false and misleading advertising claims have

22  prevented consumers from making fully informed decisions regarding the lidocaine patch

23  products they wish to purchase and deceived consumers into buying Defendants' patches instead

24  of prescription patches, such as ZTlido®.

25         97.    Defendants have engaged in fraudulent conduct because their material

26  misrepresentations regarding their OTC Lidocaine Patches are likely to deceive a reasonable

27  consumer, and the true facts would be material to a reasonable consumer.

28

LATHAM&WATKINS LLP

24

98.     Defendants' wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

99.     As a direct and proximate result of these deceptive acts, Scilex has been damaged and will continue to be damaged by Defendants' unlawful, unfair, and fraudulent business practices described above.  Accordingly, Scilex is entitled to an injunction prohibiting Defendants from continuing their practices in violation of the UCL, as described above.

## **PRAYER FOR RELIEF**

WHEREFORE, Scilex seeks a judgment against Defendants, as follows:

a.     An injunction enjoining Defendants, and any person or entity acting in active concert with Defendants, from continuing to make false and/or misleading representations of fact about their respective OTC Lidocaine Patch products, or otherwise unfairly competing with Scilex in any manner whatsoever, or engaging in any unfair, fraudulent, or deceptive business practices that relate in any way to the marketing and advertising of Defendants' OTC Lidocaine Patch products;

b.     An order directing Defendants to file with the Court and serve upon Scilex's counsel, within thirty (30) days after entry of the order of injunction, respective reports setting forth the manner and form in which Defendants have complied with the injunction;

c.     An order finding that, by the acts complained of herein, Defendants have engaged in false advertising and unfair competition in violation of 15 U.S.C. §§ 1125(a)(1)(A) and (a)(1)(B);

d.     An order finding that, by the acts complained of herein, Defendants have engaged in false and misleading advertising in violation of California Business & Professions Code § 17500;

e.     An order finding that, by the acts complained of herein, Defendants have engaged in unfair competition and acts of unfair and deceptive business practices in violation of California Business & Professions Code § 17200;

f.     An order that Defendants must pay and provide for appropriate corrective advertisements;

LATHAM&WATKINS LLP

g.      An order awarding Scilex damages, in an amount to be fixed by the Court in accordance with proof, as well as all of Defendants' profits or gains of any kind from its acts of false advertising and unfair business practices; and further for an order that such acts were willful, thereby justifying an award of treble or enhanced or exemplary damages pursuant to 15 U.S.C. § 1117;

h.      An order awarding Scilex its costs and expenses of suit, including all reasonable attorneys' fees it has incurred and will incur in this matter;

i.      An order awarding Scilex prejudgment and post-judgment interest; and

j.      An order awarding Scilex such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Scilex respectfully demands a trial by jury on all matters so triable.

Dated: February 23, 2021                LATHAM & WATKINS LLP

/s/ Steven N. Feldman
Steven N. Feldman (*CA Bar No. 281405*)
  steve.feldman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone:  +1.213.485.1234
Facsimile:  +1.213.891.8763

David K. Callahan (*pro hac vice pending*)
  david.callahan@lw.com
Matthew W. Walch (*pro hac vice pending*)
  matthew.walch@lw.com
Sophia L. Méndez (*pro hac vice pending*)
  sophia.mendez@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone:  +1.312.876.7700
Facsimile:  +1.312.993.9767

*Attorneys for Plaintiff*
*Scilex Pharmaceuticals Inc.*