LATHAM & WATKINS LLP
Steven N. Feldman (*CA Bar No. 281405*)
steve.feldman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Jamie L. Wine (*CA Bar No. 181373*)
jamie.wine@lw.com
885 Third Avenue
New York, NY 10022
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

David K. Callahan (*pro hac vice*)
david.callahan@lw.com
Matthew W. Walch (*pro hac vice*)
matthew.walch@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767

*Attorneys for Plaintiff*
*Scilex Pharmaceuticals Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| SCILEX PHARMACEUTICALS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SANOFI-AVENTIS U.S. LLC, CHATTEM, INC., and HISAMITSU AMERICA, INC.,<br><br>Defendants. | CASE NO. 4:21-cv-01280-JST<br><br>**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS SANOFI-AVENTIS U.S. LLC AND CHATTEM, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(2)**<br><br>Date: July 15, 2021<br>Time: 2:00 PM<br>Judge: The Honorable Jon S. Tigar |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. STATEMENT OF THE FACTS ..... 2

III. LEGAL STANDARDS ..... 4

A. Federal Rule of Civil Procedure 12(b)(1) ..... 4

B. Federal Rule of Civil Procedure 12(b)(6) ..... 4

C. Federal Rule of Civil Procedure 15(a) ..... 4

IV. ARGUMENT ..... 5

A. Scilex Has Article III Standing. ..... 5

1. The Complaint Pleads a Particularized Injury-In-Fact. ..... 5

2. Scilex's Lost Sales and Diminished Goodwill Are Fairly Traceable to Chattem's False and Misleading Advertising. ..... 7

3. Scilex's Injuries Are Redressable by Monetary and Injunctive Relief. ..... 8

B. Scilex Has Standing to Bring Its Lanham Act Claims. ..... 10

1. The Complaint Alleges Injuries within the Zone of Interests Protected by the Lanham Acts. ..... 10

2. The Complaint Alleges that Chattem's Lanham Act Violations Proximately Caused Scilex's Injuries. ..... 11

C. The Complaint States a Claim Under Section 43(a)(1)(A) of the Lanham Act. ..... 12

D. Scilex's Lanham Act Claims Do Not Raise Issues for Resolution by the FDA. ..... 14

E. The Complaint Sufficiently Alleges UCL and FAL Standing and Claims. ..... 15

1. Scilex Has Standing under the UCL And FAL. ..... 15

2. The Complaint Sufficiently Alleges UCL and FAL Claims. ..... 18

F. Scilex's Claims Are Not Barred by the Doctrine of Laches. ..... 20

V. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*24/7 Customer, Inc. v. 24-7 Intouch*,
No. 5:14–cv–02561–EJD, 2015 WL 1522236 (N.D. Cal. Mar. 31, 2015) ............................20

*Adray v. Adry-Mart, Inc.*,
76 F.3d 984 (9th Cir. 1995), *as amended on denial of reh'g* (Feb. 15, 1996) ..........................9

*Alexso, Inc. v. First Databank, Inc.*,
No. CV 15-01893 DDP, 2015 WL 5554005 (C.D. Cal. Sept. 21, 2015) ................................14

*Allbirds, Inc. v. Giesswein Walkwaren*,
2020 WL 6826487 (N.D. Cal. June 4, 2020) ..................................................................7

*Allergan United States v. Imprimis Pharm., Inc.*,
No. SA CV 17-1551-DOC, 2017 WL 10526121 (C.D. Cal. Nov. 14, 2017) ..........................17

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ..........................................................................14, 19

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ..........................................................................4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C–07–5944–SC, 2014 WL 1091589 (N.D. Cal. Mar. 13, 2014) .....................................20

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..........................................................................................8

*Consumer Fin. Prot. Bureau v. Gordon*,
819 F.3d 1179 (9th Cir. 2016) ..........................................................................5

*Cook v. Brewer*,
637 F.3d 1002 (9th Cir. 2011) ..........................................................................4

*Crowley*,
734 F.3d 967 (9th Cir. 2013) ............................................................................5

*Danjaq LLC v. Sony Corp.*,
263 F.3d 942 (9th Cir. 2001) ............................................................................21

*Davis v. HBSC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ..........................................................................19

*DCD Programs, Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ............................................................................5

*Dragovich v. U.S. Dep't of the Treasury*,
764 F. Supp. 2d 1178 (N.D. Cal. 2011) ....................................................................9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig*.,
546 F.3d 981 (9th Cir. 2008) ...............................................................................4

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .............................................................................5

*Finelite, Inc. v. Ledalite Architectural Prod*.,
No. C–10–1276 MMC, 2010 WL 3385027 (N.D. Cal. Aug. 26, 2010) ..................................16

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
No. 18-cv-07603-WHO, 2019 WL 4168958 (N.D. Cal. Sept. 3, 2019) .................................15

*GOLO, LLC v. Higher Health Network, LLC*,
No.: 3:18-cv-2434-GPC-MSB,
2019 WL 446251 (S.D. Cal. Feb. 5, 2019) .......................................................7, 10

*Hauck v. Advanced Micro Devices, Inc.*,
816 F. App’x 39 (9th Cir. 2020) ...........................................................................8

*Hollingsworth v. Perry*,
570 U.S. 693 (2013)...........................................................................................5

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
304 F.3d 829 (9th Cir. 2002) .........................................................................20, 21

*Jerome's Furniture Warehouse v. Ashley Furniture Indus*.,
20CV1765-GPC(BGS), 2021 WL 1541649 (S.D. Cal. Apr. 20, 2021)..................................17

*Jewel v. Nat'l Sec. Agency*,
673 F.3d 902 (9th Cir. 2011) ...............................................................................9

*JHP Pharmaceuticals, LLC v. Hospira, Inc.*,
52 F. Supp. 3d 992 (C.D. Cal. 2014) ....................................................................13

*Kang v. P.F. Chang's China Bistro, Inc.*,
844 F. App'x 969 (9th Cir. 2021).........................................................................18

*Kling v. Hallmark Cards*,
225 F.3d 1030 (9th Cir. 2000) ...........................................................................20

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134, 63 P.3d 937 (2003)...................................................................16

*Kwikset Corp. v. Superior Court*,
246 P.3d 877 (Cal. 2011).............................................................................15, 16

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
114 F. Supp. 3d 852 (N.D. Cal. 2015) ....................16

*United States ex rel. Lee v. Corinthian Colls.*,
655 F.3d 984 (9th Cir. 2011) ....................5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....................10, 11

*Lona's Lil Eats, LLC v. Doordash, Inc.*,
No. 20-cv-06703-TSH, 2021 WL 151978 (N.D. Cal. Jan. 18, 2021)....................17

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)....................8

*Luxul Tech. Inc. v. Nectarlux*,
LLC, 78 F. Supp. 3d 1156 (N.D. Cal. 2015)....................10

*Mabey v. Reagan*,
376 F. Supp. 216 (N.D. Cal. 1974) ....................20

*Magic Kitchen LLC v. Good Things Int'l., Ltd.*,
153 Cal. App. 4th 1144 (2007) ....................21

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ....................4

*Mylan Labs., Inc. v. Matkari*,
7 F.3d 1130 (4th Cir. 1993) ....................13

*Nw. Env't Def. Ctr. v. Owens Corning Corp.*,
434 F. Supp. 2d 957 (D. Or. 2006) ....................7

*Ocean Advocates v. U.S. Army Corps. of Engineers*,
402 F.3d 846, 860 (9th Cir. 2005) ....................8

*POM Wonderful LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014)....................15

*Rosen v. Uber Techs., Inc.*,
164 F. Supp. 3d 1165 (N.D. Cal. 2016)....................16

*Schaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th 1125 (2020) ....................19

*Sebastian v. ONE Brands LLC*,
No.: 3:20-CV-00009-L-MDD,
2020 WL 5500224 (S.D. Cal. Sept. 10, 2020)....................9

*Sensible Foods, LLC v. World Gourmet, Inc.*,
No. 11–2819 SC., 2011 WL 5244716 (N.D. Cal. Nov. 3, 2011)....22

*Simpson Strong-Tie Co. v. Mitek Inc.*,
20-cv-06957-VKD, 2021 WL 1253803 (N.D. Cal. Apr. 5, 2021)....17

*SPS Techs., LLC v. Briles Aero., Inc.*,
No. CV 18-9536-MWF, 2019 WL 6841992 (C.D. Cal. Oct. 30, 2019)....17

*Stahl L. Firm v. Judicate West*,
2013 WL 4873065 (N.D. Cal. Sept. 12, 2013)....7

*Swain v. CACH, LLC*,
699 F. Supp. 2d 1117 (N.D. Cal. 2009)....16

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*,
No. CV-19-01715-PHX-SMB,
2020 WL 248164 (D. Ariz. Jan. 16, 2020)....6, 12

*TrafficSchool.com, Inc. v. Edriver Inc.*,
653 F.3d 820 (9th Cir. 2011)....5, 6, 7, 11

*United States v. Caronia*,
703 F.3d 149 (2d Cir. 2012)....3

*Williams v. Gerber Prod. Co.*,
552 F.3d 934 (9th Cir. 2008)....4, 19

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004)....4

**STATUTES**

15 U.S.C.
§ 1116....9
§ 1117(a)....9
§ 1125(a)....4, 9, 11
§ 1125(a)(1)(A)....1, 12, 13, 14

Cal. Bus. & Prof. Code
§ 17200....15
§§ 17200–17210....4
§§ 17200, *et seq*....18
§§ 17203....9, 16
§ 17500....15
§§ 17500–1509....4
§§ 17500, *et seq*....18
§ 17535....9, 16

## RULES

Fed. R. Civ. P.
12(b) .......... *passim*
12(b)(1) .......... 4
12(b)(6) .......... 4
15 .......... 5
15(a) .......... 4, 5

## REGULATIONS

48 Fed. Reg. 5852-01, 5868 (Feb. 8, 1983) .......... 3, 13

## CONSTITUTIONAL PROVISIONS

U.S. CONST. art. III .......... *passim*

**ISSUES TO BE DECIDED**

As required by Local Rule 7-4, Scilex Pharmaceuticals Inc. ("Scilex") identifies the following six issues raised by Sanofi-Aventis U.S. LLC and Chattem, Inc. (collectively, "Chattem") in their Motion to Dismiss First Amended Complaint Pursuant to Rules of Civil Procedure 12(b)(1) and 12(b)(2) (the "Motion to Dismiss") that require resolution by the Court:

1. Whether Scilex has alleged sufficient facts to establish standing under Article III of the United States Constitution to pursue its Lanham Act and California state law claims against Chattem;

2. Whether Scilex has alleged sufficient facts to establish standing under the Lanham Act to pursue its claims under that Act against Chattem;

3. Whether Scilex has adequately alleged a claim for false and misleading representations against Chattem under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A);

4. Whether Scilex has alleged sufficient facts to establish standing to pursue its claims against Chattem under the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500–17509 ("FAL") and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210 ("UCL");

5. Whether Scilex has adequately alleged a claim against Chattem under the UCL and FAL; and

6. Whether Scilex's claims as pled against Chattem are time barred by the doctrine of laches based on the limited record before the Court.

# I. INTRODUCTION

Throughout its Opening Brief in Support of its Motion to Dismiss ("Opening Brief" or "Chattem Mem."), Chattem ignores, mischaracterizes, and/or disputes the well-pled factual allegations included in the First Amended Complaint (the "Complaint" or "FAC"). Because the Court needs to accept those allegations as true on such a motion, it should reject each of the three primary arguments Chattem presents in its Opening Brief and deny Chattem's Motion to Dismiss.

First, Scilex's allegations are sufficient to establish that it has standing to pursue its claims against Chattem under Article III of the United States Constitution, the Lanham Act, and California state law. Specifically, Scilex has alleged that as a result of Chattem's false and misleading advertising regarding the efficacy and approval by the Food & Drug Administration ("FDA") of its over-the-counter ("OTC") products, Scilex has lost and continues to lose sales, and the goodwill associated with its ZTlido® FDA-approved lidocaine patch has been impaired by Chattem's conduct.[1] Similarly, Scilex has alleged that its injury: (1) falls within the "zone of interests" protected by the Lanham Act—i.e., that the plaintiff has alleged an injury to its commercial interest in sales or business reputation—and the scope of injury addressed by the FAL and UCL; and (2) is proximately caused by the Lanham Act, FAL, and UCL violations. Such allegations demonstrate standing under both Article III of the Constitution and the federal and state statutes at issue because Scilex's injury is concrete and alleged with particularity, is fairly traceable to Chattem's false, misleading, and deceptive advertising, and the injury can be addressed through the claims asserted by Scilex.

Second, Scilex's allegations are more than sufficient to state a claim under the Lanham Act and the California FAL and UCL. In particular, Scilex has adequately pled its claim under Section 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A), of the Lanham Act by alleging that Chattem's false and

---

[1] In its Opening Brief, Chattem mischaracterizes the ZTlido® patch as an "underperforming product" and accuses Scilex of "trying for a legal windfall to make up for its marketplace failure." Chattem Mem. at 4. Not only are such statements wrong factually, they are extraneous factual assertions that cannot be considered on a Fed. R. Civ. P. 12(b) motion to dismiss. As Scilex will establish at trial, its ZTlido® patch in fact has been successful, but Scilex would still have sold far more of those patches if Chattem had not engaged in the challenged false, misleading and deceptive advertising.

misleading statements imply that its products are approved by the FDA for non-authorized treatments. The statutory provision clearly applies to such claims, and the decisions cited by Chattem regarding other FDA claims are inapposite to Scilex's claim. Scilex similarly has adequately pled claims under California's false advertising and unfair competition laws by alleging that the parties' respective lidocaine patches are competitive, Chattem's unlawful advertisements are likely to deceive consumers, and Scilex has been injured by such advertising. Notwithstanding Chattem's claims to the contrary, the prevailing view in recent decisions from courts within the Ninth Circuit is that such pleadings are sufficient to state a claim under both statutes.

Finally, the allegations in Scilex's Complaint demonstrate that its claims are not barred by the doctrine of laches because they could not have arisen until Scilex first introduced its ZTlido® product in the marketplace, which did not happen until late 2018. The impact of Chattem's conduct has only grown since that introduction as the ZTlido® off-label market has developed, and Chattem's deceptive advertising has had a more significant impact on that market and the sales of ZTlido® and the goodwill in that brand. Moreover, as many courts have recognized, the resolution of such a defense raises numerous factual issues that are generally inappropriate to resolve through a Fed. R. Civ. P. 12(b) motion.

For each of the foregoing reasons, as explained in more detail below, Chattem's Motion to Dismiss should be denied.

## II. STATEMENT OF THE FACTS

Scilex markets and sells ZTlido®, a prescription adhesive patch with 1.8% lidocaine by weight. FAC ¶¶ 5, 21. In 2018, the FDA approved ZTlido® to treat pain associated with post-herpetic neuralgia ("PHN"), a complication of shingles. *Id.* ¶¶ 7, 22. Doctors, however, routinely prescribe ZTlido® for various off-label indications, including general neuropathic pain such as back and spinal pain.[2] *Id.* ¶ 26. Additionally, the proprietary technology used by Scilex in its

---

[2] In its Opening Brief, Chattem criticizes the fact that ZTlido® is prescribed for off-label use and that Scilex benefits from such prescriptions. *See* Chattem Mem. at 4 (claiming that "Plaintiff's marketing plans relied heavily upon the ZTlido patch being prescribed for off-label use"). Pharmaceutical companies, however, routinely rely on off-label sales, which is entirely appropriate and not prohibited by FDA regulations so long as they do not promote such off-label uses. *See*,

ZTlido® product allows it to provide the same amount of lidocaine to the area of pain as prescription 5% lidocaine patches. *Id.* ¶ 6. Moreover, it does so through a thinner patch and with superior adhesion to the skin as compared to other prescription patches. *Id.* ¶¶ 27-28.

Chattem manufactures and sells OTC lidocaine patches under the ICYHOT® and ASPERCREME® brands (collectively, the "Chattem OTC Lidocaine Patches"). *Id.* ¶¶ 1, 9, 18-19. The Chattem OTC Lidocaine Patches contain 4% lidocaine by weight and are not FDA approved. *Id.* ¶¶ 9, 11. The FDA's Tentative Final Monography ("TFM"), which governs 4% lidocaine products including the Chattem OTC Lidocaine Patches, provides that those products are only indicated for the "temporary relief of pain and itching associated with minor burns, sunburn, minor cuts, scrapes, insect bites or minor skin irritations." 48 Fed. Reg. 5852-01, 5868 (Feb. 8, 1983); FAC ¶¶ 31, 69. Despite those facts, Chattem's labeling and advertising of its OTC Lidocaine Patches falsely, misleadingly, and deceptively represent that those products: (i) deliver the maximum strength of lidocaine to the area of pain and contain the "maximum" amount of lidocaine available in patch form; (ii) adhere to the skin and relieve pain for up to 12 hours; (iii) completely block pain receptors and provide a numbing sensation; (iv) contain ingredients that target nerves; (v) are indicated and FDA-approved for treatment of nerve, back, and spinal pain; and (vi) provide immediate pain relief. *Id.* ¶ 61. Through its false and misleading advertisements, Chattem has increased its sales and profits at Scilex's expense by deceiving customers as to the nature, characteristics, regulatory status, and efficacy of Chattem's products, causing them to purchase such products when they otherwise would have purchased Scilex's products, among others. *Id.* ¶ 12.

As a result of Chattem's false, misleading, and deceptive advertisements, Scilex has incurred and continues to incur damages in the form of diminished goodwill of the ZTlido® mark and products associated with that mark, as well as lost profits stemming from a reduced demand

---

*e.g.*, *United States v. Caronia*, 703 F.3d 149, 153 (2d Cir. 2012) ("Once a drug has been approved for marketing, a physician may prescribe it for uses or in treatment regimens or patient populations that are not included in approved labeling. Such 'unapproved' or, more precisely, 'unlabeled' uses may be appropriate and rational in certain circumstances, and may, in fact, reflect approaches to drug therapy that have been extensively reported in medical literature.") (quoting U.S. Food and Drug Administration, FDA Drug Bulletin, 12 FDA Drug Bull. 1, 5 (1982)).

for ZTlido®, all of which benefit Chattem. *Id.* ¶¶ 60, 80, 91. Based on the foregoing conduct, Scilex asserted claims against Chattem for false, misleading, and deceptive advertising under the Lanham Act, 15 U.S.C. § 1125(a) (Counts I and II), false advertising in violation of the FAL, Cal. Bus. & Prof. Code §§ 17500–1509 (Count III), and unfair competition in violation of the UCL, Cal. Bus. & Prof. Code §§ 17200–17210 (Count IV).[3]

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

When deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, courts "take the allegations in the plaintiff's complaint as true." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Dismissal is only appropriate "if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008).

### B. Federal Rule of Civil Procedure 12(b)(6)

In ruling on a Rule 12(b)(6) motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (quotations and citation omitted). Additionally, "[t]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). If "the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief," the motion for dismissal must be denied. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).

### C. Federal Rule of Civil Procedure 15(a)

---

[3] Scilex asserted the same claims against Defendant Hisamitsu America, Inc. ("Hisamitsu") to address its false, misleading, and deceptive advertising, and unfair competition. Hisamitsu has filed its own motion to dismiss, to which Scilex is responding separately.

If a court finds that a claim has not been adequately pled, the Ninth Circuit has recognized that it should typically still give the plaintiff leave to file an amended complaint to attempt to address any factual deficiencies that the court may identify. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003). Under Federal Rule of Civil Procedure 15(a), leave to amend should be "freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15—to facilitate [a] decision on the merits rather than pleadings or technicalities." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quotations and citations omitted). As the Ninth Circuit has held, leave to amend should be granted if it appears *at all* possible that the plaintiff can correct the defect" that is the basis for a dismissal ruling. *See Crowley*, 734 F.3d 967, 977 (9th Cir. 2013) (quotation marks and citation omitted); *see also United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997 (9th Cir. 2011) ("Under the liberal standards for amending complaints, [Plaintiffs] should be permitted to plead additional facts that could cure the Complaint's deficiencies [identified on a Rule 12(b) motion] as to the allegations that [defendant] made a false statement and acted with the requisite scienter").

## IV. ARGUMENT

### A. Scilex Has Article III Standing.

Scilex has established Article III standing to pursue its Lanham Act and California law claims because it has alleged a "concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013); *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1187 (9th Cir. 2016).

#### 1. The Complaint Pleads a Particularized Injury-In-Fact.

Scilex has sufficiently pled that it has suffered an injury-in-fact as a result of Chattem's conduct by alleging that it has lost sales and experienced diminished goodwill of its ZTlido® product because of Chattem's false, misleading, and deceptive advertisements, which have caused consumers to choose the Chattem OTC Lidocaine Patches over Scilex's ZTlido® patch. FAC ¶¶ 12, 60, 62; *see TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (explaining that a plaintiff in a false advertising suit "establishes Article III injury if some

consumers who bought the defendant['s] product under [a] mistaken belief fostered by the defendant would have otherwise bought the plaintiff[’s] product”) (quotations and citation omitted). As Chattem recognizes, Chattem Mem. at 7, to allege such an injury, a plaintiff can “creat[e] a chain of inferences showing how defendant’s false advertising could harm plaintiff's business.” *Id.*; *ThermoLife Int’l LLC v. Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *4 (D. Ariz. Jan. 16, 2020) (holding that plaintiff sufficiently pled an injury-in-fact where it claimed—without citing any specific sales data—that consumers are misled into purchasing defendant’s falsely advertised goods when they otherwise would purchase plaintiff’s products).

Chattem ignores detailed factual allegations throughout the Complaint when it claims that Scilex has made merely “broad and generalized assertions” regarding the harm caused by its advertisements. Chattem Mem. at 7. For example, Scilex has specifically alleged that: Scilex and Chattem compete for the same consumers seeking treatment for nerve, neuropathic, and musculoskeletal pain, *see* FAC ¶ 71; ZTlido® patches are often prescribed for these off-label uses, *see id.* ¶¶ 7, 26, 71; and Chattem specifically targets consumers who would otherwise purchase ZTlido® patches by advertising that the Chattem OTC Lidocaine Patches are “maximum strength” (when ZTlido® delivers more lidocaine) and that they will continuously adhere and relieve pain for up to 12 hours (when considerable problems have been reported regarding earlier detachment), by falsely implying those products have FDA approval for certain indications, and by directly comparing those patches to the strength of ZTlido® patches, s*ee id.* ¶¶ 9, 12, 21, 59, 61, 64-66, 80, 86, 97. The Complaint therefore creates not only a chain of inferences showing a concrete injury-in-fact, but directly establishes such an injury.

Additionally, the fact that Scilex and Chattem are direct competitors in that they both sell lidocaine patches that treat pain through the skin, is “strong proof” that Chattem’s misrepresentations create an injury-in-fact. *TrafficSchool.com, Inc.*, 653 F.3d 820 at 826 (“Evidence of direct competition is strong proof that plaintiffs have a stake in the outcome of the suit, so their injury isn't ‘conjectural’ or ‘hypothetical.’”). Chattem’s assertion that the Complaint “merely alleges in a conclusory fashion” that Chattem and Scilex are direct competitors, Chattem

Mem. at 7, is inaccurate and once again ignores the detailed factual allegations in the FAC. Specifically, both Scilex and Chattem sell lidocaine patches and compete for the same consumers; in fact, Chattem advertises its OTC Lidocaine Patches as being capable of treating the same ailments that ZTlido® is commonly prescribed to address, including relief for muscle aches and back and spinal pain. FAC ¶¶ 7, 26, 71; *see, e.g.*, *TrafficSchool.com, Inc.*, 653 F.3d 820 at 827 (finding parties to be direct competitors when they competed for sales to the same consumer); *GOLO, LLC v. Higher Health Network*, No.: 3:18-cv-2434-GPC-MSB, *LLC*, 2019 WL 446251, at *7 (S.D. Cal. Feb. 5, 2019) (allegations that "Defendants compete with GOLO in the diet and weight-loss industry" were sufficient to establish parties were direct competitors).

The standing cases on which Chattem relies to support its position on this point are therefore inapposite. *See* Chattem Mem at 7. In *Stahl L. Firm v. Judicate West*, the court found that the plaintiff "fail[ed] to allege ***any*** facts showing he competes with Defendants for the same business." No. C13–1668 THE, 2013 WL 4873065, at *3 (N.D. Cal. Sept. 12, 2013) (emphasis added) (explaining that an "Article III injury requires ***some*** factual allegations in the pleading to support at least the inference of competition"). Here, Scilex has alleged ample facts demonstrating such competition. *See, e.g.*, FAC ¶¶ 11-12, 26, 59-60, 71. And in *Allbirds, Inc. v. Giesswein Walkwaren*, the court found the plaintiff failed to establish standing through a chain of inferences where he "***only*** alleg[ed] in a conclusory fashion" that the parties were direct competitors. No. 19-cv-05638-BLF, 2020 WL 6826487, at *4 (N.D. Cal. June 4, 2020) (emphasis added). Unlike the plaintiff in *Allbirds*, Scilex has pled specific facts regarding the common characteristics of its products and those sold by Chattem and the manner in which those products compete.

### 2. Scilex's Lost Sales and Diminished Goodwill Are Fairly Traceable to Chattem's False and Misleading Advertising.

Scilex has also alleged a sufficient connection between Chattem's false and misleading adverting and Scilex's lost sales and diminished goodwill. A plaintiff establishes the "fairly traceable" element of Article III standing by showing a "causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant." *Nw. Env't Def. Ctr. v. Owens Corning Corp.*, 434 F. Supp. 2d 957, 967 (D. Or. 2006)

(quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). As in *Ocean Advocates v. U.S. Army Corps of Engineers*, cited by Chattem, Chattem Mem. at 9, the causal connection between Scilex's harm and Chattem's advertisements is not "tenuous or abstract." 402 F.3d 846, 860 (9th Cir. 2005) (finding that the alleged injury (increased traffic) was fairly traceable to the challenged conduct (a new platform) where the link between them was not "tenuous or abstract," even though "other factors may also cause additional [] traffic").[4] Here, both Scilex and Chattem sell lidocaine patches. FAC ¶¶ 5, 71. Chattem's advertisements "misleadingly imply that [its] OTC Lidocaine Patches have FDA approval for certain indications, and are superior, or at least equivalent, in efficacy and results to prescription lidocaine patches." *Id.* ¶ 59, 61-62.[5]

Additionally, Chattem's reliance on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), is misplaced. Chattem Mem. at 9 (quotations omitted). In *Clapper*, the Supreme Court found that the plaintiffs had not established a "certainly impending" injury where the plaintiffs claimed there was a "reasonable likelihood that their communications…will be intercepted under [a surveillance statute] ***at some point in the future***" and that they incurred costs based on "fears of ***hypothetical future harm***." 568 U.S. at 410, 415-16 (2013) (emphasis added). In stark contrast, Scilex's alleged harm resulting from Chattem's advertisements is actual and ongoing and thus far from "impending" or "hypothetical." *See* FAC ¶¶ 62, 76, 80, 86, 91, 99.

**3. Scilex's Injuries Are Redressable by Monetary and Injunctive Relief.**

---

[4] As shown in *Ocean Advocates*, and contrary to Chattem's assertion, the law does not require Scilex to establish that Chattem's advertisements were "the only reason" for reduced ZTlido® sales. Chattem Mem. at 9; *see also Hauck v. Advanced Micro Devices, Inc*., 816 F. App'x 39, 42 (9th Cir. 2020) (denying motion to dismiss, finding an injury was fairly traceable where "it [was] possible…that the age of Plaintiffs' computers or other issues with the third-party patches were partially responsible for the performance losses").

[5] Chattem argues that an "alternative explanation" for Scilex's injury is "generic prescription equivalents" of ZTlido®. Chattem Mem. at 10; *see also id*. at 11. Not only is this a factual question not appropriate for resolution on a motion to dismiss, but this will also likely be the subject for extensive expert testimony. Through the discovery stage of the proceedings, Scilex can and will develop a damages model to accurately calculate its lost profits caused by Chattem's unlawful advertising, which will account for the availability and sales of other available OTC and prescription lidocaine patches.

Chattem further claims that Scilex's requested relief will not redress its injuries. Chattem Mem. at 11. However, the redressability element of Article III standing is satisfied where the plaintiff "shows a likelihood that the requested relief will redress the alleged injury." *Dragovich v. U.S. Dep't of the Treasury*, 764 F. Supp. 2d 1178, 1187–88 (N.D. Cal. 2011) (quotations and citation omitted). Here, Scilex has easily met this standard, as its requested relief is available under the statutes alleged and is directly tied to the harm incurred—monetary damages to compensate for diminished goodwill and lost profits caused by Chattem's misconduct; disgorgement of any profits that Chattem unfairly realized or gained through its unlawful conduct; an injunction to prevent future and further losses resulting from Chattem's false and misleading advertising; the costs of this action; and an order that Chattem pays for corrective advertisements. *See* FAC ¶¶ 80, 91, 101, 108; page 26; *see, e.g., Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 912 (9th Cir. 2011) (explaining there was "no real question about redressability" where the plaintiff sought an injunction and damages, both of which were "an available remedy" if the plaintiff was successful on the merits). Additionally, all of the relief Scilex requests is available under the applicable statutes. *See* 15 U.S.C. § 1117(a) (a plaintiff who successfully establishes a violation of Section 1125(a) of the Lanham Act is entitled to recover, "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action"); 15 U.S.C. § 1116 (injunctive relief available for violations of Section 1125(a) of the Lanham Act); Cal. Bus. & Prof. Code § 17535 (injunctive relief available for violations of the FAL); Cal. Bus. & Prof. Code §§ 17203 (injunctive relief available for violations of the UCL); *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995), *as amended on denial of reh'g* (Feb. 15, 1996) (award of corrective advertising costs is an appropriate remedy on false advertising claim under Lanham Act).

Moreover, Chattem's claim that Scilex has failed to allege redressability "[b]ecause there is no reason to believe that the relief sought…will enable it to *gain* those sales it claims to have lost because of Chattem's ads" misses the mark in several respects. Chattem Mem. at 12. First, Chattem's belief is irrelevant on a Rule 12(b) motion to dismiss where the allegations of the Complaint must be accepted as true. *Sebastian v. ONE Brands LLC*, No.: 3:20-CV-00009-L-MDD, 2020 WL 5500224, at *1 (S.D. Cal. Sept. 10, 2020) (when determining Article III standing,

the Court "must accept as true all material allegations of the complaint and construe it in plaintiff's favor."). Second, Scilex has alleged in detail the causal relationship between Chattem's false and misleading advertisements and its claimed lost profits. *See* Section IV(A)(2), *supra*. Such allegations in and of themselves are sufficient to defeat Chattem's Motion to Dismiss.

**B. Scilex Has Standing to Bring Its Lanham Act Claims.**

To establish standing under the Lanham Act, a plaintiff need only show that the cause of action (1) falls within the "zone of interests" protected by the statute—i.e., that the plaintiff has alleged an injury to a commercial interest in sales or business reputation—and that its (2) injury is proximately caused by a Lanham Act violation. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-32 (2014). Scilex has more than adequately alleged both elements.

**1. The Complaint Alleges Injuries within the Zone of Interests Protected by the Lanham Acts.**

As Chattem recognizes, Chattem Mem. at 13, Lanham Act standing does not hinge on whether the parties directly compete; rather, a non-competing claimant can establish standing so long as he satisfies the "zone of interests" test. *See Lexmark Int'l, Inc.*, 572 U.S. at 138; *GOLO, LLC*, 2019 WL 446251, at *7 (noting that the Court in *Lexmark* "rejected the 'direct-competitor' test"). Scilex's Complaint more than meets this test. In it, Scilex alleges facts sufficient to establish both the manner in which the products compete directly and the way in which the products otherwise fall within the "zone of interests" implicated by the Lanham Act; specifically, Scilex has alleged lost sales and a diminution of goodwill caused by Chattem's false and misleading advertising of its OTC Lidocaine Patches. *See, e.g.*, FAC ¶¶ 60, 80, 91; *Lexmark Int'l, Inc.*, 572 U.S. at 131-32, 137 (explaining that "lost sales and damage to [plaintiff's] business reputation [] are injuries to precisely the sorts of commercial interests the [Lanham] Act protects"); *Luxul Tech. Inc. v. Nectarlux*, LLC, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) ("Plaintiff has alleged lost sales and profits, and damage to its reputation, as a result of Defendants' misbranding of Plaintiff's products, false advertising, and misrepresentations to third-parties…. These allegations are sufficient to show commercial injury."); *GOLO, LLC*, 2019 WL 446251, at *7 (S.D. Cal. Feb. 5, 2019) (allegations of "diverted sales" and "cost[s] of corrective advertising to

counteract these misrepresentation and false advertising" were sufficient to show commercial injury).

In any event, as explained in Section IV(A)(1), *supra*, Scilex and Chattem are direct competitors, further supporting that Scilex's claims fall within the Lanham Act's "zone of interests." *See TrafficSchool.com, Inc.*, 653 F.3d 820 at 827 ("[W]hen a plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing."). In attempts to combat this connection, Chattem makes flawed arguments similar to those they raised regarding direct competition for Article III standing. *See* Chattem Mem. at 13; *see* Section IV(A)(1), *supra*. In doing so, Chattem once again makes arbitrary distinctions between the products and overlooks the detailed facts Scilex has alleged demonstrating how the parties compete for the same consumers who purchase and use lidocaine patches to address their pain. *See* Sections IV(A)(1) and IV(A)(2), *supra*.

### 2. The Complaint Alleges that Chattem's Lanham Act Violations Proximately Caused Scilex's Injuries.

Scilex has adequately alleged that its lost sales and expected future lost sales were and will be proximately caused by Chattem's Lanham Act violations. As the Supreme Court explained in *Lexmark*, a "plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc.*, 572 U.S. at 133. That is exactly the causal link Scilex has alleged here. *See, e.g.*, FAC ¶ 62 ("Defendants' false and misleading advertising causes consumers to be misled and to choose Defendants' products over FDA-approved lidocaine patches"); *Id.* ¶ 60 ("Defendants have targeted consumers of prescription lidocaine patches…through their false and misleading advertisements, and in doing so have secured substantial sales to the detriment of Scilex.").

Chattem relies on *ThermoLife Int'l LLC v. Sparta Nutrition LLC* to argue that hypothetical "alternative explanations" "could more easily explain [Scilex's]" reduction in market share. Chattem Mem. at 14. Not only does this argument raise factual issues not appropriate for resolution on a motion to dismiss and ignore well-pled facts to the contrary, but *ThermoLife* is

readily distinguishable on the proximate cause point. In *ThermoLife*, the court found that the plaintiff failed to establish proximate cause for its Lanham Act claim when, "[i]nstead of 'connecting the dots,' the Complaint blankly allege[d], ***without supporting allegations***, that Defendant's purported false advertising *must have* caused Plaintiff's injuries because the two compete." *ThermoLife Int'l LLC*, 2020 WL 248164, at *9 (emphasis added). In contrast to ThermoLife's "vague and speculative allegations," Scilex has sufficiently "connect[ed] the dots" between Scilex's injury and Chattem's false and misleading advertising of the OTC Lidocaine Patches. *Id*. As fully set forth in Sections IV(A)(1) and IV(A)(2), *supra*, Scilex has alleged the manner in which Chattem positions itself as equivalent or superior to prescription products in order to specifically target potential and actual consumers of prescription lidocaine patches and divert sales of those consumers away from Scilex and to Chattem. *See* FAC ¶¶ 12, 61, 64-66, 71, 80, 86, 97. This direct causal line of allegations connects Chattem's false and misleading advertising to Scilex's injuries, sufficiently pleading proximate causation.

**C. The Complaint States a Claim Under Section 43(a)(1)(A) of the Lanham Act.**

Scilex sufficiently alleges each of the elements for its claim in Count I—i.e., that Chattem has engaged in false and misleading representations regarding FDA approval of its OTC Lidocaine Patches under 15 U.S.C. § 1125(a)(1)(A). That Lanham Act section states in part that any entity that uses a false designation of origin or false or misleading description or representation of fact, likely to cause confusion or to deceive as to the approval of its goods, is actionable. *Id.*

The Complaint alleges that Chattem has made and continues to make false and misleading statements on its packaging and in advertisements "impl[ying] that [Chattem's] products are indicated by the FDA for the treatment of neuropathic and musculoskeletal pain, including back and spinal pain." *See* FAC ¶ 61. Such statements include that Chattem OTC Lidocaine Patches "[d]esensitize[] nerves," provide "targeted relief" for back and neck pain, "block[] pain signals," "numb[] away pain," and are "designed to work on muscle aches, strains, sprains, and simple backache, and bruises." *Id.* Scilex explains that those claims are misleading and deceptive to consumers because the OTC Lidocaine Patches have not been indicated or approved by the FDA for any of those uses. *Id.* ¶ 71. In fact, the FDA's TFM governing the Chattem OTC Lidocaine

Patches provides that those products are only indicated for the temporary relief of pain and itching associated with minor burns, sunburn, minor cuts, scrapes, insect bites or minor skin irritations. 48 Fed. Reg. 5852-01, 5868 (Feb. 8, 1983); FAC ¶¶ 31, 69. Nothing on Chattem's packaging indicates its OTC Lidocaine Patches are only approved for those indications. FAC ¶ 70. Further, Scilex has explained that the FDA itself has found that Chattem's claims that its products "numb[] away pain" and "block[] pain receptors" are misleading to consumers. *Id.* ¶ 68. Scilex has also alleged that Chattem's false and misleading statements are material in that they have led consumers to purchase Chattem OTC Lidocaine Patches, and that Scilex has incurred lost sales and diminution of goodwill as a result of Chattem's unlawful conduct. *Id.* ¶¶ 11-12, 60-62, 78, 80, 89. Accordingly, Scilex has specifically alleged each element of Count I.

Chattem relies on certain non-binding precedent to claim that Count I "fails" "in the absence of explicit claims about FDA approval" by Chattem about its products. Chattem Mem. at 16.[6] However, 15 U.S.C. § 1125(a)(1)(A) has no such requirement, and courts within the Ninth Circuit do not require explicit claims of FDA approval. For instance, in *JHP Pharms., LLC v. Hospira, Inc.*, the court explicitly denied the defendants' argument that the complaint was insufficient to support a Lanham Act claim where it did not allege "specific statements by the [d]efendants representing that their products are FDA-approved." 52 F. Supp. 3d 992, 1002 (C.D. Cal. 2014). Rather, the court allowed the plaintiff to proceed notwithstanding a motion to dismiss, finding that she had alleged "facts tending to show that the message 'our product is FDA-approved' was actually conveyed to consumers." *Id.* at 1003. As in *JHP Pharms.* and explained above, Scilex has alleged facts showing that Chattem conveys to consumers that its OTC Lidocaine

---

[6] The non-binding Fourth Circuit case, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993), Chattem cites is readily distinguishable. Chattem Mem. at 16. In *Mylan*, the court found that where the plaintiff had not "point[ed] to any statement or representation in the defendants' advertising which declared 'proper FDA approval,'" the simple "act of placing a drug on the market" was insufficient to imply the falsity that the product had been properly approved by the FDA. *Mylan Labs., Inc.*, 7 F.3d at 1139. In contrast, Scilex has done far more than contend Chattem merely placed its OTC Lidocaine Patches on the market. Rather, Scilex has alleged that Chattem has and continues to make false and misleading statements and claims "impl[ying] that [its] products are indicated by the FDA for the treatment of neuropathic and musculoskeletal pain, including back and spinal pain." *See* FAC ¶ 61.

Patches are FDA approved.[7] *See, e.g.*, FAC ¶ 11-12, 61-62, 68, 78. Accordingly, Scilex has sufficiently alleged a claim under 15 U.S.C. § 1125(a)(1)(A).

**D. Scilex's Lanham Act Claims Do Not Raise Issues for Resolution by the FDA.**

Regardless of Chattem's opinion of the Complaint's "gravamen," Chattem Mem. at 18, Scilex is not requesting the Court to enforce any provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA"). *Id.* Scilex's claims fall squarely within the scope of the Lanham Act, and as a result, federal preemption is not at play in this suit. The seminal Ninth Circuit case on FDCA preemption is *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015). In *Astiana*, the plaintiffs filed a class action against a cosmetic manufacturer alleging that its use of the word "natural" on its product packaging was false or misleading and therefore violated, among other statutes, the UCL and FAL. *Id.* at 756. The district court dismissed the action on the ground that plaintiffs' "state law claims [we]re preempted by the FDCA." *Id.* The Ninth Circuit reversed, finding that federal preemption was not implicated because the "[plaintiffs] [were] not asking [the defendant] to modify or enhance any aspect of its cosmetics labels that are required by federal law." *Id.* at 758. Because "FDA regulations d[id] not require [defendant] to label its products as 'All Natural' or 'Pure Natural,'" and plaintiffs' "suit ultimately requires [defendant] to remove these allegedly misleading advertising statements from its product labels, such a result [will] not run afoul of the FDCA[.]" *Id.* at 759. The same result holds here.

Moreover, Scilex's claim is not "masquerading as a Lanham Act claim" as Chattem contends. Chattem Mem. 18. Rather, its Complaint focuses on remedying harm caused by

[7] Chattem mischaracterizes the holding in the other primary case it cites to support its position, *Alexso, Inc. v. First Databank, Inc.*, No. CV 15-01893 DDP (JCx), 2015 WL 5554005, at *2 (C.D. Cal. Sept. 21, 2015). There, the court addressed whether the defendants violated the Lanham Act by "*excluding* [the plaintiff's] kits from the [defendant's drug] database" and thereby represented that those products were not FDA approved. *Id.* at *1 (emphasis added). In contrast, Scilex's claims are based on Chattem's "affirmative statement[s]" about its products. *Id.* at *2. Additionally, the court did not hold that an actionable statement must explicitly refer to FDA approval. Rather, the court explained that there are a "myriad reasons why a for-profit informational database…might list certain products and not others, [the defendant's] exclusion of [the plaintiff's] products cannot plausibly be read as an affirmative representation of any kind regarding those products, let alone a representation that would lead database subscribers to wrongly believe that [the plaintiff's] kits are not approved by the FDA." *Id.* at *3.

Chattem's false, misleading, and deceptive advertising claims regarding the nature, characteristics, and efficacy of its OTC Lidocaine Patches. *See* FAC ¶¶ 12, 27, 58-59, 61. Courts have routinely found that such claims "fall within a court's jurisdiction," even if the challenged products are regulated by the FDCA. *Genus Lifesciences Inc. v. Lannett Co., Inc.*, No. 18-cv-07603-WHO, 2019 WL 4168958, at *3 (N.D. Cal. Sept. 3, 2019); *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 115 (2014) ("Although both [the Lanham Act and FDCA] touch on food and beverage labeling, the Lanham Act protects commercial interests against unfair competition, while the FDCA protects public health and safety"). Scilex's Lanham Act claims are therefore not preempted by federal law or more appropriately resolved by the FDA under the primary jurisdiction doctrine.

### E. The Complaint Sufficiently Alleges UCL and FAL Standing and Claims.

Scilex has established standing and adequately alleged its claims under the FAL, which prohibits unfair and misleading advertising, Cal. Bus. and Prof. Code § 17500, and the UCL, which broadly prohibits any unlawful and unfair or fraudulent business act or practice, Cal. Bus. & Prof.Code § 17200. *See* FAC ¶¶ 95-108.

#### 1. Scilex Has Standing under the UCL And FAL.

In 2004, California voters passed Proposition 64, which altered the standing requirements under the UCL and FAL. Under this new standard, "a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011).

First, while both statutes do require "economic injury," the California Supreme Court has clarified that the injury need not be substantial and may be satisfied by a mere "identifiable trifle." *Id.* at 891 n.15. California has adopted the federal meaning of "injury in fact" but recognizes only economic harm as a cognizable injury. *Id.* at 885. As detailed in Section IV(A)(1), *supra*, Scilex has sufficiently alleged an injury in fact under the federal meaning of the term. That injury—lost profits resulting from Chattem's unlawful conduct—is an "economic injury" sufficient to establish

standing for Scilex's UCL and FAL claims. *See, e.g.*, *Finelite, Inc. v. Ledalite Architectural Prod.*, No. C–10–1276 MMC, 2010 WL 3385027, at *1-2 (N.D. Cal. Aug. 26, 2010) (finding UCL standing based on allegations that the defendant's false advertising "caused a 'diversion of sales'" which resulted in the plaintiff having "lost sales").

Chattem's discussion of cases regarding establishing an "ownership interest" in lost money to obtain "equitable restitution" under the UCL and FAL is entirely inapplicable. *See* Chattem Mem. at 19 (quotations omitted); citing *Swain v. CACH, LLC*, 699 F. Supp. 2d 1117, 1121 (N.D. Cal. 2009) and *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1151, 63 P.3d 937, 949 (2003). *Swain* and *Korea Supply* both focus on whether claims for equitable restitution are appropriate under the UCL and FAL. *Swain*, 699 F. Supp. 2d at 1121 ("The Court…finds that standing under the UCL does not require a loss of money or property that is "eligible for restitution."); *Korea Supply Co.*, 29 Cal. 4th at 1149-51 (2003) (finding that the "plaintiff's claim is properly characterized as a claim for nonrestitutionary disgorgement of profits"). Scilex, however, has not requested restitution under its UCL and FAL claims, and has instead requested injunctive relief, which is specifically available under the statutes. FAC ¶¶ 101, 108; Cal. Bus. & Prof. Code §§ 17203 (injunctive relief available for violations of the UCL); Cal. Bus. & Prof. Code § 17535 (injunctive relief available for violations of the FAL); *see Finelite, Inc.*, 2010 WL 3385027, at *2 (gathering cases, explaining that a plaintiff has standing under the UCL regardless of its right to seek restitution; an injunction and restitution are "wholly independent remedies") (quotations and citations omitted).

Second, regarding causation, the California Supreme Court has not decided whether reliance is an element of a UCL or FAL claim when a competitor is challenging an allegedly false or misleading statement. *Kwikset*, 246 P.3d at 888 n.9 (2011) ("[W]e need express no views concerning the proper construction of the cause requirement in other types of cases."). Scilex recognizes that when previously confronted with this issue, this Court held that a plaintiff must show individual reliance to support a claim under the UCL and FAL. *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866 (N.D. Cal. 2015); *Rosen v. Uber Techs., Inc.*, 164 F. Supp. 3d 1165, 1177 (N.D. Cal. 2016). However, the growing chorus of courts addressing this issue

since this Court's decisions in *L.A. Taxi Coop* and *Rosen* have held (in the context of a commercial claim under the UCL and FAL) that individual reliance is not required. *See Simpson Strong-Tie Co. v. Mitek Inc.*, 20-cv-06957-VKD, 2021 WL 1253803, at *6 (N.D. Cal. Apr. 5, 2021) (in cases involving false advertising claims against competitors, requiring a plaintiff to plead its own reliance would "defeat the very purpose of the UCL, which is to protect both consumers and competitors") (quotations and citation omitted); *Lona's Lil Eats, LLC v. Doordash, Inc.*, No. 20-cv-06703-TSH, 2021 WL 151978, at *10-12 (N.D. Cal. Jan. 18, 2021) (to establish UCL or FAL standing, a non-consumer plaintiff can allege a "causal connection **or** reliance on the alleged misrepresentation"); *Jerome's Furniture Warehouse v. Ashley Furniture Indus.*, 20CV1765-GPC(BGS), 2021 WL 1541649, at *8 (S.D. Cal. Apr. 20, 2021) (a competitor plaintiff need not allege its "own reliance and need only allege it suffered an injury, loss of money or property, as a result of the alleged misrepresentations"); *Allergan United States v. Imprimis Pharm., Inc.*, No. SA CV 17-1551-DOC (JDEx), 2017 WL 10526121, at *13 (C.D. Cal. Nov. 14, 2017); *see also SPS Techs., LLC v. Briles Aero., Inc.*, No. CV 18-9536-MWF (ASx), 2019 WL 6841992, at *7-8 (C.D. Cal. Oct. 30, 2019) (permitting UCL and FAL claims to proceed).

The district court's discussion in *Allergan* detailing why commercial competitors can assert claims against each other under the false advertising and unfair practice statutes is particularly instructive:

> False advertising claims between competitors are fundamentally different from false advertising claims by consumers… [C]ompetitor plaintiffs are not concerned with the deceptive activity simply because it's deceptive. Competitor plaintiffs are concerned with the loss of sales and market share as a result of the deceptive activity... It is hard to imagine a scenario, though, in which a competitor plaintiff would rely on a competitor defendant's misleading advertisement and suffer injury… Thus, imposing the reliance requirement on competitor claims would impose a superficial hurdle on competitor plaintiffs seeking to stop or recover for damages caused by their competitor's false advertising.

*Allergan*, 2017 WL 10526121, at *13.

In line with the explanation from *Allergan*, Scilex has not alleged that it relied on its competitor's claims, nor should it be required to do so. Scilex is not attacking Chattem's false and deceptive advertising because it relied on Chattem's advertisements to its detriment. Rather,

Scilex has alleged that Chattem's false and misleading advertisements have ***caused*** Scilex significant financial harm. *See* FAC ¶¶ 12, 60, 62, 101, 108.

Accordingly, consistent with the recent decisions from Ninth Circuit courts, Scilex has adequately alleged causation to maintain its FAL and UCL claims.

**2. The Complaint Sufficiently Alleges UCL and FAL Claims.**

Scilex has stated actionable claims under both the UCL and FAL. To establish its UCL claim, Scilex showed that Chattem engaged in unlawful, unfair, and fraudulent business practices. *See* Cal. Bus. & Prof. Code §§ 17200, *et seq*; FAC ¶¶ 61, 104-108. To establish its FAL claim, Scilex detailed that, through its advertising materials and product packaging, Chattem disseminated false and misleading statements about its OTC Lidocaine Patches, the deceptive and/or false nature of which Chattem reasonably knew or should have known. *See* Cal. Bus. & Prof. Code §§ 17500, *et seq*; FAC ¶¶ 61, 97-101.

As it does throughout its Motion to Dismiss, Chattem ignores Scilex's detailed factual allegations in its Complaint alleging that a "reasonable consumer" is "likely to be deceived" by Chattem's false and misleading statements, as required under the FAL and UCL. Chattem Mem. at 21; *Kang v. P.F. Chang's China Bistro, Inc*., 844 F. App'x 969, 970 (9th Cir. 2021) (under the FAL and UCL, a plaintiff must "plausibly allege that reasonable consumers are likely to be deceived") (quotations and citation omitted). For example, the Complaint includes a comprehensive chart matching Chattem's advertising claims and their sources with the false and/or misleading message those claims make or imply. FAC ¶ 61. To highlight a few examples, Chattem's claim that its products contain the "maximum strength lidocaine available" implies that its products deliver the maximum amount of lidocaine available in patch form and contains the maximum lidocaine available amongst all lidocaine patch products on the market. *Id*. Those implications, however, are false and misleading as ZTlido® and other prescription lidocaine patches deliver more lidocaine to areas of pain than the Chattem OTC Lidocaine Patches. *See* FAC ¶¶ 6, 64-65. Similarly, packaging that claims the Chattem OTC Lidocaine Patches will "block[] pain signals" and "numb[] away pain" misleadingly imply that Chattem's products completely block pain receptors, eliminate responses to painful stimuli, and provide a numbing

sensation. *Id.* ¶ 61. In sum, those allegations are sufficient to address the "reasonable consumer" pleading requirement.

To the extent Chattem argues otherwise, the Ninth Circuit "recognize[s] that [in applying the reasonable consumer test,] whether a business practice is deceptive will usually be a question of fact not appropriate for decision" on a motion to dismiss, and it is a "rare situation in which granting a motion to dismiss" on this issue is suitable. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also Astiana v. Hain Celestial Grp, Inc.*, 783 F.3d 753, 758 n.3 (9th Cir. 2015); *Davis v. HBSC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012). Here, Scilex has alleged that Chattem engaged in deceptive business practices through its use of false and misleading advertisements *See* FAC ¶¶ 101, 105. Accordingly, arguing the merits of a reasonable consumer test as applied to this advertising is not appropriate for a motion to dismiss. *Williams*, 552 F.3d at 938.

Additionally, contrary to Chattem's assertion, there is no requirement under the UCL or FAL that the challenged statements "must be comparative." Chattem Mem. at 21. Rather, as explained in *Shaeffer v. Califia Farms, LLC*, as cited by Chattem, Chattem Mem. at 21, comparative advertisements are one category of actionable statements under the UCL and FAL. 44 Cal. App. 5th 1125 (2020). Regardless, Scilex has adequately alleged the comparative nature of Chattem's advertisements. In *Shaeffer*, the court identified the following three categories of actionable statements: (1) "false" and "fraudulent" statements about one's own product, (2) literally true statements that are deceptive and misleading to a reasonable consumer, and (3) false statements about a comparable, competing product that "imply that the product at issue is superior to its competition." *Id.* at 1137-39. The court then identified a non-actionable fourth category—truthful statements about one's own product that do not otherwise reference or compare competing products. *Id.* at 1139. Once again, Chattem ignores Scilex's well-pled facts alleging that Chattem's advertisements fall squarely within the first three actionable categories. *See, e.g.*, FAC ¶ 64 ("Defendants marketing claims that their products deliver the 'maximum strength lidocaine' are false and misleading, as their patches contain less lidocaine than prescription patches."); *id.* ¶ 61 (advertisement "[m]isleadingly implies that Defendants' products completely block pain

receptors, eliminate responses to painful stimuli, and provide a numbing sensation"); *id.* ¶ 11 (Defendants' advertisements give the false impression that Chattem OTC Lidocaine Patches are "superior" to "FDA approved, prescription-only lidocaine patches, such as those offered by Scilex."); *see also id.* ¶¶ 16, 36-37, 44-45, 60-62, 66, 97, 105-106.

**F. Scilex's Claims Are Not Barred by the Doctrine of Laches.**

"Laches is an equitable defense which is appropriate when there has been an inexcusable delay in bringing an action to trial and that delay has prejudiced the fact finding process." *Mabey v. Reagan*, 376 F. Supp. 216, 220 (N.D. Cal. 1974). Laches "depends on a close evaluation of all the particular facts in a case [and] it is seldom susceptible of resolution by summary judgment," let alone on a motion to dismiss. *Kling v. Hallmark Cards*, Inc. 225 F.3d 1030, 1041 (9th Cir. 2000); *24/7 Customer, Inc. v. 24-7 Intouch*, No. 5:14–cv–02561–EJD, 2015 WL 1522236, at *4 (N.D. Cal. Mar. 31, 2015) ("[L]aches…defenses often require a fact-intensive investigation that is inappropriate on a motion to dismiss."); *In re Cathode Ray Tube (CRT) Antitrust Litig*., No. C–07–5944–SC, 2014 WL 1091589, at *13 (N.D. Cal. Mar. 13, 2014) ("A laches defense raised at the motion to dismiss posture requires exclusive reliance on the factual allegations in the complaint…Courts have noted that this postural requirement poses a nearly insurmountable obstacle to a favorable resolution of a defendant's fact-dependent laches claim.") (quotations and citations omitted)).

Despite the obvious procedural obstacle for the defense on a motion to dismiss, Chattem attempts to argue that Scilex's Lanham Act and California state law claims are barred by laches and that such bar can be found to apply to defeat Scilex's claims on a Rule 12(b) motion. *See* Chattem Mem. at 22. As an initial matter, Chattem conflates the relevant timeline and standard for a presumption of laches. Instead of pointing to factual allegations concerning when Scilex had knowledge of its claims against it, Chattem points to allegations concerning when it made the challenged misrepresentations. Specifically, Chattem asserts that there is a "presumption of laches" because it began marketing its OTC Lidocaine Patches more than four years ago, outside of the applicable statute of limitations period. *Id.* That date is irrelevant. As the Ninth Circuit explained in *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, which Chattem mischaracterizes,

Chattem Mem. at 22, "in determining the presumption for laches, the limitations period runs from the time the ***plaintiff knew or should have known about his…cause of action***. This principle is grounded in the fact that laches penalizes inexcusable dilatory behavior; if the plaintiff legitimately was unaware of the defendant's conduct, laches is no bar to suit." 304 F.3d 829, 838 (9th Cir. 2002) (quotations and citations omitted) (emphasis added). There is no presumption of laches or delay here because Scilex could not reasonably have known about its causes of action four years ago, as ZTlido® was not even on the market until late 2018. *See* Chattem Mem. at 9. Accordingly, Scilex did not suffer the harm claimed until that date, less than three years before the Complaint was filed. Even then, the full nature of the harm inflicted by Chattem was not realized until recently as ZTlido® became more commonly prescribed for off-label uses and its sales base expanded significantly. *See* FAC ¶ 7, 26; Chattem Mem. at 9.

Chattem also fails to point to any acceptable allegations of prejudice. "A defendant has been prejudiced by a delay…when a defendant has changed its position in a way that would not have occurred if the plaintiff had not delayed." *Magic Kitchen LLC v. Good Things Int'l., Ltd.*, 153 Cal. App. 4th 1144, 1161 (2007) (quotations and citation omitted); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001) ("A defendant…demonstrate[s] prejudice by showing that it took actions or suffered consequences that it would not have, had the plaintiff brought suit promptly."). Nothing in Chattem's Opening Brief suggests that it changed its position in any way that would otherwise not have occurred absent Scilex's purported delay. Rather, Chattem alleges that "[i]n the last five years [it has] made substantial investments in the [Chattem OTC Lidocaine Patches], including marketing, research and development, and distribution." Chattem Mem. at 23. Even if the Court were to consider those extraneous factual allegations, Chattem still fails to allege it would not have made those same contributions absent Scilex's alleged delay. Accordingly, Chattem has not adequately alleged prejudice, nor can it establish such a fact on a motion to dismiss.

In sum, Chattem's laches claim fails because it essentially asks the Court "to make factual determinations concerning when [Scilex] knew or should have known about the alleged [false, misleading and deceptive advertising], [Scilex's] diligence in enforcing its rights, and the prejudice

to [Chattem] caused by [Scilex's] delay." *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11–2819 SC., 2011 WL 5244716, at *5 (N.D. Cal. Nov. 3, 2011). Those determinations are inappropriate at the motion to dismiss stage, requiring the rejection of Chattem's laches argument at this juncture in the case. *See id*.

## V. CONCLUSION

For the foregoing reasons, Chattem's Motion to Dismiss should be denied. If the Court nonetheless finds that any of Scilex's claims have not been adequately pled based on any of the grounds advanced by Chattem in its Motion, Scilex respectfully seeks leave to amend its Complaint to address such defect.

Dated: June 14, 2021

LATHAM & WATKINS LLP

/s/ Steven N. Feldman

Steven N. Feldman (*CA Bar No. 281405*)
steve.feldman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Jamie L. Wine (*CA Bar No. 181373*)
jamie.wine@lw.com
885 Third Avenue
New York, NY 10022
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

David K. Callahan (*pro hac vice*)
david.callahan@lw.com
Matthew W. Walch (*pro hac vice*)
matthew.walch@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767

*Attorneys for Plaintiff*
*Scilex Pharmaceuticals Inc.*