LATHAM & WATKINS LLP
Steven N. Feldman (*CA Bar No. 281405*)
  steve.feldman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone:  +1.213.485.1234
Facsimile:  +1.213.891.8763

Jamie L. Wine (*CA Bar No. 181373*)
  jamie.wine@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone:  +1.212.906.1200
Facsimile:  +1.212.751.4864

David K. Callahan (*pro hac vice*)
  david.callahan@lw.com
Matthew W. Walch (*pro hac vice*)
  matthew.walch@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone:  +1.312.876.7700
Facsimile:  +1.312.993.9767

*Attorneys for Plaintiff*
*Scilex Pharmaceuticals Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| SCILEX PHARMACEUTICALS INC., | CASE NO. 4:21-cv-01280-JST |
| Plaintiff, | **PLAINTIFF SCILEX PHARMACEUTICALS INC.'S OPPOSITION TO HISAMITSU AMERICA, INC.'S MOTION TO DISMISS AND STRIKE PURSUANT TO FED R. CIV. P 12(B)(1), 12(B)(6) AND 12(F)** |
| v. | |
| SANOFI-AVENTIS U.S. LLC, CHATTEM, INC., and HISAMITSU AMERICA, INC., | Date:   July 22, 2021 |
| Defendants. | Time:   2:00 PM |
| | Judge:  The Honorable Jon S. Tigar |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF THE FACTS ........................................................................... 3

III.  LEGAL STANDARDS ......................................................................................... 6

    A.    Federal Rule of Civil Procedure 12(b)(1) ................................................ 6

    B.    Federal Rule of Civil Procedure 12(b)(6) ................................................ 6

    C.    Federal Rule of Civil Procedure 15(a) ..................................................... 6

IV.  ARGUMENT ......................................................................................................... 7

    A.    Hisamitsu Improperly Introduces Extraneous Factual Materials and Fails to Accept Scilex's Allegations as True. ......................................... 7

    B.    Scilex Has Alleged Its Claims Grounded in Fraud with Sufficient Particularity ........................................................................................... 10

    C.    Scilex Has Standing to Bring Its Lanham Act Claims ............................ 11

    D.    Scilex Has Article III Standing to Assert Its Claims against Hisamitsu ................................................................................................ 13

    E.    Scilex Adequately Pleads the Remaining Elements of a Lanham Act Claim ................................................................................................ 16

    F.    Scilex Has Adequately Alleged a Claim for False and Misleading Representation of Approval under Section 43(a)(1)(A) of the Lanham Act ............................................................................................ 17

    G.    Neither Claim Brought under the Lanham Act Is Subject to Dismissal under the Primary Jurisdiction Doctrine and/or Preemption ............................................................................................. 19

    H.    Scilex Has Standing under the UCL and the FAL ................................. 20

    I.    Scilex Has Adequately Pled Its State Law Claims. ............................... 22

    J.    The Court Should Reject Hisamitsu's Request to Strike Allegations Regarding the Proposed Monograph. ..................................................... 24

V.   CONCLUSION .................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

*AECOM Energy & Constr., Inc. v. Ripley*,
5
   348 F. Supp. 3d 1038 (C.D. Cal. 2018) ................................................................16

6
*Allergan United States v. Imprimis Pharm., Inc.*,
   No. 17-cv-1551-DOC,
7
   2017 WL 10526121 (C.D. Cal. Nov. 14, 2017).....................................21, 22, 23

8
*Astiana v. Hain Celestial Group, Inc.*,
   783 F.3d 753 (9th Cir. 2015) ...............................................................19, 23
9

10
*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*,
   No. 08-cv-3931-RS, 2009 WL 55178 (N.D. Cal. Jan. 7, 2009) ....................16

11
*Benham v. Am. Servicing Co.*,
12
   No. C 09-01099 JSW, 2009 WL 4456386 (N.D. Cal. Nov. 30, 2009) ..................24

13
*Biocell Tech. LLC v. Arthro-7*,
   No. 12-cv-00516-JVS, 2012 WL 12892937 (C.D. Cal. Nov. 19, 2012) ................17
14

15
*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) ...............................................................10

16
*Bruton v. Gerber Prod. Co.*,
17
   No. 12–CV–02412–LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ................23

18
*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
19
   637 F.3d 1047 (9th Cir. 2011) .................................................................6

20
*Cannarella v. Volvo Car USA LLC*,
   No. CV 16-6195-RSWL-JEMx,
21
   2016 WL 9450451 (C.D. Cal. Dec. 12, 2016) ..........................................9

22
*Cetacean Cmty. v. Bush*,
   386 F.3d 1169 (9th Cir. 2004) ...............................................................15
23

24
*Chacanaca v. Quaker Oats Co.*,
   752 F. Supp. 2d 1111 (N.D. Cal. 2010) ....................................................23

25
*Clark v. Time Warner Cable*,
26
   523 F.3d 1110 (9th Cir. 2008) ...............................................................20

27
*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
   398 F. Supp. 3d 623 (N.D. Cal. 2019) ...............................................16, 17

28

*Consumer Fin. Prot. Bureau v. Gordon*,
    819 F.3d 1179 (9th Cir. 2016) ........................................................................13

*Cook v. Brewer*,
    637 F.3d 1002 (9th Cir. 2011) .........................................................................6

*Ctr. for Food Safety v. Sanderson Farms, Inc.*,
    No. 17-CV-03592-RS, 2019 WL 8356294 (N.D. Cal. Mar. 18, 2019) .................24

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) .........................................................................10

*Davis v. HSBC Bank Nev., N.A.*,
    691 F.3d 1152 (9th Cir. 2012) .......................................................................23

*DCD Programs, Ltd. v. Leighton*,
    833 F.2d 183 (9th Cir. 1987) ...........................................................................6

*Dorfman v. Nutramax Labs., Inc.*,
    No. 13CV0873, 2013 WL 5353043 (S.D. Cal. Sept. 23, 2013) .........................10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    546 F.3d 981 (9th Cir. 2008) ...........................................................................6

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) .........................................................................6

*Factory Direct Wholesale, LLC v. Itouchless Housewares & Prods.*,
    411 F. Supp. 3d 905 (N.D. Cal. 2019) ...........................................................16

*GOLO, LLC v. Higher Health Network, LLC*,
    No. 3:18-CV-2434, 2019 WL 446251 (S.D. Cal. Feb. 5, 2019) ........................12

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ....................................................................................13

*Jerome's Furniture Warehouse v. Ashley Furniture Indus.*,
    No. 20CV1765-GPC(BGS), 2021 WL 1541649 (S.D. Cal. Apr. 20, 2021) ...........21

*JHP Pharms., LLC v. Hospira, Inc.*,
    52 F. Supp. 3d 992 (C.D. Cal. 2014) .............................................................18

*Johns v. Bayer Corp.*,
    No. 09CV1935, 2010 WL 2573493 (S.D. Cal. June 24, 2010) .........................10

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ...........................................................................7

*Kwikset Corp. v. Superior Court*,
    246 P.3d 877 (Cal. 2011) ..........................................................................20, 21

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*,
   114 F. Supp. 3d 852(N.D. Cal. 2015) ..................................................................21

*United States ex rel. Lee v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) .................................................................................7

*LegalForce RAPC Worldwide P.C. v. Glotrade*,
   No. 19-CV-01538-LHK, 2019 WL 6036618 (N.D. Cal. Nov. 14, 2019)..............15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014).......................................................................................11, 12

*Lona's Lil Eats, LLC v. Doordash, Inc.*,
   No. 20-cv-06703-TSH, 2021 WL 151978 (N.D. Cal. Jan. 18, 2021).....................21

*Luxul Tech. Inc. v. Nectarlux*,
   LLC, 78 F. Supp. 3d 1156 (N.D. Cal. 2015)......................................................12, 16

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ...............................................................................6

*Mylan Labs., Inc. v. Matkari*,
   7 F.3d 1130 (4th Cir. 1993) .................................................................................18

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
   290 F.3d 578 (3d Cir. 2002)...................................................................................9

*Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*,
   310 F. Supp. 3d 1089 (S.D. Cal. 2018)..................................................................16

*Orchard Supply Hardware LLC v. Home Depot USA*,
   967 F. Supp. 2d 1347 (N.D. Cal. 2013) .................................................................11

*PAX Water Techs., Inc. v. Medora Corp.*,
   No. LACV1809143, 2019 WL 4390567 (C.D. Cal. Aug. 5, 2019)........................8

*POM Wonderful LLC v. Purely Juice, Inc.*,
   No. CV-07-023633 CAS, 2008 WL 4222045 (C.D. Cal. July 17, 2008)...............23

*POM Wonderful v. Coca-Cola Co.*,
   573 U.S. 102 (2014)...............................................................................................19

*R & A Synergy LLC v. Spanx, Inc.*,
   No. 2:17-cv-09147-SVW-AS, 2019 WL 4390564 (C.D. Cal. May 1, 2019) .........16

*Rosen v. Uber Techs., Inc.*,
   164 F. Supp. 3d 1165 (N.D. Cal. 2016) .................................................................21

*Simpson Strong-Tie Co. v. Mitek Inc.*,
   No. 20-cv-06957-VKD, 2021 WL 1253803 (Apr. 5, 2021) ..................................21

*SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharm. Co.*,
  906 F. Supp. 178 (S.D.N.Y. 1995) ........................................................................................9

*SPS Techs., LLC v. Briles Aero., Inc.*,
  No. 18-cv-9536-MWF, 2019 WL 6841992 (C.D. Cal. Oct. 30, 2019) ..................................21

*Stearns v. Select Comfort Retail Corp.*,
  763 F. Supp. 2d 1128 (N.D. Cal. July 21, 2010) ..................................................................24

*ThermoLife Int'l, LLC v. Compound Sols., Inc.*,
  No. 20-16138, 2021 WL 963782 (9th Cir. 2021) ...........................................................14, 15

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*,
  No. CV-19-01715-PHX-SM, 2020 WL 248164 (D. Ariz. Jan. 16, 2020) ............................13

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011) ..................................................................................13, 15, 16

*Tucker v. Post Consumer Brands, LLC*,
  No. 19-CV-03993-YGR, 2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ................................9

*United States v. Caronia*,
  703 F.3d 149 (2d Cir. 2012) ...............................................................................................14

*United States v. United Healthcare Ins. Co.*,
  848 F.3d 1161 (9th Cir. 2016) ...........................................................................................10

*Upper Deck Co. v. Panini Am., Inc.*,
  469 F. Supp. 3d 963 (S.D. Cal. June 29, 2020) ..................................................................17

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...........................................................................................17

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) .............................................................................................24

*William H. Morris Co. v. Grp. W., Inc.*
  66. F.3d 255, 258 (9th Cir. 1995) .......................................................................................16

*Williams v. Gerber Prod. Co.*,
  552 F.3d 934 (9th Cir. 2008) ............................................................................................6, 9

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) ...............................................................................................6

*Wyeth v. Levine*,
  555 U.S. 555 (2009) ...........................................................................................................19

## STATUTES

15 U.S.C.
    § 43(a)(1)(A) ..................................................................................................17, 18
    § 1125(a) ..........................................................................................................5, 11

21 U.S.C. § 362(a) ...............................................................................................19

Cal. Bus. & Prof. Code
    §§ 17200–17210 ...................................................................................................5
    §§ 17200, *et seq* ................................................................................................22
    §§ 17500–1509 .....................................................................................................5
    §§ 17500, *et seq* ................................................................................................22

## RULES

Fed. R. Civ. P.
    9(b) ...................................................................................................2, 10, 11, 17
    12(b) ........................................................................................................2, 7, 8
    12(b)(1) ..................................................................................................................6
    12(b)(6) .............................................................................................................6, 7
    12(f) ...............................................................................................................24, 25
    15 ...........................................................................................................................6
    15(a) ......................................................................................................................6

## REGULATIONS

48 Fed. Reg. 5852-01 (Feb 8, 1983) ....................................................................4, 5

LATHAM&WATKINS LLP

## ISSUES TO BE DECIDED

As required by Local Rule 7-4, Scilex Pharmaceuticals Inc. ("Scilex") identifies the following seven issues raised by Hisamitsu America, Inc.'s ("Hisamitsu") Motion to Dismiss and Motion to Strike Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 12(f) (the "Motion to Dismiss and Strike"):

1. Whether Scilex has alleged sufficient facts to give it standing under Article III of the United States Constitution, the Lanham Act and the relevant provisions of California state law to assert its claims against Hisamitsu;

2. Whether Scilex has adequately alleged a claim for false and misleading representations against Hisamitsu under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A);

3. Whether Scilex has adequately alleged a claim for false and deceptive advertising against Hisamitsu under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B);

4. Whether Scilex has adequately alleged a claim against Hisamitsu under the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500–17509 ("FAL");

5. Whether Scilex has adequately alleged a claim against Hisamitsu under the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210 ("UCL");

6. Whether the Court should abstain from adjudicating whether Hisamitsu's advertising claims that its SALONPAS® Lidocaine Relieving Gel Patch ("SALONPAS®") provides "numbing relief" and "block pain receptors" are false and deceptive within the meaning of the Lanham Act and the California FAL and UCL pursuant to the primary jurisdiction doctrine even though those claims are not contingent on any decision-making responsibility of the Food & Drug Administration ("FDA"); and

7. Whether this Court should strike the allegations in the First Amended Complaint regarding the 2003 proposed FDA Monograph notwithstanding the fact that Hisamitsu does not challenge the accuracy of such allegations and those allegations provide historical context for Scilex's claims against Hisamitsu.

## I.      INTRODUCTION

With its First Amended Complaint (the "Complaint" or "FAC"), Scilex alleges that Hisamitsu has engaged in false and misleading representations, false and deceptive advertising, and unfair competition in violation of the federal Lanham Act and applicable California law. Specifically, Scilex alleges in its Complaint with particularity: (1) how Hisamitsu marketed its SALONPAS® products, a lidocaine patch sold over the counter ("OTC") to consumers seeking to manage their pain, by making numerous false, misleading, and deceptive claims regarding those products; and (2) how such improper marketing and acts of unfair competition have damaged Scilex, particularly the sales of its FDA-approved lidocaine patch product sold under the brand ZTlido®, and otherwise damaged the goodwill associated with that brand.

Throughout its Memorandum and Points of Authorities in Support of its Motion to Dismiss and Strike ("Hisamitsu's Memorandum" or "Hisamitsu Mem."), Hisamitsu asks this Court to resolve various factual disputes relating to Scilex's claims between the parties in Hisamitsu's favor—an approach that is entirely inappropriate at this procedural stage in the case. For example, Hisamitsu urges the Court to find that Hisamitsu's advertising claim that its SALONPAS® products are "maximum strength" could not be misleading or deceptive even though Scilex has specifically alleged how consumers have been misled or deceived by such a claim—that is, by construing the claim to mean that Hisamitsu's product delivers the "maximum strength" of lidocaine available to the area of pain when it does not do so, and Hisamitsu's product contains the "maximum strength" lidocaine when there are other higher concentration lidocaine patches available. Hisamitsu further argues that disclaimers with respect to its "maximum strength" claim in its advertising should effectively excuse the deceptive nature of its advertising when the law does not support such an argument, particularly on a motion to dismiss before the Court has the benefit of factual development regarding the scope and consumer perceptions of those disclaimers. Similarly, Hisamitsu argues that various other advertising claims it has made regarding its SALONPAS® products could not be misleading as a matter of fact, again insisting that this Court should determine on a motion to dismiss that Hisamitsu's advertising is not false, misleading or deceptive notwithstanding Scilex's allegations to the contrary. Given that the Court cannot resolve

1   these kinds of factual disputes on a motion to dismiss, Hisamitsu's motion should be denied out of

2   hand.

3        Several of the arguments in Hisamitsu's Motion to Dismiss and Strike require the Court to

4   resolve other factual disputes in its favor.  For example, Hisamitsu claims that Scilex does not have

5   standing to assert its claims under Article III of the Constitution or the applicable federal or state

6   laws, when Scilex has included extensive factual allegations detailing the basis for such standing.

7   Hisamitsu also argues that Scilex has failed to meet the heightened pleading standard found in Fed.

8   R. Civ. P. 9(b), when Scilex alleges with extensive particularity the nature of the alleged deceptive

9   nature of Hisamitsu's conduct.  Hisamitsu further argues more generally that reasonable consumers

10  are not likely to be deceived regarding other challenged advertising claims—an argument that yet

11  again hinges entirely on resolving factual matters regarding the beliefs of reasonable consumers in

12  Hisamitsu's favor.[1]

13       Hisamitsu's scattershot legal arguments similarly fail.  For example, Hisamitsu contends

14  that Scilex's claims are not susceptible to judicial resolution and instead must be adjudicated by

15  the FDA under the primary jurisdiction doctrine.  However, that doctrine does not apply here given

16  that Scilex is only bringing its claims under the Lanham Act and analogous California law, and is

17  not seeking any particular FDA interpretation of those advertising claims.  As another example,

18  Hisamitsu claims that Scilex cannot bring a claim for false advertising under California law

19  because it is a competitor, and thus, could not rely on Hisamitsu's false advertising claims.

20  However, several recent decisions from courts in the Ninth Circuit have rejected this position.  As

21  a final example, Hisamitsu asks the Court to strike Scilex's allegations regarding the FDA's 2003

22  proposed Monograph as prejudicial.  However, as even Hisamitsu acknowledges, the allegations

---

[1] Hisamitsu also uses its Memorandum to engage in various *ad hominem* attacks on Scilex.  For example, Hisamitsu claims that: (1) Scilex's ZTlido® product is "misprescribed" for off-label indications; (2) Scilex has sought to "exploit" such an off-label market and/or developed marketing plans that "rel[y] heavily upon" such indications; and (3) Scilex filed this lawsuit to prevent the over-the-counter distributors from lawfully advertising their 4% lidocaine patches for pain relief." Hisamitsu Mem. at 1-2, 4.  Such statements regarding Scilex's business and its motivations for this lawsuit are factually incorrect in several ways, but more importantly they are irrelevant for consideration on a Fed. R. Civ. P. 12(b) motion to dismiss.  If anything, they evidence Hisamitsu's attempt to redirect the Court from Scilex's core contentions – *i.e.*, that Hisamitsu and its fellow Defendants have engaged in false, misleading, and deceptive advertising to sell their competing lidocaine patches.

1  are accurate, and in any event, they are relevant background to the claims asserted and are not

2  prejudicial in any respect.

3         For the foregoing reasons, as explained in more detail below, this Court should deny

4  Hisamitsu's Motion to Dismiss and Strike.

5  **II.    <u>STATEMENT OF THE FACTS</u>**

6         In November 2018, Scilex received FDA approval for its ZTlido® product to treat patients

7  suffering from post-herpetic neuralgia ("PHN"), a complication of shingles.  FAC ¶¶ 1, 4.  PHN

8  is a syndrome of persistent neuropathic pain, which often occurs after a patient experiences an

9  outbreak of shingles.  *Id.* at ¶ 23.  PHN is regularly associated with pain, in addition to itching,

10 burning, aching, or throbbing from damaged nerve fibers.  *Id.* at ¶ 24.  The FDA-approved product

11 labeling of ZTlido® authorizes up to three patches to be applied for up to 12 hours within a 24-

12 hour period.  *Id.* at ¶ 25.

13        While ZTlido® has only received FDA approval for treatment of PHN, it is frequently

14 prescribed for off-label uses, including general neuropathic pain, such as back and spinal pain.  *Id.*

15 at ¶¶ 7, 25.  There is ample evidence that prescription strength lidocaine patches, such as ZTlido®,

16 can be an effective first-line therapy in the treatment of such pain.  *Id*. at ¶ 26.  Prescribing

17 clinicians often recommend off-label usage of prescription lidocaine patches for such pain, with a

18 2012 study finding that 82% of lidocaine patches were intended for off-label usage.  *Id.* at ¶ 26.

19        The ZTlido® patch, which utilizes a proprietary single-layer nonaqueous polymer

20 technology, delivers a controlled dose of lidocaine through the skin to provide analgesic effects.

21 *Id.* at ¶ 27.  This proprietary formulation allows ZTlido® to provide the same efficacy as

22 prescription 5% lidocaine patches with less lidocaine by weight, which enables a thinner patch

23 with improved adhesion to the skin.  *Id.* at ¶ 27.  Due to the superior adhesion of ZTlido® over

24 other lidocaine patches, that product adheres to the body for a full 12 hours and provides pain relief

25 for 24 hours, allowing ZTlido® patches to continue to work and have the same efficacy, for

26 example, during physical exercise.  *Id.* at ¶ 28.  This superior adhesion also reduces the incidence

27 of possible negative consequences of patch detachment, including the risk of dangerous

28 consumption of patches by children or pets and the costs of replacement patches.  *Id.* at ¶ 28.

1  Moreover, formulations that deliver less lidocaine through the skin have not been shown to be as

2  effective (or more effective) than Scilex's products. *Id.* at ¶ 27.

3          The FDA regulates the sale and advertising of all drugs, whether available by prescription

4  or OTC. *Id.* at 30.  Pursuant to the FDA's current statutory and regulatory framework, an OTC

5  drug can be marketed and sold if: (1) it complies with an applicable monograph; (2) it is the subject

6  of an FDA-approved New Drug Application ("NDA"), or in the case of generic approval, an

7  Abbreviated New Drug Application; or (3) through an FDA-approved switch from a prescription

8  to OTC drug. *Id.* at ¶ 30.  SALONPAS®, Hisamitsu's OTC lidocaine patch, is sold pursuant to the

9  first path, as it contains between .5% to 4% lidocaine by weight:  it is subject to the FDA's

10 Tentative Final Monograph ("TFM") for external analgesic products, which is published at 48 Fed.

11 Reg. 5852-01 (Feb 8, 1983). *Id*. at ¶ 30.  This TFM states that the labeling of such OTC lidocaine

12 products "is limited" to the temporary relief of pain and itching associated with minor burns,

13 sunburns, minor cuts, scrapes, insect bites, or minor skin irritations. *Id.* at ¶ 31.  In 2003, the FDA,

14 after expressing concern about the lack of data concerning the safety and efficacy of external

15 analgesic patches, proposed an amendment to the TFM clarifying that the FDA did not have

16 sufficient data to support a finding that OTC lidocaine patches were "generally recognized as safe

17 and effective." *Id.* at ¶ 32.  Until the FDA could conduct further study of OTC lidocaine patches,

18 the FDA proposed classifying external analgesic patches as Category III products, which may only

19 be marketed and sold following FDA testing, review and approval through either the NDA or

20 ANDA process. *Id.* at ¶ 34.

21          Despite not complying with federal guidance regarding OTC products nor seeking FDA

22 approval for a prescription product, Hisamitsu has marketed, distributed and sold SALONPAS®,

23 which contains 4% lidocaine by weight. *Id.* at ¶ 9.  Through advertisements on television, social

24 media and the use of celebrity promoters, Hisamitsu has engaged in a false, misleading, and

25 deceptive marketing campaign to promote SALONPAS®. *Id.*  In such marketing, Hisamitsu makes

26 the following improper claims regarding SALONPAS®: (1) it is "Maximum Strength"—*i.e.*, it

27 contains ***and*** delivers the maximum amount of lidocaine in patch form; (2) a customer can "apply

28 [the product] for 8 hours"—*i.e.*, it adheres to the body ***and*** provides pain relief for up to 8 hours;

(3) it provides "numbing relief"; (4) it "blocks pain receptors"; (5) it "desensitizes aggravated nerves"; (6) SALONPAS® is superior to other prescription lidocaine patches (which necessarily includes Scilex's ZTlido® product); and (7) it is FDA-indicated or approved for treatment of back pain. *Id.* at ¶ 61.  Hisamitsu's misleading and false marketing campaign also relies on celebrity spokesperson Dr. Bob Arnot, who claims, *inter alia*, in certain of his advertising testimonials that: (1) SALONPAS® has "4% of lidocaine which I'd argue is close to the 5% lidocaine you would get with a prescription"; and (2) SALONPAS® "followed the same principles used for the Rx (5% Lidocaine) version, making it the same size and using the same hydrogel technology as its Rx cousin.  The only change they made was to improve the price so as to make the product more accessible to the general public." *Id.* at ¶ 61.

As alleged in Scilex's Complaint, Hisamitsu's statements are false, misleading and deceptive for a number of reasons.  By making these improper claims, Hisamitsu has achieved their goals of increasing their sales and profits.  *Id.* at ¶ 12.  Hisamitsu's financial gains have occurred at Scilex's expense, as SALONPAS® directly competes with ZTlido®.  *Id.*  Indeed, Scilex has incurred and continues to incur damages in the form of diminished goodwill of the ZTlido® mark and products associated with that mark, as well as lost profits stemming from a reduced demand for ZTlido®, all of which benefit Hisamitsu.  *Id.* ¶¶ 60, 80, 91.

Based on the foregoing conduct, Scilex asserted claims against Hisamitsu for false, misleading, and deceptive advertising under the Lanham Act, 15 U.S.C. § 1125(a) (Counts I and II), false advertising in violation of the FAL, Cal. Bus. & Prof. Code §§ 17500–1509 (Count III), and unfair competition in violation of the UCL, Cal. Bus. & Prof. Code §§ 17200–17210 (Count IV).[2]

---

[2] Scilex asserted the same claims against Defendants Sanofi-Aventis US LLC and Chattem, Inc. (collectively, "Chattem") to address their false, misleading, and deceptive advertising, and unfair competition.  Chattem has filed its own motion to dismiss, to which Scilex is responding separately.

### III.     LEGAL STANDARDS

#### A.     Federal Rule of Civil Procedure 12(b)(1)

When deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, courts "take the allegations in the plaintiff's complaint as true." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Dismissal is only appropriate "if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008).

#### B.     Federal Rule of Civil Procedure 12(b)(6)

In ruling on a Rule 12(b)(6) motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (internal quotations and citation omitted). Additionally, "[t]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "If the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief," the motion to dismiss must be denied. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011)).

#### C.     Federal Rule of Civil Procedure 15(a)

If a court finds that a claim has not been adequately pled, the Ninth Circuit has recognized that it should typically still give the plaintiff leave to file an amended complaint to attempt to address any factual deficiencies that the court may identify. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003). Under Federal Rule of Civil Procedure 15(a), leave to amend should be "freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15—to facilitate [a] decision on the merits rather than pleadings or technicalities." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quotations and citations omitted). As the Ninth Circuit has held, leave to amend should be granted if it appears *at all* possible that

the plaintiff can correct the defect that is the basis for a dismissal ruling.  *See Crowley*, 734 F.3d at 977; *see also United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997 (9th Cir. 2011) ("Under the liberal standards for amending complaints, [Plaintiffs] should be permitted to plead additional facts that could cure the Complaint's deficiencies [identified on a Rule 12(b) motion] as to the allegations that [defendant] made a false statement and acted with the requisite scienter").

## IV.   ARGUMENT

### A.   Hisamitsu Improperly Introduces Extraneous Factual Materials and Fails to Accept Scilex's Allegations as True.

Through an attorney affidavit and thirteen appended exhibits, Hisamitsu seeks to introduce improper material on a motion to dismiss, attaching irrelevant and inflammatory information regarding criminal and civil charges brought against a non-party to this dispute and attaching examples of other OTC lidocaine patch companies who—per Hisamitsu's telling—engage in more aggressive advertising.  *See* Exs. A, J to Ghiam Decl.  Such additional material cannot be considered on a Rule 12(b) motion and should be disregarded by this Court when resolving Hisamitsu's Motion to Dismiss and Strike.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure").

Notwithstanding the procedural standard of review on a Rule 12(b) motion, Hisamitsu also repeatedly disputes the well-pleaded allegations in Scilex's Complaint in its Memorandum.  For example, Hisamitsu contends as follows, notwithstanding the contrary allegations in Scilex's pleading:

- "Consistent with the Monograph, the packages for Hisamitsu's SALONPAS patches are designed to accurately inform the consumers about the content of each package."  Hisamitsu Mem. at 4.

- "The [SALONPAS] package does not make any representation about efficacy of lidocaine delivery when the patch is applied to the skin."  Hisamitsu Mem. at 5.

- "Dr. Arnot provided certain factual information about lidocaine and Hisamitsu's SALONPAS patches.  For example, after explaining the prescription application for lidocaine, *i.e.*, PHN, Dr. Arnot explained that that [sic] Hisamitsu's products

'all have 4% of lidocaine which I'd argue is close to the 5% lidocaine patch you would get with a prescription.'" Hisamitsu Mem. at 5.

- "Plaintiff's reading of Hisamitsu's packages, however, defies credulity. Nowhere on the package is there are representation or statement concerning how long the product adheres to skin or whether the 'Maximum Strength' of the product remains effective for all 8 hours." Hisamitsu Mem. at 14

- "The posts also direct the patients to consult with a physician before switching to Hisamitsu's patches, which would have clarified any possibility of confusion." Hisamitsu Mem. at 21.

By making these arguments, Hisamitsu characterizes the allegations in a light most favorable to it and asks the Court to assume that consumers perceive its advertising in a way that is directly contradicted by the allegations of Scilex's Complaint. In sum, Hisamitsu simply cannot insist that *the very same allegedly misleading or false statement* is not actually misleading or false through a Rule 12(b) motion to dismiss.

Scilex's Complaint also contains allegations of false, misleading, and deceptive statements concerning medical, scientific and technical matters that by their very nature are ill-suited to resolution through a motion to dismiss. *See* FAC ¶¶ 41-44, 49-52, 61. "Where the advertising at issue 'involves medical, scientific, or technical matters, expert witnesses will be necessary to unravel truth from falsity.'" *PAX Water Techs., Inc. v. Medora Corp.*, No. LACV1809143, 2019 WL 4390567, at *5 (C.D. Cal. Aug. 5, 2019) (quoting 5 McCarthy on Trademarks and Unfair Competition § 27:56 (5th ed. 2019)). Here, Scilex alleges that Hisamitsu's medical, scientific and technical claims for its SALONPAS® products are false or misleading: "MAX STRENGTH" with "IMPROVED ADHESION" (*see* FAC ¶ 53); "desensitize[s] aggravated nerves for temporary relief of pain [in] back, neck, shoulders, knees & elbows" (*see* FAC ¶ 53); provides "numbing relief" (*see* FAC ¶ 53); consumers may "apply [the product] for 8 hours" (*see* FAC ¶ 53); and more. *See* FAC ¶ 61. Such allegations require extensive factual and expert testimony before the Court and/or a jury can appropriately resolve the question as to whether the advertising claims are false, misleading and/or deceptive. Accordingly, they cannot be resolved at the motion to dismiss stage.

1    Notwithstanding the fact that the Court cannot resolve factual disputes at the motion to

2    dismiss stage, Hisamitsu nevertheless claims that its "disclaimer" solely about "Maximum

3    Strength" absolves it of responsibility such that the entire Count II claim, containing allegations

4    regarding several of Hisamitsu's false and misleading claims, should be dismissed.  *See* Hisamitsu

5    Mem. at 12-13 (citing *Cannarella v. Volvo Car USA LLC*, No. CV 16-6195-RSWL-JEMx, 2016

6    WL 9450451, at *8 (C.D. Cal. Dec. 12, 2016)).[3]  Hisamitsu maintains that its product disclaimers

7    "precisely refute" the statements that Scilex alleges to be false or misleading.  Hisamitsu Mem. at

8    13.  While Scilex disputes the factual premise of Hisamitsu's claim as the disclaimer does not

9    address Scilex's allegations regarding the amount of lidocaine delivered to the area of pain by the

10   SALONPAS products®, false or misleading claims are still not necessarily excused or remedied

11   by the use of disclaimers: "[a] disclaimer that 'purports to' change the apparent meaning of the

12   claims and renders them literally truthful, but which is so inconspicuously located or in such fine

13   print that readers tend to overlook it, will not remedy the misleading nature of the claims."

14   *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharm.*

15   *Co*., 906 F. Supp. 178, 182 (S.D.N.Y. 1995).

16   Stated differently, a disclaimer—even if lengthy—on the side of a box that is unlikely to

17   be noticed by consumers cannot remedy advertising "that necessarily conveys a false message to

18   the consumer."  *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms.*

19   *Co.*, 290 F.3d 578, 598 (3d Cir. 2002); *see also Tucker v. Post Consumer Brands, LLC*, No. 19-

20   CV-03993-YGR, 2020 WL 1929368, at *5 (N.D. Cal. Apr. 21, 2020) (a reasonable consumer "is

21   not expected to pick up the product and examine the fine print on the ingredient list") (citing

22   *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008)) ("We do not think that the

23   FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the

24   ingredient list to correct those misinterpretations and provide a shield for liability for the

---

25   [3] In *Cannarella*, defendants published a "Highway Robbery Commercial" on YouTube.  The
26   commercial contained a disclaimer that the Peristaltic System displayed in the commercial was not
     for sale.  The reviewing court found that no Lanham Act claim could be stated on the alleged facts,
27   because the Peristaltic System at issue failed to meet the statutory language that the false statement
     be tied to "goods, services, or items used in commerce."  *Id*. at *20 (emphasis added).  The
28   *Cannarella* case, which addressed a viral marketing video, is factually and legally inapposite to
     the case presented here.

LATHAM&WATKINSᴸᴸᴾ

OPPOSITION TO HISAMITSU'S
MOTION TO DISMISS AND STRIKE
CASE NO 4:21-cv-01280-JST

deception."); *Dorfman v. Nutramax Labs., Inc.*, No. 13CV0873, 2013 WL 5353043, at \*11 (S.D. Cal. Sept. 23, 2013) ("[t]he presence of a disclaimer…does not require dismissal of the fraudulent advertising claims"); *Johns v. Bayer Corp.*, No. 09CV1935, 2010 WL 2573493, at \*4 (S.D. Cal. June 24, 2010) (refusing to grant a motion to dismiss false advertising claims because the packaging had a disclaimer).  In sum, Hisamitsu cannot rely on the disclaimer on its packaging to avoid discovery and further proceedings with respect to Scilex's challenge to Hisamitsu's otherwise false, misleading and deceptive advertising claims.

### B. Scilex Has Alleged Its Claims Grounded in Fraud with Sufficient Particularity.

Hisamitsu argues that all of Scilex's claims are "grounded in fraud" and are therefore subject to the heightened pleading standard of Rule 9(b).  *See* Hisamitsu Mem. at 7.  While Scilex does not dispute that at least certain of its claims are subject to the standards of Rule 9(b) regarding claims "grounded in fraud," it nonetheless has easily met that heightened pleading standard because it states its claims with particularity and identifies the time, place, nature and specific content of Hisamitsu's false and misleading advertisements.  As the Ninth Circuit recognizes, to meet the burden of Rule 9(b), a plaintiff must allege "the who, what, when, where, and how" with respect to the fraudulent conduct.  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018).  This information need only be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Scilex's Complaint alleges specific facts regarding the precise Hisamitsu advertising claims at issue (*see* FAC ¶ 61), explains why those advertising claims are false or misleading (*see id.*), states how Hisamitsu specifically targeted consumers for issues that the ZTlido® patch is commonly used to treat (*see* FAC ¶ 56), and alleges lost sales and loss of goodwill for its ZTlido® mark as a result of Hisamitsu's false and misleading advertisements (*see* FAC ¶¶ 80, 91).  These non-conclusory factual allegations are plausible and form the basis of each of Scilex's four claims

1   against Hisamitsu.  *See* FAC ¶¶ 74-108.  In sum, Scilex's allegations are not "generic or vague

2   claims, and [Scilex] has pled enough facts to put [Hisamitsu] on notice regarding the specific

3   advertisements in question, and to describe the who, what, when, where, and how of the alleged

4   fraud."  *Orchard Supply Hardware LLC v. Home Depot USA*, 967 F. Supp. 2d 1347, 1366 (N.D.

5   Cal. 2013) (Tigar, J.) (denying motion to dismiss Lanham Act, UCL, and FAL claims on Rule 9(b)

6   grounds).

7        **C.      Scilex Has Standing to Bring Its Lanham Act Claims.**

8        Hisamitsu argues that Scilex does not have Lanham Act standing because it "fails to allege

9   non-conclusory facts to establish that its 5% bioequivalent lidocaine patches *directly compete* with

10  Hisamitsu's 4% lidocaine patches."  Hisamitsu Mem. at 10-11 (emphasis added).  In making this

11  argument, Hisamitsu again introduces its own factual narrative, averring that Hisamitsu's

12  advertising could not have harmed Scilex by stating: (1) the market for lidocaine patches is very

13  crowded; and (2) Hisamitsu and its Co-Defendants were selling their OTC patches prior to Scilex's

14  receipt of FDA approval.  *See id.*  Hisamitsu again fails to accept Scilex's well-pleaded Complaint

15  as true, which alleges that—since Scilex received FDA approval and has started selling its ZTlido®

16  product—it has lost both past and future sales (in addition to goodwill) as a result of Hisamitsu's

17  false advertising.  FAC ¶¶ 12, 60, 80, 91.

18       Inappropriate factual quibbles aside, Hisamitsu also misinterprets the law on Lanham Act

19  standing.  In order to assert a false advertising claim under the Lanham Act's § 1125(a), Scilex

20  need only establish that it falls within the statute's "zone of interests" and that its commercial

21  injuries were proximately caused by Hisamitsu's representations.  *Lexmark Int'l, Inc. v. Static

22  Control Components, Inc.*, 572 U.S. 118, 131-34 (2014).  "[T]o come within the zone of interests

23  in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial

24  interest in reputation or sales."  *Lexmark*, 572 U.S. at 131-32.  The "zone of interests" "test

25  forecloses suit *only* when a plaintiff's interests are *so marginally related to or inconsistent with

26  the purposes implicit in the statute* that it cannot reasonably be assumed that Congress authorized

27  that plaintiff to sue."  *Id.* at 130 (internal quotation marks and citation omitted) (emphasis added).

28  Here, Scilex has alleged that it lost both past and future sales as well as goodwill as a result of

Hisamitsu's false advertising.  FAC ¶¶ 12, 80, 91.  These allegations—which must be accepted as true on a motion to dismiss—are more than sufficient to bring Scilex within the required "zone of interests."  *Lexmark*, 572 U.S. at 137 ("[L]ost sales…are injuries to precisely the sorts of commercial interests the Act protects."); *see also Luxul Tech. Inc. v. Nectarlux*, LLC, 78 F. Supp. 3d 1156, 1169 (N.D. Cal. 2015) ("Plaintiff has alleged lost sales and profits, and damage to its reputation, as a result of Defendant's misbranding of Plaintiff's products, false advertising, and misrepresentations to third-parties....These allegations are sufficient to show commercial injury."); *GOLO, LLC v. Higher Health Network, LLC*, No. 3:18-CV-2434, 2019 WL 446251, at *7 (S.D. Cal. Feb. 5, 2019). (allegations of "diverted sales" and "cost[s] of corrective advertising to counteract these misrepresentation and false advertising" were sufficient to show commercial injury).

Moreover, as recognized by Hisamitsu, courts no longer require that Scilex and Hisamitsu be direct competitors for Scilex to be able to assert a Lanham Act claim against Hisamitsu.  Indeed, the Supreme Court rejected any such rule in 2014 with its *Lexmark* decision.  *Lexmark¸* 572 U.S. at 136 ("It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors") (emphasis in original); *Luxul*, 78 F. Supp. 3d at 1170 ("[T]he United States Supreme Court has recently held that a plaintiff need not be a direct competitor with a defendant to bring a false advertising claim under the Lanham Act.").

In any event, Scilex has specifically alleged that it competes for the same consumers seeking treatment for nerve, neuropathic and musculoskeletal pain, including back and spinal pain.  *See* FAC ¶ 71.  Scilex has also specifically alleged that its ZTlido® patches are often prescribed for these off-label uses.  *See* FAC ¶ 71.  Finally, Scilex has specifically alleged that Hisamitsu has harmed Scilex's business by targeting consumers who would otherwise purchase ZTlido® patches by stating that their patches are "maximum strength" and by directly comparing their OTC lidocaine patch products to the strength of prescription patches such as ZTlido® in commercials and online marketing materials.  *See* FAC ¶¶ 12, 61, 64-66, 80, 86, 97.  This direct causal line of

1   allegations connects Hisamitsu's false and misleading advertising to Scilex's injuries, sufficiently

2   pleading proximate causation for standing under the Lanham Act.

3         **D.      Scilex Has Article III Standing to Assert Its Claims against Hisamitsu.**

4         Hisamitsu further argues that Scilex "lacks standing [under Article III of the Constitution]

5   to pursue any claim against Hisamitsu," Hisamitsu Mem. at 7, contending principally that Scilex

6   fails to allege that Scilex's injuries are "fairly traceable" to Hisamitsu's actions.  *Id.* at 8.  However,

7   Scilex pleads the requisite elements for Article III standing because its Complaint includes

8   allegations demonstrating "a concrete and particularized injury that is fairly traceable to the

9   challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth*

10  *v. Perry,* 570 U.S. 693, 704 (2013); *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1187

11  (9th Cir. 2016).

12        As detailed above in Section IV(C), *supra*, Scilex sufficiently pled that it has suffered an

13  injury-in-fact as a result of Hisamitsu's conduct by alleging that it has lost sales and experienced

14  diminished goodwill of its ZTlido® product because of Hisamitsu's false and deceptive

15  advertisements, which have caused consumers to be misled and choose Hisamitsu's OTC lidocaine

16  patch over ZTlido®.  FAC ¶¶ 12, 60, 62.  *See TrafficSchool.com, Inc. v. Edriver Inc*., 653 F.3d 820,

17  825 (9th Cir. 2011) (explaining that a plaintiff in a false advertising suit "establishes Article III

18  injury if some consumers who bought the defendant['s] product under [a] mistaken belief fostered

19  by the defendant would have otherwise bought the plaintiff['s] product") (quotations and citation

20  omitted).  To establish an injury, a plaintiff can "creat[e] a chain of inferences showing how

21  defendant's false advertising could harm plaintiff's business." *Id*.; *ThermoLife Int'l LLC v. Sparta*

22  *Nutrition LLC*, No. CV-19-01715-PHX-SM, 2020 WL 248164, at *4 (D. Ariz. Jan. 16, 2020)

23  (holding that plaintiff sufficiently pled an injury-in-fact where it claimed—without citing any

24  specific sales data—that consumers are misled into purchasing defendant's falsely advertised

25  goods when they otherwise would purchase plaintiff's products).[4]

26

27

---

28  [4] Scilex will—at the appropriate juncture—develop expert testimony demonstrating the nexus between Hisamitsu's unlawful advertising and Scilex's lost profits.  There is, however, no requirement for Scilex to allege such a fulsome damages model in its Complaint.

1       Hisamitsu ignores detailed factual allegations throughout the Complaint when it claims

2   that Scilex has failed to "allege any non-conclusory facts showing how or why any injury sustained

3   by Plaintiff is necessarily traceable to the alleged false or misleading statements by Hisamitsu and

4   *no other manufacturer or distributor* in this crowded market."   Hisamitsu Mem. at 8.

5   Unsurprisingly, Hisamitsu cites no authority for its argument that Scilex must identify in its

6   Complaint that it suffered harm exclusively from Hisamitsu's conduct, for Hisamitsu's proposed

7   legal standard is not recognized by any court, let alone a court reviewing a motion to dismiss.

8   Moreover, Scilex has specifically alleged that: Scilex and Hisamitsu compete for the same

9   consumers seeking treatment for nerve, neuropathic, and musculoskeletal pain, *see* FAC ¶ 71;

10  ZTlido® patches are often prescribed for these off-label uses, *see id.* ¶¶ 7, 26, 71; and Hisamitsu

11  specifically targets consumers who would otherwise purchase ZTlido® patches by advertising that

12  their OTC Lidocaine Patches are "maximum strength," implying those products have FDA

13  approval for certain indications, and by directly comparing those patches to the strength of

14  ZTlido® patches, s*ee id.* ¶¶ 12, 59, 61, 64-66, 80, 86, 97.  The Complaint therefore creates at least

15  a chain of inferences showing a concrete injury-in-fact, if not a direct assertion of such an injury.

16      Hisamitsu, citing no authority and in direct contravention of the factual allegations in the

17  Complaint, also contends that Scilex "may not legitimately claim any losses in association with its

18  off-labels [sic] sales."[5]  *See* Hisamitsu Mem. at 9.  To the contrary, an Article III injury may be

19  established, as Scilex has done here, by showing that consumers were misled into purchasing

20  falsely advertised goods when they otherwise would have purchased plaintiff's products.  *See*

21  *ThermoLife Int'l LLC* at *4.  Put simply, there is no exception for off-label indication sales and the

22  relevant authority makes clear that Scilex has adequate Article III standing based on its allegations

23  relating to such sales.  *Id.*

24

---

25  [5] Pharmaceutical companies routinely rely on off-label sales, which is entirely appropriate and not
    prohibited by FDA regulations so long as the distributor does not promote such off-label uses:

26  *United States v. Caronia*, 703 F.3d 149, 153 (2d Cir. 2012) (quoting U.S. Food and Drug
    Administration, FDA Drug Bulletin, 12 FDA Drug Bull. 1, 5 (1982) ("Once a drug has been

27  approved for marketing, a physician may prescribe it for uses or in treatment regimens or patient
    populations that are not included in approved labeling. Such 'unapproved' or, more precisely,

28  'unlabeled' uses may be appropriate and rational in certain circumstances, and may, in fact, reflect
    approaches to drug therapy that have been extensively reported in medical literature.")).

In addition, as explained in Section IV(C), *supra*, Scilex and Hisamitsu are direct competitors, and Hisamitsu's misrepresentations therefore create a presumption of an injury-in-fact. When "a plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825-27 (9th Cir. 2011) (parties were direct competitors when they marketed and sold the same type of courses to the same target market). In sum, Scilex has sufficiently pled facts showing its injury is fairly traceable to Hisamitsu's false and misleading advertising. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Scilex has done more than merely state, in a speculative or vague manner, that Hisamitsu's false advertising caused Scilex harm. Rather, Scilex has "connect[ed] the dots" by alleging the manner in which Hisamitsu positions itself as equivalent or superior to prescription products in order to specifically target potential and actual consumers of Scilex's prescription lidocaine patch and divert sales to those consumers away from Scilex and to Hisamitsu. *ThermoLife Int'l, LLC v. Compound Sols., Inc.*, No. 20-16138, 2021 WL 963782, at *2 (9th Cir. 2021) (reversing dismissal of ThermoLife's Lanham Act claims) (unpublished); *LegalForce RAPC Worldwide P.C. v. Glotrade*, No. 19-CV-01538-LHK, 2019 WL 6036618, at *14-15 (N.D. Cal. Nov. 14, 2019) (Plaintiff's allegations that "unsolicited offers" were "somehow deficient" sufficient for purposes of stating a claim).

1          **E.      Scilex Adequately Pleads the Remaining Elements of a Lanham Act Claim.**

2          Hisamitsu argues that Scilex fails to state a claim under the Lanham Act because Scilex

3   purportedly failed to allege actual or implied falsity.  Hisamitsu Mem. at 11. To state a claim for

4   false advertising, Scilex must allege: (1) a statement made in an advertising that is false or

5   misleading; (2) that "it actually deceives or has the tendency to deceive a substantial segment of

6   its audience"; (3) that it is "likely to influence purchasing decisions"; and (4) that the "plaintiff has

7   been or is likely to be injured by the false advertisement." *Luxul*, 78 F. Supp. 3d at 1172 (N.D.

8   Cal. 2015) (quoting *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 828-29 (9th Cir. 2011)).

9   Scilex has pled each of these elements more than adequately in its Complaint.  Courts typically

10  consider the first element (i.e., whether the defendant made a false and misleading statement) and

11  the second element (i.e., whether the statement deceives or has a tendency to deceive a substantial

12  segment of its audience) together.  *See, e.g.*, *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*,

13  310 F. Supp. 3d 1089, 1124 (S.D. Cal. 2018) (addressing "falsity and deception together…is

14  consistent with Ninth Circuit case law").

15         At the pleading stage, a plaintiff need not provide evidentiary proof of actual or likely

16  deception.  *See, e.g.*, *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D.

17  Cal. 2019); *R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-cv-09147-SVW-AS, 2019 WL 4390564,

18  at *12 (C.D. Cal. May 1, 2019) ("[T]he Court recognizes that consumer deception is typically

19  proved through consumer surveys, which may be appropriately conducted during the discovery

20  phase."); *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. 08-cv-3931-RS, 2009 WL 55178, at *4

21  (N.D. Cal. Jan. 7, 2009) (rejecting that a "false advertising claim should be dismissed because it

22  fails to aver evidence of actual or likely deception to purchasers").[6]  And when a statement is

23  literally false, deception is presumed at the pleading stage.  *See Factory Direct Wholesale, LLC v.*

24  *Itouchless Housewares & Prods.*, 411 F. Supp. 3d 905, 924 (N.D. Cal. 2019) (quoting *AECOM*

---

26  [6] Hisamitsu's cites *William H. Morris Co. v. Grp. W., Inc.* 66. F.3d 255, 258 (9th Cir. 1995) to
27  argue that "proof that the advertising actually conveyed the implied message and thereby deceived
    a significant portion of the recipients becomes critical." Hisamitsu Mem. at 13.  In *William H.*
    *Morris*, the Ninth Circuit was reviewing a matter that had proceeded beyond responsive pleadings
28  to a bench trial.  The case, therefore, provides no guidance on how a court must review a plaintiff's
    allegations on a motion to dismiss.

*Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1056 (C.D. Cal. 2018)) ("With regard to the second element, 'where a statement is literally false or the defendant intentionally set out to deceive,…actual deception' is presumed."); *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 976 (S.D. Cal. June 29, 2020).

Accordingly, at the pleading stage, to sufficiently allege falsity and actual or likely deception "the plaintiff need only allege specific misleading statements and explain why they are misleading in accordance with Rule 9(b)." *Clorox Co.*, 398 F. Supp. 3d at 636. Rule 9(b) only requires that a plaintiff allege sufficient facts to "give Defendants notice of the particular misconduct and set out what is false or misleading." *Biocell Tech. LLC v. Arthro-7*, No. 12-cv-00516-JVS (RNBx), 2012 WL 12892937, at *11 (C.D. Cal. Nov. 19, 2012) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). As detailed above with respect to Rule 9(b), Scilex alleges that Hisamitsu made one literally false advertising claim and eight misleading advertising claims, identifying not only the claims at issue but also the false or misleading message conveyed by these claims. FAC ¶ 61. Scilex has further alleged that Hisamitsu's false and misleading statements are material and have caused it injury. Specifically, Scilex has alleged that Hisamitsu's advertising has: (i) led consumers to purchase SALONPAS® OTC patches; and (ii) that Scilex has incurred lost sales and diminution of goodwill as a result of Hisamitsu's unlawful conduct. *Id.* ¶¶ 11-12, 60-62, 78, 80, 89. Accordingly, Scilex has alleged each element of its Lanham Act claims.

### F. Scilex Has Adequately Alleged a Claim for False and Misleading Representation of Approval under Section 43(a)(1)(A) of the Lanham Act.

Hisamitsu argues that, "[i]n the absence of an affirmative representation that Hisamitsu's product is approved by the FDA, Plaintiff may not bring a claim for false implications of FDA approval." Hisamitsu Mem. at 19. However, this argument ignores the actual allegations in the Complaint: Scilex's maintains that "Defendants' claims *misleadingly imply* that their OTC Lidocaine Patches have FDA approval for certain indications, and are superior, or at least equivalent, in efficacy and results" to the ZTlido® patch. *See* FAC ¶ 59 (emphasis added). Scilex alleges, in stating its Lanham Act claim,  that Hisamitsu represents—through its false and

1   misleading advertising—that SALONPAS® is indicated by the FDA (or is approved by the FDA)

2   for treatment of nerve and neuropathic pain.  FAC ¶ 76.  For example, Scilex alleges that

3   Hisamitsu's commercials feature "Dr. Bob" Arnot, which misleadingly indicates to consumers that

4   its product is FDA-approved.  *Id.* ¶ 55.  In at least one of those commercials, Dr. Bob is wearing a

5   white lab coat in a doctor's office, telling an apparent patient that SALONPAS® "blocks pain

6   receptors for effective, non-addictive relief" and is recommending the product for the patient's

7   back pain.  *Id.*  And in an October 16, 2017 blog post, Dr. Bob answers "Frequently Asked

8   Questions" and states that "many doctors prescribe off-label uses for [prescription] lidocaine

9   patches," and claims that SALONPAS® has "4% lidocaine which I'd argue is close to the 5%

10  lidocaine patch you would get with a prescription."  *Id.* at 56.  Scilex maintains that these

11  representations deceive consumers and materially impact consumer purchasing decisions, which

12  has resulted in harm to Scilex's business.  FAC ¶¶ 77-82.

13          Scilex has more than sufficiently alleged its claim for fraudulent and misleading

14  representation in violation of Section 43(a)(1)(a) of the Lanham Act because it clearly specifies

15  how Hisamitsu's false and misleading advertising deceives consumers regarding the FDA approval

16  of Hisamitsu's product.  *Id.*  Moreover, contrary to Hisamitsu's assertion, Hisamitsu Mem. at 19,

17  Scilex is not required to allege that Hisamitsu affirmatively represented that its product was FDA-

18  approved to assert a claim under this section of the Lanham Act.  *See JHP Pharms., LLC v.*

19  *Hospira, Inc.*, 52 F. Supp. 3d 992, 1002 (C.D. Cal. 2014) (denying motion to dismiss, where

20  defendant argued that plaintiff must allege "specific statements by [d]efendants representing that

21  their products are FDA-approved," finding plaintiff had adequately alleged "facts tending to show

22  that the message 'our product is FDA-approved' was actually conveyed to consumers").[7]  In any

---

23

24  [7] Hisamitsu relies on the Fourth Circuit's decision in *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993), to argue that Scilex is required to allege that Hisamitsu affirmatively represented its product is FDA approved.  Hisamitsu Mem. at 19.  Hisamitsu, however,

25  mischaracterizes the non-binding *Mylan* holding.  In *Mylan*, the Court found that where the plaintiff had not "point[ed] to any statement or representation in the defendants' advertising which

26  declared 'proper FDA approval,'" the simple "act of placing a drug on the market" was insufficient to imply the falsity that the product had been properly approved by the FDA.  *Id.* at *5-6.  In

27  contrast, Scilex has done far more than merely contend Hisamitsu placed its SALONPAS® on the market.  Rather, Scilex has alleged that Hisamitsu has and continues to make false and misleading

28  statements and claims "impl[ying] that [its] products are indicated by the FDA for the treatment of neuropathic and musculoskeletal pain, including back and spinal pain."  *See* FAC ¶ 61.

OPPOSITION TO HISAMITSU'S
MOTION TO DISMISS AND STRIKE
CASE NO 4:21-cv-01280-JST

event, Scilex will establish the degree and nature of such deception at trial through fact and expert discovery as is typical in cases such as these.

### G.   Neither Claim Brought under the Lanham Act Is Subject to Dismissal under the Primary Jurisdiction Doctrine and/or Preemption.

Hisamitsu next argues that Scilex—by citing to the Monograph—is "effectively" looking for a "preemptive determination of an issue within the exclusive domain of FDA's expertise." Hisamitsu Mem. at 16.[8]   Supreme Court and Ninth Circuit precedent confirm that this Court may properly assess Scilex's claims, which are classic false advertising claims asserted between competitors.  In *POM Wonderful v. Coca-Cola Co.*, 573 U.S. 102, 104 (2014), the Supreme Court held that "the FDCA and the Lanham Act complement each other" and that the FDCA does not categorically bar Lanham Act suits.  *Id.* at 106.   While enforcement of the FDCA is almost exclusively committed to the FDA, the FDA "does not have the same perspective or expertise in assessing market dynamics that day-to-day competitors possess."  *Id*. at 115.  Thus, the Supreme Court recognized that lawsuits regarding unfair competition practices are therefore outside the scope of the FDCA, and the Lanham Act allows private parties to sue on a case-by-case basis to "'provide incentives' for manufacturers to behave well."  *Id.*; *see also Wyeth v. Levine*, 555 U.S. 555, 575 (2009) ("Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness.").

---

[8] Scilex understands Hisamitsu's argument to be one regarding primary jurisdiction.  To the extent, however, that Hisamitsu is also claiming that preemption mandates dismissal, this argument is also foreclosed by Ninth Circuit precedent.  In *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015),  the plaintiffs filed a class action against a cosmetics manufacturer alleging that its use of the word "natural" on its product packaging was false or misleading and therefore violated, among other statutes, "California's [UCL and [FAL]"—two of the three claims pled in this action. *Id.* at 756.  The Ninth noted that the Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits "any cosmetics labeling that is 'false or misleading in any particular [way],'" *id*. (quoting 21 U.S.C. § 362(a)), and finding that federal preemption was not implicated because "[plaintiffs] [were] not asking [defendant] to modify or enhance any aspect of its cosmetics labels that are required by federal law."  *Id*. at 758.  Because "FDA regulations d[id] not require [defendant] to label its products as 'All Natural' or 'Pure Natural,'" and plaintiffs' "suit ultimately requires [defendant] to remove these allegedly misleading advertising statements from its product labels, such a result [will] not run afoul of the FDCA[.]"  *Id.*  Scilex is not asking this Court to mandate or enhance any labeling overseen by the FDA.  Rather, it is merely claiming that Hisamitsu's advertising misleads and/or deceives consumers based on their understanding of such advertising pursuant to the Lanham Act and California's UCL and FAL.

The primary jurisdiction doctrine is reserved for a "limited set of circumstances" and is not intended to "secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (internal quotations omitted). Rather, a court should only invoke primary jurisdiction—a legal construct whereby federal courts defer to agency decision makers regarding a subject within the agency's purview—when an "otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Id.* Scilex merely challenges Hisamitsu's false and misleading advertisement claims pursuant to the standards applied by courts interpreting applicable federal and state law. The primary jurisdiction of the FDA is thus not implicated by the allegations in Scilex's Complaint.

## H.     Scilex Has Standing under the UCL and the FAL.

Hisamitsu next argues that Scilex has not alleged its reliance on Hisamitsu's allegedly false or misleading advertising, as Hisamitsu contends is necessary to bring a false advertising claim under the UCL or the FAL. Hisamitsu Mem. at 21-23. While citing certain cases favorable to its position, Hisamitsu ignores extensive and more recently decided California decisions holding that competitors need not plead reliance to state unfair competition and false advertising claims against competitors under the UCL and FAL.

In 2004, California voters passed Proposition 64, which altered the standing requirements for plaintiffs under California's UCL and FAL. Under the new standard, "a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, *i.e.*, economic injury, and (2) show that economic injury was the result of, *i.e.*, caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011). While both statutes do require "economic injury," the California Supreme Court has clarified that the injury need not be substantial and may be satisfied by a mere "identifiable trifle." *Kwikset*, 246 P.3d at 891 n.15. The California Supreme Court has not decided whether reliance is an element of a UCL or FAL claim when a competitor is challenging an allegedly false or misleading statement, and accordingly there is no binding

1   precedent on this issue.  *Kwikset*, 246 P.3d at 888 n.9 (2011) ("[W]e need express no views

2   concerning the proper construction of the cause requirement in other types of cases.")

3       Scilex recognizes that this Court—when previously confronted with this issue—has held

4   that a plaintiff must show individual reliance to support a claim under the UCL and FAL.  *L.A.*

5   *Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 866-67(N.D. Cal. 2015); *Rosen v. Uber*

6   *Techs., Inc.*, 164 F. Supp. 3d 1165, 1177 (N.D. Cal. 2016).  Scilex notes, however, the growing

7   chorus of courts that have held (in the context of a commercial claim under the UCL and FAL)

8   that individual reliance is not required.  *See Simpson Strong-Tie Co. v. Mitek Inc*., No. 20-cv-

9   06957-VKD, 2021 WL 1253803, at *6 (Apr. 5, 2021) (in cases involving false advertising claims

10  against competitors, requiring a plaintiff to plead its own reliance would "defeat the very purpose

11  of the UCL, which is to protect both consumers and competitors") (quotations and citation

12  omitted); *Lona's Lil Eats, LLC v. Doordash, Inc.*, No. 20-cv-06703-TSH, 2021 WL 151978, at

13  *10-12 (N.D. Cal. Jan. 18, 2021) (to establish UCL or FAL standing, a non-consumer plaintiff can

14  allege a "causal connection **or** reliance on the alleged misrepresentation"); *Jerome's Furniture*

15  *Warehouse v. Ashley Furniture Indus*., No. 20CV1765-GPC(BGS), 2021 WL 1541649, at *23-24

16  (S.D. Cal. Apr. 20, 2021) (a competitor plaintiff need not allege its "own reliance and need only

17  allege it suffered an injury, loss of money or property, as a result of the alleged

18  misrepresentations"); *Allergan United States v. Imprimis Pharm., Inc.,* No. 17-cv-1551-DOC

19  (JDEx), 2017 WL 10526121, at *13-14 (C.D. Cal. Nov. 14, 2017); *see also SPS Techs., LLC v.*

20  *Briles Aero., Inc.*, No. 18-cv-9536-MWF (ASx), 2019 WL 6841992, at *6-7 (C.D. Cal. Oct. 30,

21  2019) (permitting UCL and FAL claims to proceed).

22      The Central District's discussion of the issue in *Allergan* is particularly instructive:
23  Applying Kwikset's reliance requirement to competitor claims, particularly those
    based on the "unlawful" prong of the UCL, makes little sense. False advertising
24  claims between competitors are fundamentally different from false advertising
    claims by consumers. Even though the predicate unlawful act for both types of
25  claims is based on misrepresentation, competitor plaintiffs are not concerned with
    the deceptive activity simply because it's deceptive. Competitor plaintiffs are
26  concerned with the loss of sales and market share as a result of the deceptive
    activity. In contrast, consumer plaintiffs are concerned with the deceptive activity
27  itself and suffer a wholly different type of harm from competitors—getting
    hoodwinked into purchasing a product or service. It is hard to imagine a scenario,
28  though, in which a competitor plaintiff would rely on a competitor's misleading

1

2

> advertisement and suffer injury... Thus, imposing the reliance requirement on competitor claims would impose a superficial hurdle on competitor plaintiffs seeking to stop or recover for damages caused by their competitor's false advertising. *Kwikset* does not appear to go so far.

3

4   *Allergan*, 2017 WL 10526121, at *13.

5          As the *Allergan* court and subsequent federal courts have opined, the UCL and FAL do not

6   require reliance when the adverse parties are competitors. Scilex is not attacking Hisamitsu's false

7   and deceptive advertising because it relied on this advertising to its detriment. Rather, Scilex is

8   pursuing its claims under the state laws because Hisamitsu's false and misleading advertising has

9   deceived consumers, and in so doing, created an uneven playing field, causing Scilex substantial

10   financial harm.

11          Accordingly, consistent with the recent decisions from Ninth Circuit courts, Scilex has

12   adequately alleged causation to maintain its UCL and FAL claims.

13          **I.      Scilex Has Adequately Pled Its State Law Claims.**

14          Hisamitsu argues that Scilex has failed to show that a reasonable consumer is likely to be

15   deceived by the false and misleading statements, as required under the UCL and FAL. *See*

16   Hisamitsu Mem. at 23-24. This argument fails for many of the reasons previously explained. As

17   already detailed, Scilex alleged with specificity how Hisamitsu, through its advertisements,

18   disseminated to the California public untrue and misleading statements concerning professional

19   services, and that Hisamitsu knew or should have known that the statements were untrue or

20   misleading. *See* Cal. Bus. & Prof. Code §§ 17500, *et seq*; FAC ¶¶ 61, 97-101. Scilex also made

21   detailed allegations showing that Hisamitsu engaged in unlawful, unfair and fraudulent business

22   practices. *See* Cal. Bus. & Prof. Code §§ 17200, *et seq*; FAC ¶¶ 61, 104-108. Moreover, the

23   detailed descriptions of Hisamitsu's false and misleading advertisements, in conjunction with the

24   allegations that Hisamitsu has specifically targeted consumers who would otherwise purchase

25   ZTlido® patches, demonstrate the likelihood of deception. *See* FAC ¶¶ 12, 61, 64-66, 80, 86, 97.

26          Additionally, disputes regarding consumer deception are questions of fact ill-suited for

27   resolution on a motion to dismiss. To the extent that Hisamitsu argues that no consumer could be

28   deceived by its advertisements, "th[at] argument goes to the merits of" a plaintiff's claims and is

1    not appropriate at the motion to dismiss stage.  *Astiana*, 783 F.3d at 758 n.3; *see also Bruton v.*

2    *Gerber Prod. Co.*, No. 12–CV–02412–LHK, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014)

3    (citing *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010)); *see also*

4    *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) ("In applying [the reasonable

5    consumer] test, we are mindful that whether a business practice is deceptive will usually be a

6    question of fact not appropriate for decision on a motion to dismiss.") (alteration, quotations and

7    citations omitted).  Where a plaintiff claims that a statement is literally false, moreover, courts

8    presume those statements actually misled consumers and are material.  *See POM Wonderful LLC*

9    *v. Purely Juice, Inc.*, No. CV-07-023633 CAS (JWJx), 2008 WL 4222045, at *11 (C.D. Cal. July

10   17, 2008).

11        Here, Scilex alleges that Hisamitsu engaged in deceptive business practices through its

12   false and misleading advertisements, and therefore applying the reasonable consumer test is a

13   question of fact "not appropriate for decision on a motion to dismiss." *Astiana*, 783 F.3d at 758.

14   Similarly, Scilex alleges that Hisamitsu made false claims in its advertisements, and therefore

15   courts "presume those statements actually misled consumers." *POM Wonderful*, 2008 WL

16   4222045, at *11.  Whether the issues of reliance should be left for a jury to determine or whether

17   reliance should be presumed at this stage of the litigation, Scilex has made sufficient allegations

18   to survive Hisamitsu's motion to dismiss.

19        Moreover, Scilex has sufficiently alleged that Hisamitsu's false and misleading

20   advertisements are superior—or at least equivalent—to prescription lidocaine products.

21   Hisamitsu's statements are actionable when viewed in the context of their marketing as a whole.

22   "[T]he fact that the statement does not name a competing product does not save it," as the "claim

23   must always be analyzed in its full context." *Allergan*, 2017 WL 10526121, at *10-11 (holding

24   that where Defendant claimed elsewhere on its website that its product was "more effective[]

25   than…topical medications," the statement that "95% of cataract surgeons surveyed would prefer

26   [the product]" necessarily implied superiority over other products and was thus actionable.).  Here,

27   Hisamitsu states that its product has "IMPROVED ADHESION" and "MAXIMUM STRENGTH"

28   (*see* FAC ¶ 53), and when viewed in conjunction with its social media posts claiming that its

product "is close to the 5% lidocaine patch you would get with a prescription" and represents that its product "us[es] the same size and hydrogel technology as the prescription lidocaine patch" (*see* FAC ¶ 57), it necessarily implies that Hisamitsu's OTC lidocaine patches are superior, or at least equivalent, to prescription lidocaine patches, including ZTlido®. Like in *Allergan*, by alleging the specific advertising claims made by Hisamitsu, Scilex has sufficiently alleged its false and misleading advertisement claims against Hisamitsu under California law.

J.      **The Court Should Reject Hisamitsu's Request to Strike Allegations Regarding the Proposed Monograph.**

Hisamitsu finally argues that, pursuant to Federal Rule of Civil Procedure 12(f), the Court should strike Scilex's references to the FDA's 2003 proposed Monograph that—per Hisamitsu's reading—"insinuates" that its product is unsafe. *See* Hisamitsu Mem. at 25 (citing *Benham v. Am. Servicing Co.*, No. C 09-01099 JSW, 2009 WL 4456386, at *8 (N.D. Cal. Nov. 30, 2009)).[9] Hisamitsu's request to strike these background allegations relating to the FDA's regulatory scheme for its OTC products should be rejected out of hand.

Fed. R. Civ. P. 12(f) provides that "[t]he court may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." For years, courts have construed Rule 12(f) narrowly, and consistent with its language. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010). "If there is any doubt whether the challenged matter might bear on an issue in the litigation, the motion to strike should be denied, and assessment of the sufficiency of the allegations left for adjudication on the merits." *Ctr. for Food Safety v. Sanderson Farms, Inc.*, No. 17-CV-03592-RS, 2019 WL 8356294, at *1 (N.D. Cal. Mar. 18, 2019). And "[a]s with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1140 (N.D. Cal. July 21, 2010). Given this

---

[9] The *Benham* case bears little resemblance to this matter. In *Benham*, the court granted motions to strike three paragraphs from the complaint and a claim for punitive damages. *Id.* at *8. The plaintiff failed to oppose these motions to strike, and moreover, the court noted that punitive damages were—as a matter of law—not available under the operative pleading, and that the stricken paragraphs "did not specifically relate" to any of the named defendants. Here, of course, the proposed Monograph provides context for Scilex's claims and the regulatory scheme involving Hisamitsu's OTC Lidocaine Patches.

1    standard, Hisamitsu's attempt to have this Court excise portions of the Complaint that it dislikes

2    or wishes to ignore should be rejected because Scilex's invocation of the proposed 2003

3    Monograph is neither "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f).

4    In fact, Scilex's description of the FDA's proposed 2003 Monograph is accurate and provides

5    appropriate context for Scilex's claim that Hisamitsu has engaged in false or misleading

6    advertising.

7          Tellingly, Hisamitsu does not even attempt to dispute the accuracy of the allegations it

8    seeks to strike.  In its Memorandum, Hisamitsu represents: "the proposed Monograph was not

9    promulgated as an interim final rule and it was not implemented upon being published in the

10   Federal Register."  Hisamitsu Mem. at 25.  In its Complaint, Scilex similarly alleges that, "[i]n

11   2003, the FDA issued a proposed rule to amend the TFM to explicitly exclude patches and to

12   classify OTC patches containing analgesic ingredients as Category III products, for which 'more

13   data [is] needed' to determine if the drugs are 'generally recognized as safe and effective.'" FAC

14   at ¶ 8.

15         Since it cannot challenge the accuracy of the challenged allegations, Hisamitsu next

16   contends that the allegations include "*no relevant information*" concerning Hisamitsu's alleged

17   false advertising and that the allegations are prejudicial in nature.  Hisamitsu Mem. at 25.  Both

18   these assertions are wholly without merit.  Through its description of the 2003 proposed

19   Monograph, Scilex provides relevant background and context for its false advertising claims

20   relating to OTC products.  More importantly, this information is not prejudicial in any way; Scilex

21   acknowledged in its Complaint that the FDA's regulatory proposal does not dictate whether the

22   claims at issue violate the Lanham Act and applicable California law.

23   **V.    CONCLUSION**

24         For the foregoing reasons, Hisamitsu's Motion to Dismiss and Strike should be denied.  If

25   the Court nonetheless finds that any of Scilex's claims have not been adequately pled for any of

26   the grounds advanced by Hisamitsu, Scilex respectfully seeks leave to amend its complaint to

27   address such defect.

28

1   Dated: June 14, 2021                          LATHAM & WATKINS LLP

2

3                                                  /s/ Steven N. Feldman
                                                   Steven N. Feldman (*CA Bar No. 281405*)
4                                                    steve.feldman@lw.com
                                                   355 South Grand Avenue, Suite 100
5                                                  Los Angeles, CA 90071
                                                   Telephone:  +1.213.485.1234
6                                                  Facsimile:  +1.213.891.8763

7                                                  Jamie L. Wine (*CA Bar No. 181373*)
                                                     jamie.wine@lw.com
8                                                  1271 Avenue of the Americas
                                                   New York, NY 10020
9                                                  Telephone:  +1.212.906.1200
                                                   Facsimile:  +1.212.751.4864

10                                                 David K. Callahan (*pro hac vice*)
                                                     david.callahan@lw.com
11                                                 Matthew W. Walch (*pro hac vice*)
                                                     matthew.walch@lw.com
12                                                 330 North Wabash Avenue, Suite 2800
                                                   Chicago, IL 60611
13                                                 Telephone:  +1.312.876.7700
                                                   Facsimile:  +1.312.993.9767
14

15                                                 *Attorneys for Plaintiff*
                                                   *Scilex Pharmaceuticals Inc.*
16

17

18

19

20

21

22

23

24

25

26

27

28