United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SCILEX PHARMACEUTICALS INC.,
Plaintiff,
v.
SANOFI-AVENTIS U.S. LLC, et al.,
Defendants.

Case No. 21-cv-01280-JST

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS; DENYING MOTION TO STRIKE**

Re: ECF Nos. 56, 57

Before the Court are motions to dismiss filed by Defendant Hisamitsu America, Inc. ("Hisamitsu"), ECF No. 57, and Defendants Sanofi-Aventis U.S. LLC and Chattem, Inc. (collectively, "Chattem"), ECF No. 56. The Court will grant the motions to dismiss in part and deny them in part. The Court will deny Hisamitsu's motion to strike.

## I. BACKGROUND[1]

Plaintiff Scilex Pharmaceuticals Inc. ("Scilex") "markets, distributes, and sells the FDA-approved, prescription-strength topical analgesic self-adhesive patch under the brand name ZTlido®." First Amended Complaint ("FAC"), ECF No. 42 ¶ 17. Scilex brings this action to address Hisamitsu and Chattem's (collectively, "Defendants") "ongoing false and deceptive advertising of their respective over-the-counter ("OTC") lidocaine patch products." *Id.* ¶ 1. Scilex alleges that ZTlido "is often prescribed for off-label uses, including general neuropathic pain, such as back and spinal pain," *id.* ¶ 26, and that Defendants' OTC lidocaine patch products "directly compete with Scilex's ZTlido," *id.* ¶ 75. Scilex contends that "Defendants' false and

[1] For purposes of these motions, the Court accepts as true the factual allegations of Scilex's first amended complaint. *Smith v. City of Oakland*, No. 19-cv-05398-JST, 2020 WL 2517857, at *2 (N.D. Cal. Apr. 2, 2020).

misleading advertising" – including claims that "OTC products: (a) contain and/or deliver to the area of pain the maximum amount of lidocaine available in patch form; (b) block and/or numb pain; (c) target and/or desensitize aggravated nerves; (d) target more pain receptors than other lidocaine patch products; (e) adhere to the skin and provide pain relief for periods of 8 or 12 hours, depending on the product, (f) are indicated by the FDA for treatment of nerve and neuropathic pain, including back and spinal pain; and/or (g) are FDA-approved, prescription products," *id.* ¶ 10 – "causes consumers to be misled and to choose Defendants' products over FDA-approved lidocaine patches, including Scilex's ZTlido® product, causing Scilex significant harm," *id.* ¶ 62.

Scilex filed the instant suit against Defendants on February 23, 2021. ECF No. 1. The operative complaint brings four causes of action: (1) false and misleading representations regarding FDA approval in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (2) false and deceptive advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (3) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and (4) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. FAC ¶¶ 74-108. Hisamitsu and Chattem each filed a motion to dismiss. ECF Nos. 56, 57. Hisamitsu also moves to strike certain paragraphs in the FAC. ECF No. 57 at 35. Scilex filed separate oppositions, ECF Nos. 64, 65, to which Defendants replied, ECF Nos. 71, 72. The Court held a hearing on July 22, 2021.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

If a plaintiff lacks Article III standing to bring a suit, the federal court lacks subject matter jurisdiction and the suit must be dismissed under Rule 12(b)(1). *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal

jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). Where, as here, the defendant makes a facial attack, the court assumes that the complaint's allegations are true and draws all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

**B. Rule 12(b)(6)**

A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). If the motion to dismiss is granted, the court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quotation marks and citation omitted).

Any claims that are "grounded in fraud . . . must satisfy the traditional plausibility standards of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). The heightened pleading standard of Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct

United States District Court
Northern District of California

charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation marks, alteration, and citations omitted).

**C. Rule 12(f)**

Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion to strike pursuant to Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).

**IV. DISCUSSION**

All Defendants move to dismiss the FAC on the grounds that Scilex (1) lacks standing under Article III, the Lanham Act, and the FAL and the UCL and (2) fails to state a false designation of origin claim under 15 U.S.C. § 1125(a)(1)(A). Chattem also contends that all claims are barred by the equitable doctrine of laches, and Hisamitsu asserts that Scilex has failed to plead the falsity of Hisamitsu's statements and moves to strike allegations regarding the FDA's proposed Monograph.

**A. Article III Standing**

Article III standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548 (quotation marks and citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Accordingly, "each element must be supported . . . with the manner and degree of evidence required at the successive stages of litigation." *Id.* Defendants argue that Scilex has failed to meet any of the standing requirements.

**1. Injury-in-Fact**

Scilex alleges that its injuries include "diminished goodwill of the ZTlido® mark

United States District Court
Northern District of California

associated with its product offered under that mark and lost profits stemming from reduced demand for ZTlido® caused by Defendants' false and deceptive advertising." FAC ¶¶ 80, 91. Defendants argue that Scilex does not support this conclusory allegation, and that Scilex cannot plead an injury from Defendants' allegedly misleading advertising because Scilex and Defendants do not compete for the same customers. Scilex responds that it has adequately pleaded injury-in-fact through a "chain of inferences." ECF No. 64 at 14. Scilex explains that Defendants are direct competitors of Scilex because they all "sell lidocaine patches that treat pain through the skin," and that Defendants target consumers who would otherwise purchase ZTlido patches. *Id.*

"In a false advertising suit, a plaintiff establishes Article III injury if some consumers who bought the defendant's product under a mistaken belief fostered by the defendant would have otherwise bought the plaintiff's product." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (quotation marks and alteration omitted). "A party may prove its injury (1) by using lost sales data, that is 'actual market experience and probable market behavior,' or (2) 'by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business.'" *Allbirds, Inc. v. Giesswein Walkwaren AG*, No. 19-CV-05638-BLF, 2020 WL 6826487, at *4 (N.D. Cal. June 4, 2020) (quoting *TrafficSchool.com*, 653 F.3d at 825). "Evidence of direct competition is strong proof that plaintiffs have a stake in the outcome of the suit, so their injury isn't conjectural or hypothetical." *TrafficSchool.com*, 653 F.3d at 825-26 (quotation marks omitted).

The Court holds that Scilex has adequately pleaded an injury-in-fact through a chain of inferences. The *Allbirds* court explained that in *TrafficSchool.com*, the Ninth Circuit held that the plaintiffs had established an injury through a chain of inferences because there was both (1) evidence of competition between the plaintiffs and the defendant "such that 'sales gained by one [were] . . . likely to come at the other's expense,'" and (2) "evidence that being referred by [the] DMV affected consumers' choice in traffic school and drivers education courses such the defendant's false advertisement (*i.e.*, misleading customers into thinking they were referred by DMV) could lead to a bigger share of the referral market." *Allbirds*, 2020 WL 6826487, at *4. By contrast, the plaintiff in *Allbirds* failed to allege "that the material of shoes is an important factor

for consumers in deciding which shoes to buy such that Allbirds captures a larger share of the 'all-natural' shoe market because of its alleged false or misleading advertising." *Id.* Here, Scilex has alleged that it competes with Defendants for consumers looking to purchase lidocaine patches that treat pain through the skin, and that Defendants' allegedly false advertising implies that Defendants' patches offer "the maximum amount of lidocaine available in patch form" and "adhere to the skin and provide pain relief for periods of 8 or 12 hours, depending on the product," and that such false and misleading advertising "deceived consumers into buying Defendants' patches instead of prescription patches, such as ZTlido." FAC ¶¶ 10, 12.

The Court rejects Defendants' argument that their OTC lidocaine patches do not compete with Scilex's prescription lidocaine patch. The FAC alleges that ZTlido is regularly prescribed for the off-label use of treating general neuropathic pain – the same purpose for which OTC lidocaine patches are marketed and used. *Id.* ¶ 26. Moreover, the competition between prescription and OTC lidocaine patches is reflected in Hisamitsu's advertising itself, which draws direct comparisons between OTC and prescription patches. *Id.* ¶ 56. Scilex points to two specific blog posts in which Hisamitsu asserts that the "4% of lidocaine" found in its patches "is close to the 5% lidocaine patch you would get with a prescription" and that the Hisamitsu patches "followed the same principles used for the Rx (5% Lidocaine) version . . . . The only change they made was to improve the price." *Id.* As these advertisements acknowledge, the extra steps necessary to acquire a prescription patch – including getting the prescription from a doctor – does not change the fact that Scilex and Defendants are competing for the same consumers.

**2. Fairly Traceable**

Defendants argue that Scilex has not adequately alleged that any injury is fairly traceable to their advertisements because Scilex has not demonstrated that Defendants' sales were Scilex's loss. Defendants explain that there are many other explanations in the FAC for Scilex's failure to gain a market share, and that Scilex has not alleged that Defendants' sales came at Scilex's expense as opposed to other prescription lidocaine patch producers.[2]

[2] Defendants also imply that any losses in Scilex's off-label sales of ZTlido are not legitimate

As Chattem acknowledges, Scilex "is not required to show that [Defendants'] advertisements were the only reason for reduced ZTlido sales." ECF No. 71 at 12 (citing ECF No. 64 at 16 n.4 (citing *Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d 846 (9th Cir. 2005))). Defendants' arguments regarding the "crowded market" of OTC and prescription lidocaine patches are therefore unavailing. *See, e.g.*, ECF No. 57 at 18. The fact that ZTlido may have also lost profits as a result of other market forces or that Defendants' allegedly false advertising may have also caused other providers of prescription lidocaine patches to lose sales does not undermine Scilex's allegations that it lost profits because consumers bought Defendants' OTC patches instead of ZTlido patches because they were misled by Defendants' false advertising. Similarly, the fact that Defendants' patches were on the market and being advertised before ZTlido was approved by the FDA does not foreclose the possibility that Defendants' allegedly misleading advertisements caused consumers to buy Defendants' OTC products rather than a ZTlido prescription patch when ZTlido patches became available. Scilex has adequately alleged a causal link between the allegedly false or misleading advertising and its lost profits and thus has satisfied the "fairly traceable" requirement of standing.

**3. Redressability**

Chattem briefly argues that Scilex's alleged injury is not redressable by an order of the Court because there is not a "substantial likelihood" that Scilex would gain the sales it claims to have lost if Defendants' advertisements are enjoined. ECF No. 56 at 21. However, Chattem bases this argument on the fact that Scilex "would still be legally precluded from advertising the ZTlido patch for any use other than the narrow indication allowed by [the] FDA," and that "consumers would still be just as free, and just as inclined, to choose any number of alternative options to relieve their pain" before getting a prescription for a ZTlido patch. *Id.* at 20-21. However, as discussed above, the crowded market and the limitations on Scilex's ability to advertise – but not

---

because ZTlido has only been approved by the FDA for relief of pain associated with post-herpetic neuralgia ("PHN"), a complication of shingles. However, Scilex has alleged that it is permissible for ZTlido to be used for off-label indications even though Scilex is precluded from advertising its patches for such uses. FAC ¶ 7. The Court therefore rejects Defendants' argument that any loses sales for off-label uses are somehow illegitimate.

sell – ZTlido for off-label uses is irrelevant to the connection between Defendants' allegedly false advertisements and the profits Scilex loses from consumers who would have bought a ZTlido patch were they not misled. *See Washington Env't Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013) ("'fairly traceable' and 'redressability' components for standing overlap and are 'two facets of a single causation requirement'" (citation omitted)).

The Court is required to construe the allegations of the complaint and draw all reasonable inferences in Scilex's favor. The FAC alleges that at least some of Defendants' sales were made to consumers who would have purchased prescription patches, including ZTlido patches, if they had not been misled by Defendants' advertisements to believe, among other things, that Defendants' OTC products were superior or equivalent to prescription-only lidocaine patches. *See, e.g.*, FAC ¶ 10. Enjoining Defendants from using such allegedly false advertisements would therefore redress Plaintiff's harm of losing sales from customers who would have purchased ZTlido patches were it not for Defendants' misleading and false advertising.

**B. Statutory Standing**

Defendants contend that Scilex lacks statutory standing under the Lanham Act and the FAL and the UCL.

**1. Lanham Act**

A plaintiff asserting a false advertising claim must allege that its injury (1) is within the "zone of interests" protected by the Lanham Act and (2) was proximately caused by defendant's violation of the Lanham Act. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-30 (2014). "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131-32. To demonstrate proximate cause, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputation injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

Defendants assert that Scilex lacks standing under the Lanham Act largely by repeating arguments made against Scilex's Article III standing. Defendants contend that Scilex's alleged

injury is not within the "zone of interests" protected by the Lanham Act because they do not compete with Scilex and that Scilex has not alleged that any injury was proximately caused by Defendants' advertising because Scilex – and prescription lidocaine patch producers generally – were harmed by the existence of OTC products, not Defendants' advertising. Defendants also repeat their arguments that (1) Scilex fails to demonstrate that Scilex's lost sales were caused by Defendants' advertising – as opposed to other prescription manufacturers or OTC product distributors, (2) Scilex is not entitled to profits from sales for off-label uses of ZTlido, and (3) Defendants' products were on the market years before ZTlido was approved and so cannot be diverting sales from ZTlido.

For the reasons described above, these arguments are unavailing. The cases Defendants rely on are readily distinguishable. Chattem cites *Ortho Pharmaceutical Corp. v. Cosprophar, Inc.* for the proposition that "a drug requiring a doctor's prescription" and "a cosmetic available in a pharmacy" are "not in direct competition." ECF No. 56 at 22 (quoting *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994)). However, the Second Circuit noted that Ortho did not dispute the district court's finding that the products at issue in that case were not in competition. *Ortho Pharm.*, 32 F.3d at 694. By contrast, Scilex maintains – and the Court agrees – that it is in direct competition with Defendants. The Court also notes that the district court in *Ortho Pharmaceutical* decided that the products were not competitors – and that plaintiff had failed to establish that defendant's advertising was causing or would likely cause it injury – after a one week bench trial, rather than at the motion to dismiss stage. *ThermoLife International LLC v. Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *9 (D. Ariz. Jan. 16, 2020), likewise does not help Defendants. The *ThermoLife* court also held that the parties were not in competition because the parties sold "*different products* in *different markets* to *different customer segments*," and "[t]here [was] no indication that Plaintiff's upstream positioning as an ingredient licensor [was] directly tied to Defendant's downstream point of sale positioning as a retailer in any way." 2020 WL 248164, at *9 (footnote omitted)). Here, Scilex and Defendants both sell lidocaine patches and compete for the same customer segments.

Scilex has satisfied the requirements of statutory standing by adequately alleging that

Scilex and Defendants are competitors, and that Defendants' allegedly false and misleading advertising caused consumers "to withhold trade from the plaintiff," causing Scilex economic injury in the form of lost sales. *Lexmark*, 572 U.S. at 133.

**2. State Law Claims**

Defendants contend that Scilex's state law claims must fail because it has not alleged its own reliance on Defendants' allegedly false and misleading advertisements. Chattem also contends that Scilex has failed to allege a legal ownership interest in the money or property allegedly lost. In response to arguments made in Scilex's opposition brief, Chattem argues that Scilex has not alleged – and cannot allege – that it lacks an "adequate remedy at law." At the hearing, counsel for Scilex confirmed that Scilex is seeking damages under the Lanham Act for past harm but only injunctive relief under the UCL and FAL to address future harm.

**a. Reliance**

The parties recognize that most courts that have considered whether reliance is required for standing under the UCL and FAL, including this Court, have "held that a plaintiff must show individual reliance to support a claim under the UCL and FAL." ECF No. 64 at 24; ECF No. 65 at 29. However, Scilex encourages the Court to join the "growing chorus of courts that have held . . . that individual reliance is not required." *Id.*

In *L.A. Taxi Cooperative, Inc. v. Uber Technologies, Inc.*, this Court dismissed plaintiff's UCL claims due to a lack of standing. 114 F. Supp. 3d 852, 866-67 (N.D. Cal. 2015). It noted that the California Supreme Court has held that "the amended UCL 'imposes an actual reliance requirement on plaintiffs' who bring a UCL action 'based on a fraud theory involving false advertising and misrepresentations to consumers' because 'reliance is the causal mechanism of fraud.'" *Id.* at 866 (quoting *Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, No. 14-cv-0437-CW, 2015 WL 3377662, at *6 (N.D. Cal. Feb. 24, 2015) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-28 & n.17 (2009))). While the Court recognized that federal courts were split on the issue of actual reliance, it joined the majority in enforcing this rule, and concluded that "because Plaintiffs d[id] not plead their own reliance on Uber's allegedly false advertising," but rather only the reliance of their potential customers, "they lack[ed] standing to seek relief under

the UCL's fraud prong." *Id.* at 866-67. Moreover, because the plaintiffs' claims under the UCL's unfair and unlawful prongs were "predicated on the same misrepresentation theory," they lacked standing under those prongs as well. *Id.* at 867. The Court considered this issue again in *Rosen v. Uber Technologies, Inc.* and reaffirmed its analysis in *L.A. Taxi*. 164 F. Supp. 3d 1165, 1177-78 (N.D. Cal. 2016).

However, after reviewing recent cases that have adopted "the minority view," the Court is persuaded to reconsider its prior analysis. The Court now finds the reasoning of courts holding that "[a] non-consumer plaintiff can allege false advertising claims under the UCL and FAL without alleging its own reliance, as long as the plaintiff has alleged a sufficient causal connection" to be persuasive and correct. *Lona's Lil Eats, LLC. V. DoorDash, Inc.* ("*Lona*"), No. 20-cv-06703-TSH, 2021 WL 151978, *12, 10-12 (N.D. Cal. Jan. 18, 2021). As *Lona* explains, the California Supreme Court "emphasize[d] that [their] discussion of causation in [*In re Tobacco II Cases* was] limited to such cases where . . . a UCL [claim] is based on a fraud theory involving false advertising and misrepresentations to consumers," observing "that '[t]here are doubtless many types of unfair business practices in which the concept of reliance . . . has no application.'" *Id.* (quoting *In re Tobacco Cases*, 46 Cal. 4th at 325 & n.17) (first and last alteration in original). *Lona* also explains that "California courts' express recognition that injury 'as a result of' a defendant's conduct can be proved by a causal connection *or* reliance suggests strongly that there are situations where the element of causation can be proved without showing actual reliance, so long as there's sufficient causation." *Id.* (emphasis in original). Finally, *Lona* relies on "additional compelling reasoning for not extending [*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)] to all cases" articulated by *Allergan U.S. v. Imprimis Pharms., Inc.*, 2017 WL 10526121, at *13 (C.D. Cal. Nov. 14, 2017). *Id.* at *12. *Lona* describes how "applying *Kwikset*'s reliance requirement to competitor claims makes little sense because false advertising claims between competitors are fundamentally different from false advertising claims brought by consumers" and concludes that the reliance requirement "would impose a 'superficial hurdle' on competitor plaintiffs." *Id.* (quoting *Allergan*, 2017 WL 10526121, at *13). The Court agrees. "Proposition 64's purpose of preventing actions by plaintiffs who have not suffered an actual

injury is not served well by extending *Kwikset* to all cases, . . . and a rule requiring all plaintiffs to prove actual reliance would in fact defeat the UCL and FAL's purpose of protecting consumers and competitors alike." *Id.*

The Court therefore disavows its holdings in *L.A. Taxi* and *Rosen* and holds that Scilex is not required to plead its own reliance to support a claim under the UCL and FAL. And as described in the Court's discussion of Scilex's Article III standing, Scilex has adequately pleaded a sufficient causal connection.

**b. Adequate Remedy at Law**

Scilex seeks only "an injunction prohibiting Defendants from continuing their practices in violation of the FAL" and UCL to remedy its state law claims. FAC ¶¶ 101, 108. The Court therefore need not consider Chattem's argument regarding Scilex's failure to allege a legal ownership interest in the money or property allegedly lost.

Chattem argues in reply that Scilex has no standing to seek injunctive relief under the UCL and FAL because "the FAC alleges money damages, an adequate remedy at law, and therefore Plaintiff cannot argue that it lacks an adequate legal remedy for purposes of its California state law claims." ECF No. 71 at 19-20 (citing *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1204 (N.D. Cal. 2017)). The Ninth Circuit has held that "a federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020). This reflects the equitable principle that to obtain an equitable remedy, a plaintiff must lack an "adequate remedy at law." *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996); *see also Anderson v. Apple Inc.*, No. 3:20-cv-02328-WHO, 2020 WL 6710101, at *7 (N.D. Cal. Nov. 16, 2020) ("[The adequate remedy at law] principle applies squarely to an award of restitution – an equitable remedy – under the UCL."). However, as counsel explained at oral argument, Scilex seeks damages under the Lanham Act to remedy past harm and seeks injunctive relief under the UCL and FAL to address future harm.

"Courts have found that a plaintiff may still seek injunctive relief under the UCL where damages would not protect against a future harm." *Sharma v. Volkswagen AG*, No. 20-CV-02394-JST, 2021 WL 912271, at *9 (N.D. Cal. Mar. 9, 2021) (citing *Integritymessageboards.com v.*

United States District Court
Northern District of California

*Facebook, Inc.*, No. 18-cv-05286-PJH, 2020 WL 6544411, at *7 (N.D. Cal. Nov. 6, 2020) (denying motion to dismiss claims for injunctive relief after inferring that "plaintiff has no factual basis to quantify its actual damages for future harm")). Scilex alleges that it "has been damaged, and will continue[] to be damaged, in an amount that will be ascertained according to proof," and that it "will continue to suffer injury to the goodwill of its ZTlido® brand and to its business associated with the sale of ZTlido® patches unless and until Defendants . . . are enjoined from continuing their wrongful acts." FAC ¶¶ 80, 91; *see also id.* ¶¶ 101, 108. The Court concludes that "[a]lthough monetary damages may ultimately fully address plaintiff's harm, at this stage of the litigation there is an ongoing, prospective nature to plaintiff's allegations . . . 'sufficient to suggest a likelihood of future harm amenable to injunctive relief.'" *Roper v. Big Heart Pet Brans, Inc.*, No. 119CV00506DADBAM, 2020 WL 7769819, at *8-9 (E.D. Cal. Dec. 30, 2020) (quoting *Aerojet Rocketdyne, Inc. v. Global Aerospace, Inc.*, No. 2:17-cv-01515-KJM-AC, 2020 WL 3893395, at *5 (E.D. Cal. July 10, 2020)); *see also Mier v. CVS Pharmacy, Inc.*, No. SACV2001979DOCADS, 2021 WL 1559367, at *13 (C.D. Cal. Mar. 22, 2021).

Scilex therefore has standing to seek injunctive relief under the UCL and FAL.

### C. Failure to State a Claim

Defendants also contend that Scilex's first cause of action – for false and misleading representations regarding FDA approval or sponsorship, *see* FAC ¶¶ 74-83 – should be dismissed for failure to state a claim. Hisamitsu also moves to dismiss Scilex's second cause of action under the Lanham Act for failure to adequately allege the falsity of Hisamitsu's statements. Finally, Defendants argue that Scilex fails to allege that a reasonable consumer would be misled by their advertising.

#### 1. Implied FDA Approval

Scilex alleges that Defendants have "represent[ed] to current and potential consumers—in advertising material and on their products' packaging—that [their OTC lidocaine patches] are indicated by the FDA for treatment of nerve and neuropathic pain . . . and/or are FDA-approved." *Id.* ¶ 76. Defendants argue that Scilex's claim under 15 U.S.C. § 1125(a)(1)(A) must fail because (1) Scilex has not alleged that Defendants have made any affirmative representation regarding

FDA approval or sponsorship, and (2) Scilex's claim is equivalent to a private enforcement action for Defendants' lack of compliance with FDA regulations, which is foreclosed by the Federal Food, Drug, and Cosmetic Act ("FDCA").

The Fourth Circuit considered very similar same arguments in deciding *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993). It held that:

> Mylan's claims that the defendants[] falsely represented that their drugs had been "properly approved by the FDA" must fail. First, in its complaint, Mylan nowhere points to any statement or representation in the defendants' advertising which declared "proper FDA approval." Moreover, that fatal deficiency cannot be cured by contentions that the very *act* of placing a drug on the market, with standard package inserts often used for FDA-approved drugs, somehow implies (falsely) that the drug had been "properly approved by the FDA." Such a theory is, quite simply, too great a stretch under the Lanham Act. We agree with the defendants that permitting Mylan to proceed on the theory that the defendants violated § 43(a) merely by placing their drugs on the market would, in effect, permit Mylan to use the Lanham Act as a vehicle by which to enforce the [FDCA] and the regulations promulgated thereunder.

*Id.* District courts across the country have followed the Fourth Circuit's reasoning, holding that "[f]alse advertising claims based on allegations of implied governmental approval have not been allowed, for the law does not impute representations of government approval . . . in the absence of explicit claims." *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 417 (S.D.N.Y. 2006) (quotation marks and citation omitted). *See also Impact Applications, Inc. v. Concussion Mgmt., LLC*, No. GJH-19-3108, 2021 WL 978823, at *6 (D. Md. Mar. 16, 2021) (dismissing plaintiff's claims based on defendant's allegedly false and misleading statements implying that their products "ha[d] been reviewed or approved by the FDA when they ha[d] not" and noting that "allowing a Lanham Act claim to proceed where a plaintiff does not point to any statement or representation in the defendants' advertising declaring FDA approval or review . . . would, in effect, allow the plaintiff to use the Lanham Act as a vehicle by which to enforce the [FDCA.]" (quoting *Mylan*, 7 F.3d at 1139)); *Ethex Corp. v. First Horizon Pharm. Corp.*, 228 F. Supp. 2d 1048, 1055 (E.D. Mo. 2002) (noting that courts "have refused to allow plaintiffs to state a claim based on implicit representations of FDA approval").

Scilex maintains that "courts within the Ninth Circuit do not require explicit claims of FDA approval," relying on *JHP Pharmaceuticals, LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992 (C.D. Cal. 2014). However, *JHP Pharmaceuticals* considered allegations that defendants had put products on "industry 'Price Lists,' and that 'buyers believe that all prescribed drugs identified on the Price Lists are . . . FDA-approved.'" 52 F. Supp. 3d at 1002. The *JHP Pharmaceuticals* court agreed with the Fourth Circuit's conclusion that "merely putting the product on the market is probably not a representation that the product is FDA-approved," but held that the plaintiff had adequately alleged that "the message 'our product is FDA-approved' was actually conveyed to consumers" in that case. *Id.* at 1002-03. Scilex argues that it "has done far more than contend [Defendants] merely placed [their OTC lidocaine patches] on the market." ECF No. 64 at 21 n.6; ECF No. 65 at 26 n.7.

Scilex points to Defendants' statements regarding "desensitize[ing] aggravated nerves" and targeting neck and back pain as evidence that Defendants held out their products as being "indicated by the FDA for the treatment of neuropathic musculoskeletal pain, including back and spinal pain." FAC ¶ 61. Unlike in *JHP Pharmaceuticals*, however, Scilex does not point to any reason that consumers would believe these statements imply FDA approval. And Scilex recognizes that "[l]idocaine is a topical anesthetic that is used to treat pain by depressing sensory receptors in the nerve endings in the skin, which prevents pain signals from reaching the brain." FAC ¶ 2. According to Scilex's own definition of lidocaine, then, Defendants' statements seem to merely describe the effect of their products. The Court holds that including such statements on a product's packaging is equivalent to placing the product on the market. More is required to imply FDA approval.

Scilex's allegation regarding a "commercial containing [an] individual in [a] white lab coat, referred to as 'Dr. Bob' in a doctor's office and labeled as 'Bob Arnot, MD, Former Chief Medical Correspondent,' recommending [Hisamitsu's] product to apparent patient who asks what he should use for back pain" is similarly unavailing. *Id.* ¶ 61. Scilex does not offer any reason for a consumer to believe that a product is "FDA-approved or prescription-only" merely because a commercial depicts a doctor recommending the product. *Id.* As Hisamitsu points out, that

position would contradict the FAC's allegation that "ZTlido is regularly prescribed off-label," which implies that doctors do not limit themselves to recommending products that have been approved by the FDA for a specific use.

Moreover, the Court agrees that "allowing a Lanham Act claim to proceed where a plaintiff does not point to any statement or representation in the defendants' advertising declaring FDA approval or review . . . would, in effect, allow the plaintiff to use the Lanham Act as a vehicle by which to enforce the [FDCA.]" *Mylan*, 7 F.3d at 1139. The same is true for any claim that Scilex might make that Defendants are required to indicate in their labels or advertisements the specific uses the FDA has approved OTC lidocaine patches be used for. *See, e.g.*, FAC ¶ 70 (alleging that "nothing on Defendants' packaging indicates to consumers that the products are only approved for" indications such as minor burns, sunburn, minor cuts, scrapes, insect bites or minor skin irritations). Defendants' motion to dismiss Scilex's first cause of action is therefore granted. The Court grants Scilex leave to amend this claim out of an abundance of caution.

**2. Falsity of Hisamitsu's Statements**

A false advertising claim under the Lanham Act[3] requires the plaintiff to prove five elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
> (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
> (3) the deception is material, in that it is likely to influence the purchasing decision;
> (4) the defendant caused its false statement to enter interstate commerce; and
> (5) the plaintiff has been or is likely to be injured as a result of the

[3] A Lanham Act false advertising claim arises under 15 U.S.C. § 1125(a)(1)(B), which renders liable for damages:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . .
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

> false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Hisamitsu argues that Scilex fails to allege how or why Hisamitsu's statements – including "'Maximum Strength,' 'Apply for 8 Hours,' 'Numbing Relief,' 'Blocks Pain Receptors,' 'Desensitizes Aggravated Nerves,' 'for temporary relief of pain . . . back, neck, shoulders' and certain statements in a television commercial and blog posts by Dr. Bob Arnot, M.D." – are false or misleading, "that the consumers tend to be deceived by these statements[,] or that they are material to the consumers." ECF No. 57 at 21-22. Scilex contends that it has met the heightened Rule 9(b) pleading standard by alleging its claims with sufficient particularity to put Hisamitsu on notice of "'the who, what, when, where, and how' with respect to the fraudulent conduct." ECF No. 65 at 18 (quoting *Davidson*, 889 F.3d at 964). Scilex also emphasizes that "[a]t the pleading stage, a plaintiff need not provide evidentiary proof of actual or likely deception." *Id.* at 24.

First, the Court addresses statements regarding the effect and purpose of Hisamitsu's products, including: "numbing relief," "blocks pain receptors," "desensitizes aggravated nerves," and "for temporary relief of pain . . . back, neck, shoulders." FAC ¶ 61. Scilex alleges that these statements are misleading because they "impl[y] that Defendants' products completely block pain receptors, eliminate responses to painful stimuli, and provide a numbing sensation," "impl[y] that Defendants' products provide pain relief by desensitizing nerves and/or pain receptors," "impl[y] that Defendants' products contain ingredients that target nerves," and "impl[y] that Defendants' products are FDA-approved or prescription-only products, and are indicated for the treatment of neuropathic and musculoskeletal pain, including back and spinal pain" and "nerve pain." *Id.* As discussed above, Scilex's claims that these statements imply FDA approval fail. Similarly, because Scilex acknowledges that lidocaine "is used to treat pain by depressing sensory receptors in the nerve endings in the skin, which prevents pain signals from reaching the brain," it is unclear

United States District Court
Northern District of California

how statements regarding the effects of lidocaine patches are misleading. *Id.* ¶ 2. The implication of the FAC seems to be that these statements are misleading because the FDA's Tentative Final Monography for External Analgesic Drug Products for Over-the-Counter Human Use ("TFM") "declined to grant approval for external analgesic products to be permitted to state on product labels that these products 'numb[]' pain or 'completely block[] pain receptors.'" *Id.* ¶ 67 (quoting 48 Fed. Reg. 5852-01, 5860-61 (Feb. 8, 1983)). However, any determination regarding Defendants' compliance with FDA regulations is for the FDA. *See, e.g.*, *JHP Pharms.*, 52 F. Supp. 3d at 999 (holding that although Lanham Act claims "are not, as a general matter, precluded or barred by the FDCA," "some claims may require the expertise of the FDA to resolve" (emphasis omitted)). The Court therefore grants Hisamitsu's motion to dismiss Scilex's Lanham Act cause of action insofar as it is based on these statements regarding the effect of lidocaine.

Second, Scilex alleges that the statement "MAXIMUM STRENGTH" on Hisamitsu's patch's packaging "[f]alsely states that [the] product[] contain[s] and deliver[s] to the area of pain the maximum amount of lidocaine available in patch form" and "[m]isleadingly implies that [the] product[] [is] superior, or at least equivalent, in efficacy and results to prescription-strength lidocaine patch products." FAC ¶ 61. Hisamitsu contends that this statement must be read in the context of the entire package, which includes a disclaimer that the tagline "Maximum Strength" refers to products available without a prescription. Scilex provides a picture of the front of Hisamitsu's product's packaging, *id.* ¶ 53, and Hisamitsu asks the Court to take judicial notice of images of the complete packaging, *see* ECF No. 72 at 10 n.2 (asking the Court to take judicial notice of the documents attached to the Ghiam Declaration);[4] ECF No. 57-4. Hisamitsu's packaging is referenced in the complaint and is central to Scilex's claim, and Scilex does not question its authenticity. *See Peacock v. 21st Amend. Brewery Cafe, LLC*, No. 17-CV-01918-JST, 2018 WL 452153, at *2 (N.D. Cal. Jan. 17, 2018). The Court therefore grants Hisamitsu's request that it take judicial notice of the complete packaging.

Hisamitsu relies on *Cannarella v. Volvo Car USA LLC*, 2016 WL 9450451, at*8 (C.D.

[4] Because the Court need not address in its analysis the other documents attached to the Ghiam Declaration, it does not otherwise consider Hisamitsu's request.

Cal. Dec. 12, 2016), to argue that "Maximum Strength" is not a false statement due to the disclaimer "available without a prescription." ECF No. 57 at 22-24. *Cannarella* is readily distinguishable. There, the court considered allegations regarding a peristaltic energy generation system that was featured in a commercial with the disclaimer that the system was "not available to the general public." 2016 WL 9450451, at*2. The *Cannarella* court granted the motion to dismiss in part because it was "difficult to reconcile" the disclaimer that the system was not for sale "with section 1125(a)'s requirement that the false statement is tied to goods, services, or items used in commerce." *Id.* at *8. The disclaimer here serves a different purpose as it provides important context to the statement "maximum strength." The disclaimer is also in small font and is on a separate panel from the "maximum strength" tagline. *See* ECF No. 57-4 at 2. The Court holds that "the presence of a disclaimer on the [Hisamitsu] product[] does not require dismissal of the fraudulent advertising claims at this stage of the proceedings," and denies Hisamitsu's motion to dismiss Scilex's cause of action insofar as it is based on this statement. *Dorfman v. Nutramax Lab'ys, Inc.*, No. 13CV0873 WQH RBB, 2013 WL 5353043, at *11 (S.D. Cal. Sept. 23, 2013) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("While there are disclaimers and qualifying language, determining whether a reasonable consumer would be deceived is inappropriate at [the motion to dismiss] stage of the litigation.")).

Third, Scilex alleges that the statement "apply for 8 hours' . . . [m]isleadingly implies that [Hisamitsu's] product[] continuously adhere[s] to the body and continuously relieve[s] pain for the specified amount of time." FAC ¶ 61. Hisamitsu asserts that "apply for 8 hours" does not say how long the product adheres to the skin or if the strength of the product remains effective for all eight hours. Hisamitsu also contends that Scilex has failed to explain why this statement is material to consumers because its allegation regarding the "considerable problems" consumers had with patch adhesion does not state with particularity what problems consumers experience, which "may be due to factors unrelated to Hisamitsu's products." ECF No. 57 at 25. These arguments are not persuasive. Scilex has plausibly alleged that the statement "apply for 8 hours" misleads consumers to believe that the product will adhere to their skin and be effective for eight hours. Scilex has also alleged that consumers "have experienced considerable problems with patch

adhesion and patch detachment prior to the 8 . . . hours for which [Hisamitsu] claim[s] [its] patches adhere." FAC ¶ 66. Scilex explains that consumers can experience problems because when patches are "even partially detached, there may be uncertainty about . . . the rate and extent of drug absorption." *Id.* (quotation marks omitted). "While [Scilex] has not yet produced actual evidence of these consumer beliefs, at the motion to dismiss stage, the Court can accept allegations of such facts as sufficient." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D. Cal. 2019) (quoting *JHP Pharms.*, 52 F. Supp. 3d at 1003). The Court therefore denies Hisamitsu's motion to dismiss Scilex's cause of action insofar as it is based on this statement.

Finally, Scilex alleges that a television commercial featuring Dr. Bob Arnot recommending Hisamitsu's product to an apparent patient asking what he should use for back pain and Hisamitsu's social media posts in which Dr. Bob Arnot compares Hisamitsu's product with prescription patches "[m]isleadingly implies that Defendants' products contain and deliver the same amount of lidocaine to the area of pain as prescription patch products," "implies that Defendants' products are equivalent in efficacy and results to prescription products," and "implies that Defendants' products and prescription patch products are interchangeable." FAC ¶ 61. Scilex does not allege that the television commercial included any comparison of Hisamitsu's product and prescription lidocaine patches, and for the reasons described above the Court rejects Scilex's allegation that the commercial implies that the product is FDA-approved or prescription-only. The Court therefore grants Hisamitsu's motion to dismiss Scilex's cause of action insofar as it is based on this television commercial.

The social media posts' statements comparing Hisamitsu's product with prescription patches – including that the product has "4% of lidocaine which [Dr. Bob would] argue is close to the 5% lidocaine patch you would get with a prescription" and that the product "followed the same principles used for the Rx (5% Lidocaine) version, making it the same size and using the same hydrogel technology as its Rx cousin. The only change they made was to improve the price so as to make the product more accessible to the general public" – are a different story. Hisamitsu contends that these statements are not misleading because the social media posts (1) "highlight the

United States District Court
Northern District of California

fact that Hisamitsu's patches contain *less* lidocaine than the prescription products, thereby rejecting any claims about superiority or equivalency," and (2) "direct the patients to consult with a physician before switching to Hisamitsu's patches, which would have clarified any possibility of confusion." ECF No. 57 at 30-31 (emphasis in original). The Court first rejects Hisamitsu's position that a consumer is not misled so long as they are directed to consult with a physician. Such a rule would allow any manner of misleading advertisement. Next, the very statements at issue belie Hisamitsu's position that "any claim[] about superiority or equivalency" must be rejected. Indicating the disparate amount of lidocaine in the different patches does not undermine the plausible inference that Hisamitsu's statements – which assert that its patches are "close" to the prescription lidocaine patches, "us[e] the same hydrogel technology," and are "only" different from the prescription patch because they cost less – mislead consumers to believe that Hisamitsu's patch is interchangeable with or as effective as a prescription lidocaine patch. The Court therefore denies Hisamitsu's motion to dismiss Scilex's cause of action insofar as it is based on these statements comparing the product to prescription lidocaine patches.

In sum, the Court denies Hisamitsu's motion to dismiss as it relates to the statements "Maximum Strength" and "Apply for 8 Hours," and any statement comparing Hisamitsu's product to prescription lidocaine patches. The motion is otherwise granted. The Court grants Scilex an opportunity to amend its complaint to address the deficiencies identified above.

**3. State Law Claims**

Defendants argue that Scilex has failed to state a claim under the UCL or FAL because it has not "plausibly show[n] that a 'reasonable consumer' is 'likely to be deceived' by [any] allegedly false and misleading statement." ECF No. 56 at 30; ECF No. 57 at 33-34 (quoting *Brod v. Sioux Honey Ass'n, Co-op.*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 415 (9th Cir. 2015)).

As discussed above, Scilex alleges that several statements in Defendants' advertising and marketing are false or misleading. "[C]ourts recognize the reasonable consumer standard 'raises questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations.'" *Barry N. Kay v. Copper Cane, LLC*, No. 20-cv-04068-RS, 2021 WL 2953241, *5 (N.D. Cal. July

14, 2021) (quoting *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015)). California courts have also recognized that "an ad or practice may be 'fraudulent' even without any 'individualized proof of deception, reliance and injury.'" *Schaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1136 (2020) (citation omitted). Scilex alleges that Defendants' advertising and marketing is likely to deceive a reasonable consumer to believe, among other things, that Defendants' patches offer "the maximum amount of lidocaine available in patch form" and "adhere to the skin and provide pain relief for periods of 8 or 12 hours, depending on the product." FAC ¶¶ 10, 61 (pointing to statements such as "MAX STRENGTH LIDOCAINE"; "MAXIMUM STRENGTH"; "use 1 patch for up to 12 hours"; and "apply for 8 hours"). These allegations do not require any "inferential leaps," and Scilex has carried its burden at this stage of the litigation to allege how Defendants' advertising and marketing has "the capacity, likelihood or tendency to deceive or confuse the public." *Schaeffer*, 44 Cal. App. 5th at 1139, 1135.

**D. Laches**

Chattem argues that all claims are barred by the equitable doctrine of laches. Chattem accepts Scilex's argument that Scilex was "not responsible for knowing what happened in the marketplace before it launched," but argues that it has made "no attempt to explain the years-long delay between its entry into the market and the filing of this lawsuit." ECF No. 71 at 21. Chattem contends that "[a]t the very least, Plaintiff had actual knowledge of its alleged injury in 2018 when it filed its Citizen's Petitions to [the] FDA." ECF No. 56 at 32 (citing FAC ¶ 35).

"Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that 'one who seeks the help of a court of equity must not sleep on his rights.' It is well established that laches is a valid defense to Lanham Act claims, including those for false advertising." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (quotation marks and citations omitted). "[I]f a § 43(a) claim is filed within the analogous state limitations period, the strong presumption is that laches is inapplicable." *Id.* at 837. "[I]n determining the presumption for laches, the limitations period runs from the time the plaintiff knew or should have known about his § 43(a) cause of action." *Id.* at 838.

Scilex's claims are based on the fact that consumers purchase Defendants' lidocaine

United States District Court
Northern District of California

patches rather than ZTlido as a result of false and misleading advertising. These causes of action could not have been brought before ZTlido entered the market, which did not happen until the FDA approved ZTlido on February 28, 2018. FAC ¶ 22. Scilex filed this lawsuit less than three years later, on February 23, 2021. ECF No. 1. Because the action was filed within any applicable statute of limitations, the strong presumption is that laches is inapplicable. Chattem fails to overcome this presumption. Its motion to dismiss the FAC on this basis is denied.

**E. Motion to Strike Allegations Regarding Proposed Monograph**

Hisamitsu asks the Court to strike all allegations regarding the 2003 proposed rule to amend the TFM ("proposed Monograph") issued by the FDA. ECF No. 57 at 35 (citing FAC ¶¶ 8, 32-35). The Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone*, 618 F.3d at 973.

Scilex argues that its allegations regarding the proposed Monograph "provides relevant background and context for its false advertising claims relating to OTC products" and "is not prejudicial in any way." ECF No. 65 at 35. Recognizing that "motions to strike are disfavored at the pleading stage, and 'are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation,'" the Court will deny Hisamitsu's motion to strike. *Rosen*, 164 F. Supp. 3d at 1179-80 (citation omitted).

**CONCLUSION**

For the foregoing reasons, Hisamitsu's motion to strike is denied and Defendants' motions to dismiss are granted in part and denied in part. Scilex may file an amended complaint, solely to correct the deficiencies identified above, within 21 days of the date of this order. Failure to file a timely amended complaint will result in dismissal of this case with prejudice.

**IT IS SO ORDERED.**

Dated: August 16, 2021

JON S. TIGAR
United States District Judge