LATHAM & WATKINS LLP
Steven N. Feldman (*CA Bar No. 281405*)
steve.feldman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Jamie L. Wine (*CA Bar No. 181373*)
jamie.wine@lw.com
885 Third Avenue
New York, NY 10022
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

David K. Callahan (*pro hac vice*)
david.callahan@lw.com
Matthew W. Walch (*pro hac vice*)
matthew.walch@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767

*Attorneys for Plaintiff*
*Scilex Pharmaceuticals Inc.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| SCILEX PHARMACEUTICALS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SANOFI-AVENTIS U.S. LLC, CHATTEM, INC., and HISAMITSU AMERICA, INC.,<br><br>Defendants. | CASE NO. 4:21-cv-01280-JST<br><br>**SECOND AMENDED COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## SECOND AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff Scilex Pharmaceuticals Inc. ("Scilex") brings this Second Amended Complaint against defendants Sanofi-Aventis U.S. LLC ("Sanofi"), Chattem, Inc. ("Chattem"), and Hisamitsu America, Inc. ("Hisamitsu") (collectively, "Defendants"):

## NATURE OF THE ACTION

1. Through this action, Scilex seeks an award of damages and the entry of injunctive relief to address Defendants' ongoing false and deceptive advertising of their respective over-the-counter ("OTC") lidocaine patch products, namely, Sanofi's and Chattem's IcyHot® Lidocaine Patch, Aspercreme® Lidocaine Patch and Aspercreme® XL Lidocaine Patch, and Hisamitsu's Salonpas® Lidocaine Pain Relieving Gel-Patch (collectively, the "OTC Lidocaine Patches").

2. Lidocaine is a topical anesthetic that is used to treat pain by blocking the conduction of pain signals from nerve endings in the skin to the spinal cord and brain. Specifically, lidocaine functions by blocking sodium channels that are on the nerve endings, which prevents action potential from propagating in the nerve cell and thereby interrupts the conduction of the pain signal. The United States Food and Drug Administration ("FDA") first approved lidocaine for topical use in the early 1950s.

3. In 1983, the FDA published the Tentative Final Monography for External Analgesic Drug Products for Over-the-Counter Human Use, 48 Fed. Reg. 5852-01 (Feb. 8, 1983) ("TFM"), which provides permissible language for the labeling, ingredients, and doses for OTC external analgesic products, including those containing 0.5% to 4% lidocaine.

4. In 1999, the FDA approved the first transdermal lidocaine patch, in which 5% topical lidocaine is included in a pressure-sensitive adhesive material that attaches to the skin. The patches are indicated by the FDA only for relief of pain associated with post-herpetic neuralgia ("PHN"), a complication of shingles. The FDA has since approved other prescription-only lidocaine patch products to treat PHN pain. While the FDA has approved these products to

treat the symptoms of PHN and to provide temporary pain relief, many patients have experienced various problems with their adhesion and efficacy.

5. These problems led Scilex to develop its ZTlido® (lidocaine topical system) 1.8% product, a patch containing 1.8% lidocaine by weight, which is dissolved in Scilex's proprietary single-layer nonaqueous polymer matrix system, allowing for a thinner patch that both provides superior adhesion to the skin over patches containing 5% lidocaine by weight, and efficiently delivers lidocaine to the area of pain.

6. Extensive scientific studies have demonstrated both the bioequivalence of the 1.8% lidocaine in Scilex's ZTlido® patch to the 5% lidocaine in other companies' prescription-only lidocaine patches, as well as the superiority in adhesion of Scilex's ZTlido® patch over other companies' prescription-only 5% lidocaine patches. The results of these studies show that Scilex's ZTlido® patch delivers the same amount of lidocaine to the area of pain as other companies' prescription-only 5% lidocaine patches. In addition, the superior adhesion of Scilex's ZTlido® patch allows it to adhere to the skin for a full 12 hours and provide pain relief for 24 hours.

7. In 2018, the FDA approved Scilex's ZTlido® product to treat pain associated with PHN. However, doctors routinely prescribe Scilex's ZTlido® product for off-label indications, such as general neuropathic pain, including back and spinal pain. While ZTlido® can be used for such off-label indications, Scilex is precluded by FDA regulations from advertising its product for such indications.

8. In 2003, the FDA issued a proposed rule to amend the TFM to explicitly exclude patches and to classify OTC patches containing analgesic ingredients as Category III products, for which "more data [is] needed" to determine if the products are "generally recognized as safe and effective." *See* External Analgesic Drug Products for Over-the-Counter Human Use; Reopening of the Administrative Record and Amendment of Tentative Final Monograph, 68 Fed. Reg. 42324-01, 42326 (July 17, 2003). Category III products may be marketed and sold only following FDA review and approval of the product and its labeling through a New Drug Application ("NDA") or Abbreviated New Drug Application ("ANDA").

9. In 2016, despite neither complying with the TFM labeling requirements for products containing Category I ingredients nor undergoing the FDA review and approval process for products containing Category III ingredients, Defendants began marketing, distributing and selling their OTC Lidocaine Patches containing 4% lidocaine by weight. However, Defendants' labeling and marketing of their OTC Lidocaine Patches not only fail to comply with the FDA regulations for OTC lidocaine-containing drug products, but are independently false and deceptive.

10. Using glossy advertisements featuring Shaquille O'Neil and "Dr. Bob" Arnot, among others, along with other highly deceptive packaging and online marketing, Defendants have embarked on an advertising blitz propagating claims that their OTC products: (a) contain and/or deliver to the area of pain the maximum amount of lidocaine available in patch form; (b) block and/or numb pain away; (c) target and/or desensitize aggravated nerves; (d) target more pain receptors than other lidocaine patch products; and/or (e) adhere to the skin and provide pain relief for periods of 8 or 12 hours, depending on the product.

11. Defendants' advertising claims are inaccurate and misleading. Defendants' false and deceptive claims have duped consumers and others into purchasing Defendants' OTC Lidocaine Patches, rather than prescription lidocaine patches produced by Scilex and other prescription-only lidocaine patch producers. Defendants' claims give the false impression that Defendants' OTC Lidocaine Patches are superior, or equivalent, in efficacy to prescription-only lidocaine patches, such as those offered by Scilex.

12. By making such false and misleading advertising claims through various channels—including their product packaging, online content, social media, and television advertisements—Defendants have achieved their intended goal of increasing their sales and profits by deceiving consumers regarding the nature, characteristics and efficacy of Defendants' OTC Lidocaine Patches, which directly compete with Scilex's ZTlido® patch products. Defendants' unfair and deceptive practices have also caused Scilex to experience significant damages, including an adverse impact on the sales of its ZTlido® products and a diminution of

goodwill in its ZTlido® mark, as Defendants have deceived consumers into buying Defendants' patches instead of prescription patches, such as ZTlido®.

13. Based on the foregoing conduct, as alleged in more detail below, Scilex seeks an award of damages against Defendants and the entry of injunctive relief enjoining further dissemination of Defendants' false and deceptive advertising. Such relief is appropriate because Defendants have violated Section 43(a)(1)(B) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)), California's False Advertising Law (Cal. Bus. & Prof. Code §17500) ("FAL"), and California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) ("UCL").

## JURISDICTION AND VENUE

14. The Court has jurisdiction over the subject matter presented by this Complaint pursuant to 28 U.S.C. § 1331 because it includes a claim of false and deceptive advertising under the Lanham Act (15 U.S.C. §§ 1051, *et seq*.), including 15 U.S.C. § 1121, which expressly provides that claims arising thereunder are subject to federal subject matter jurisdiction.

15. Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental jurisdiction over Scilex's state law claims, in that those claims are joined with substantial and related claims under the Lanham Act. This Court also has supplemental jurisdiction over Scilex's state law claims pursuant to 28 U.S.C. § 1367(a), in that all of Scilex's claims arise out of a common nucleus of operative facts.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Scilex's claim occurred in this district, as Defendants conduct substantial business within California, including the marketing, distribution, and sale of their respective products in California, and because Scilex's claims arise from the marketing, distribution, and sale of Defendants' respective products in California.

## PARTIES

17. Plaintiff Scilex is a Delaware corporation, with its principal place of business at 960 San Antonio Road, Palo Alto, CA 94303. Plaintiff Scilex markets, distributes, and sells the FDA-approved, prescription-strength topical analgesic self-adhesive patch under the brand name ZTlido®. ZTlido® is manufactured by Oishi Koseido Co., Ltd.

18. Defendant Sanofi is a Delaware corporation, with its principal place of business at 55 Corporate Drive, Bridgewater, New Jersey 08807. Defendant Sanofi markets, distributes, and sells the IcyHot® Lidocaine Patch, the Aspercreme® Lidocaine Patch, and the Aspercreme® Lidocaine Patch XL. Defendant Sanofi markets, distributes, and sells the aforementioned products to California citizens through drug stores, mass retailers, and online retailers.

19. Defendant Chattem is a Tennessee corporation, with its principal place of business at 1715 West 38th Street, Chattanooga, Tennessee 37409. Defendant Chattem is a wholly owned subsidiary of Sanofi S.A. Defendant Chattem manufactures the IcyHot® Lidocaine Patch, the Aspercreme® Lidocaine Patch, and the Aspercreme® Lidocaine Patch XL.

20. Defendant Hisamitsu is a California corporation, with its principal place of business at 100 Campus Drive, Suite 117, Florham Park, New Jersey 07932. Defendant Hisamitsu markets, distributes, and sells the Salonpas® Lidocaine Pain Relieving Gel-Patch, which is manufactured by its parent company, Hisamitsu Pharmaceutical Co., Inc. Defendant Hisamitsu markets, distributes, and sells the Salonpas® Lidocaine Pain Relieving Gel-Patch to California citizens through drug stores, mass retailers, and online retailers.

## FACTUAL BACKGROUND

### A. Scilex's Prescription ZTlido® Patch

21. ZTlido® is a prescription topical analgesic, self-adhesive patch. The patch contains lidocaine—a local anesthetic and topical analgesic—in the amount of 1.8% by weight, or 36 mg per patch. The ZTlido® patch is administered by applying the patch to intact skin covering the painful area. The patch design is intended to provide improved adhesion compared to other prescription lidocaine patches, which contain 5% lidocaine by weight. Scilex has an exclusive license to market, distribute, and sell ZTlido® within the United States.

22. The FDA approved a New Drug Application for ZTlido® on February 28, 2018 under § 505(b) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(b)), for the relief of pain associated with PHN.

23. PHN is a syndrome of persistent neuropathic pain, which frequently follows an outbreak of shingles (also known as herpes zoster rash). Shingles is a painful vesicular skin rash

caused by the reactivation of latent varicella zoster virus—the same virus that causes chickenpox.

24. Pain associated with PHN may include itching, burning, aching, or throbbing as a result of damaged nerve fibers and can last for as little as three months or as long as several years. Approximately one million people develop shingles annually, and 5-20% of those individuals will develop PHN.

25. The FDA-approved product labeling for ZTlido® provides that up to three patches may be applied for up to 12 hours within a 24-hour period. Patches may be cut into smaller sizes with scissors before the adhesive backing is peeled away. A user may wear clothing over the area of application.

26. In addition to its indicated use, ZTlido® is often prescribed for off-label uses, including general neuropathic pain, such as back and spinal pain. There is evidence that prescription-strength lidocaine patches, such as ZTlido®, can be effective as first-line therapy in the management of neuropathic pain. A 2012 study found that over 82% of usage of prescription lidocaine patches was off-label.

27. Experts in the field have concluded that the therapeutic effectiveness of the ZTlido® patch stems from its proprietary single-layer nonaqueous polymer matrix technology that delivers a controlled dose of lidocaine through the skin to provide an analgesic effect. This proprietary formulation allows ZTlido® to provide the same efficacy as prescription 5% lidocaine patches with less lidocaine by weight, allowing for a thinner patch with superior adhesion to the skin. Formulations that deliver less lidocaine through the skin have not been shown to be as effective (or more effective) than ZTlido®.

28. The superior adhesion of ZTlido® over other lidocaine patches allows it adhere to the body for a full 12 hours and provide pain relief for 24 hours, and allows ZTlido® patches to continue to work and have the same efficacy during physical exercise. ZTlido®'s superior adhesion also reduces the incidence of possible negative consequences of patch detachment, including the dangers posed by consumption of patches by children or pets and the cost of replacement patches.

29. ZTlido® is a Tier 2 or Tier 3 product on the formularies of many managed health care organizations in the U.S., meaning that many patients prescribed ZTlido® can obtain it with only a reasonable co-pay.

**B. FDA Regulations Applicable to Defendants' OTC Lidocaine Patches**

30. The FDA regulates the sale and advertising of all drugs, whether available only by prescription or OTC. Under the FDA's current statutory and regulatory framework, an OTC drug product can enter the market in one of three ways: (i) by complying with the applicable monograph; (ii) as the subject of an FDA-approved NDA or, in the case of generic approval, an ANDA; or (iii) through an FDA-approved prescription-to-OTC switch. Obtaining FDA approval through the second and third options requires extensive clinical studies or, at a minimum, a finding by the FDA that a generic drug is bioequivalent to an already approved drug.

31. Currently, drug products containing 0.5% to 4% lidocaine, such as Defendants' OTC Lidocaine Patches, are governed by the FDA's TFM for external analgesic products. 48 Fed. Reg. 5852-01 (Feb. 8, 1983).

32. In its 2003 proposed rule, the FDA proposed adding the following language to the TFM for external analgesic products until the FDA could determine whether patches containing analgesic ingredients, such as lidocaine, were "generally recognized as safe and effective": "The active ingredients of the product consist of any of the following, within the established concentration for each ingredient, **but not for use in a patch**, plaster, or poultice dosage form." 68 Fed. Reg. 42324-01, 42325-26 (July 17, 2003) (emphasis added).

33. The FDA proposed this amendment because it had become aware that it needed further data on "[t]he safe and effective concentration of the drug ingredient(s)," "how often the plaster or poultice needs to be changed for effective use," and "[t]he frequency of application that is considered safe and effective," among other areas of concern with external analgesic patches. *Id*. at 42325. The FDA further noted that it "is not aware of sufficient data to classify any OTC external analgesic active ingredient in a patch, plaster, or poultice dosage form as Category I." *Id*. Category I products are those which have been determined by the FDA to be

generally accepted as safe and effective and can be marketed without FDA review and approval by complying with the applicable monograph.

34. Due to the concerns regarding safety and efficacy, the FDA proposed classifying external analgesic patches as Category III products, which may only be marketed and sold following FDA testing, review, and approval of the product through the NDA or ANDA process. *Id*. at 42325-26.

35. Defendants' marketing and sale of their OTC Lidocaine Patches does not comply with either the TFM or the FDA requirements for review and approval of OTC drug products offered outside an applicable TFM. Given that Defendants' marketing and labeling of their OTC Lidocaine Patches fails to comply with either the FDA's TFM or its proposed rule, Scilex submitted a Citizen Petition under 21 U.S.C §§ 321, 352, and 355 and 21 C.F.R. § 10.30 in December 2018 to request that the Commissioner of the FDA finalize the 2003 proposed amendment to the TFM and remove any OTC lidocaine-containing patches that lack FDA approval from the market, among other requests. Scilex noted in its petition that OTC lidocaine patch producers, such as Defendants, have been marketing and selling OTC lidocaine patch products for several years without complying with the TFM or undergoing FDA review and approval, which presents both safety and efficacy concerns. Scilex's petition is currently pending, and Defendants' noncompliant and misleading marketing of their OTC Lidocaine Patches is ongoing. With this Complaint, Scilex addresses the false and deceptive nature of Defendants' advertising claims under federal and state law, claims that are independent of those addressed in Scilex's Citizen Petition.

**C. Defendants' Misleading Marketing Campaign**

36. Defendants' packaging for and other marketing of their respective products contain a variety of false and deceptive claims aimed at enticing consumers to purchase Defendants' OTC Lidocaine Patches instead of prescription lidocaine patches, such as Scilex's ZTlido® product.

**1. Sanofi's and Chattem's False and Deceptive Advertisements Regarding Their IcyHot® Lidocaine Patch**

37. Defendants Sanofi and Chattem advertise the IcyHot® Lidocaine Patch product using false and deceptive statements.

38. Defendant Sanofi represents on its website that the IcyHot® line of products, which includes the IcyHot® Lidocaine Patch, are Sanofi products.

39. Defendant Sanofi's name and logo are displayed on the product website for its IcyHot® Lidocaine Patch. The IcyHot® Lidocaine Patch product website also indicates that Defendant Chattem owns the copyright in all content on the website.

40. The product packaging for the IcyHot® Lidocaine Patch states that the product is distributed by Defendant Chattem, a Sanofi Company.

41. The packaging for the IcyHot® Lidocaine Patch makes the following claims with respect to the product in bold, all caps lettering: "MAX STRENGTH LIDOCAINE" and "DESENSITIZES AGGRAVATED NERVES." The packaging portrays additional claims that the product: "targets more pain receptors," and "numbs away pain." The packaging further claims that the product is "fast acting" and that consumers may "use 1 patch for up to 12 hours."

42. The product webpage for the IcyHot® Lidocaine Patch claims that the product "relieve[s] pain fast," "targets more pain receptors," and "numbs away pain," in addition to the claims depicted on an image of the product's packaging as shown below.



43. The television commercials advertising the IcyHot® Lidocaine Patch featuring ex-NBA player Shaquille O'Neal reiterate these false and deceptive claims, showing various individuals suffering from back pain, and Mr. O'Neal asking viewers: "Ready to take control of your back pain?" The commercials then display a claim in bold, all caps lettering on the screen that the product "DESENSITIZES NERVES," over an image of the patch on an individual's lower back as shown below. The commercials include additional claims that the IcyHot® Lidocaine Patch "desensitizes aggravated nerves with the max strength lidocaine available."




**2. Sanofi's and Chattem's False and Deceptive Advertisements Regarding Their Aspercreme® Lidocaine Patch and Aspercreme® Lidocaine XL Patch**

44. Defendants Sanofi and Chattem advertise the Aspercreme® Lidocaine Patch products using false and deceptive statements.

45. Defendant Sanofi represents on its website that the Aspercreme® line of products, which includes the Aspercreme® Lidocaine Patch and Aspercreme® Lidocaine Patch XL, are Sanofi products.

46. Defendant Sanofi's name and logo are displayed on the product websites for the Aspercreme® Lidocaine Patch and Aspercreme® Lidocaine Patch XL. The Aspercreme® Lidocaine Patch and Aspercreme® Lidocaine Patch XL product websites also indicate that Defendant Chattem owns the copyright in all content on the websites.

47. The product packaging for the Aspercreme® Lidocaine Patch and the Aspercreme® Lidocaine Patch XL states that the products are distributed by Defendant Chattem, a Sanofi Company.

48. As shown below, the packaging for the Aspercreme® Lidocaine Patch and Aspercreme® Lidocaine XL Patch includes the following claims with respect to the products, in bold, all caps lettering: "FAST ACTING," "MAX STRENGTH," "NUMBS AWAY PAIN," and "TARGETS NERVES."




49. The product webpages for the Aspercreme® Lidocaine Patch and Aspercreme® Lidocaine Patch XL claim that both products offer "targeted, maximum strength pain relief to numb pain away," in addition to the claims on images of the products' packaging. The webpages further claim that consumers may "[u]se 1 patch for up to 12 hours."

50. The print advertisements for the Aspercreme® Lidocaine Patch products, which include a copyright notice for Defendant Chattem, reiterate these false and deceptive claims, representing that the Aspercreme® Lidocaine Patch provides the "MAX STRENGTH LIDOCAINE" and is "fast acting."

51. The television commercials for the products reiterate these false and deceptive claims, portraying in bold lettering on the screen that the product "Desensitizes Aggravated Nerves," over an image of the product on an individual's lower back. The commercials make additional claims that the Aspercreme® Lidocaine Patch "quickly desensitizes aggravated nerves to block pain for maximum strength relief" and can "Relieve the nerves. Stop the pain."

### 3. Hisamitsu's False and Deceptive Advertisements Regarding Its Salonpas® Pain Relieving Gel-Patch

52. As shown below, Defendant Hisamitsu's packaging for its Salonpas® Lidocaine Pain Relieving Gel-Patch makes the following claims with respect to the product, in bold, all caps lettering: "MAXIMUM STRENGTH" with "IMPROVED ADHESION." The packaging further claims that the product "desensitize[s] aggravated nerves." The packaging also claims that consumers may "apply [the product] for 8 hours."







53. Defendant Hisamitsu, on its product webpage for the Salonpas® Lidocaine Pain Relieving Gel-Patch, claims that the product "desensitizes aggravated nerves," in addition to those claims displayed on an image of the product's packaging.

54. Defendant Hisamitsu makes further misleading statements in its television commercials featuring "Dr. Bob" Arnot. In at least one commercial, which is accessible via a link on the Salonpas® Lidocaine Pain Relieving Gel-Patch product webpage, Defendant Hisamitsu depicts Dr. Bob wearing a white lab coat in a doctor's office, advising a patient to use "topical relievers" for his back pain, recommending the Salonpas® Lidocaine Pain Relieving

Gel-Patch, and stating that the product "blocks pain receptors for effective, non-addictive relief." A screen shot of that advertisement is shown below.




55. Defendant Hisamitsu repeats these false and deceptive claims in its social media. In an October 16, 2017 blog post titled "Frequently Asked Questions with Dr. Bob Arnot," which is found on Hisamitsu's website for Salonpas®, "Dr. Bob" states that "many doctors prescribe off-label uses for [prescription] lidocaine patches including aggravated nerve pain in the back, neck, shoulders, knees and elbows," and claims that the Salonpas® Lidocaine Pain Relieving Gel-Patch has "4% of lidocaine which I'd argue **is close to the 5% lidocaine patch you would get with a prescription**" and that "Salonpas® **followed the same principles used for the Rx (5% Lidocaine) version**, making it the same size and using the same hydrogel technology as its Rx cousin. **The only change they made was to improve the price** so as to make the product more accessible to the general public." (emphasis added). The same claims are found in a January 9, 2017 blog post on Defendant Hisamitsu's website for Salonpas®, titled "Dr. Bob Arnot on Keeping Healthy and Active with Salonpas."

56. Defendant Hisamitsu further compares its product to prescription-strength lidocaine patches in an October 2, 2017 blog post on its website for Salonpas®, titled "Lidocaine for Pain Relief." Defendant Hisamitsu claims that "Medicare and many insurance companies are no longer providing coverage for off-label use of lidocaine patches. A monthly supply of lidocaine patches can cost hundreds of dollars[,]" and again represents that its Salonpas

Lidocaine Pain Relieving Gel-Patch "us[es] the same size and hydrogel technology as the prescription lidocaine patch."

**4. The False and Deceptive Nature of Defendants' Claims**

57. Defendants' marketing of their OTC Lidocaine Patches misleads managed health care companies, pharmacies, doctors, and consumers regarding the characteristics and efficacy of Defendants' products.

58. Cumulatively, Defendants' claims misleadingly imply that their OTC Lidocaine Patches are superior, or at least equivalent, in efficacy and results to prescription lidocaine patches, such as Scilex's ZTlido® patch, and that the products are otherwise substantially similar or identical in all material respects.

59. Defendants have targeted consumers of prescription lidocaine patches, such as ZTlido® patches, through their false and misleading advertisements, and in doing so have secured substantial sales to the detriment of Scilex as a result of their misconduct. On information and belief, Defendant Sanofi's 2019 U.S. sales for its IcyHot® and Aspercreme® products exceeded $155 million and $106 million, respectively. On information and belief, Defendant Hisamitsu's 2019 U.S. sales for its Salonpas patch products exceeded $125 million.

60. Defendants have implemented their marketing plan through the following statements, conveying false and deceptive messages to consumers:

| Defendants' Statements and Sources | False/Misleading Messages |
|---|---|
| • *"MAX STRENGTH LIDOCAINE"* (IcyHot® patch packaging)<br>• *"max strength lidocaine available"* (IcyHot® patch commercial)<br>• *"MAX STRENGTH"* (Aspercreme® patches packaging)<br>• *"maximum strength pain relief"* (Aspercreme® patches webpages)<br>• *"MAX STRENGTH LIDOCAINE"* (Aspercreme® patches print advertisements)<br>• *"maximum strength relief"* (Aspercreme® patches commercials)<br>• *"MAXIMUM STRENGTH"* (Salonpas® patch packaging) | • Falsely states that Defendants' products contain and deliver to the area of pain the maximum amount of lidocaine available in patch form<br>• Misleadingly implies that Defendants' products are superior, or at least equivalent, in efficacy and results to prescription-strength lidocaine patch products |
| • *"use 1 patch for up to 12 hours"* (IcyHot® patch packaging)<br>• *"Use 1 patch for up to 12 hours"* (Aspercreme® patch product webpage)<br>• *"apply for 8 hours"* (Salonpas® patch packaging) | • Misleadingly implies that Defendants' products continuously adhere to the body and continuously relieve pain for the specified amount of time |

| Defendants' Statements and Sources | False/Misleading Messages |
|---|---|
| • *"numbs away pain"* (IcyHot® patch packaging and product webpage)<br>• *"block pain"* and *"stop the pain"* (Aspercreme® patches commercials)<br>• *"numb pain away"* and *"NUMBS AWAY PAIN"* (Aspercreme® patches packaging and product webpages)<br>• *"blocks pain receptors for effective, non-addictive relief"* (Salonpas® patch commercial) | • The claims collectively mischaracterize how Defendants' products function in a manner that suggests a higher level of efficacy in treating pain than is possible.<br>• Misleadingly asserts that Defendants' products function by completely blocking or stopping pain or pain receptors or completely numbing away pain<br>• The claims with respect to blocking or stopping pain receptors or pain falsely suggest that Defendants' products block pain receptors or pain when, even if they delivered an adequate amount of lidocaine, they merely block sodium channels on the nerve endings which interrupts the conduction of the pain signal.<br>• Misleadingly implies that Defendants' products deliver adequate lidocaine to the skin to completely block or stop pain |

| Defendants' Statements and Sources | False/Misleading Messages |
|---|---|
| • *"Targets More Pain Receptors"* (IcyHot® patch packaging)<br>• *"DESENSITIZES AGGRAVATED NERVES"* and *"DESENSITIZES NERVES"* (IcyHot® patch packaging and commercials)<br>• *"TARGETS NERVES"* (Aspercreme® patches packaging)<br>• *"Desensitizes Aggravated Nerves," "quickly desensitizes aggravated nerves,"* and *"Relieve the nerves."* (Aspercreme® patches commercials)<br>• *"desensitizes aggravated nerves"* (Salonpas® patch packaging and product webpage) | • Misleadingly asserts that the products function by specifically targeting, desensitizing, and relieving aggravated nerves and/or pain receptors; even if the products delivered an adequate amount of lidocaine, such lidocaine blocks sodium channels in the nerve endings and interrupts the conduction of the pain signal<br>• Misleadingly implies that Defendants' products deliver adequate lidocaine to the skin to desensitize nerves and/or target pain receptors<br>• The "targets more pain receptors" claim misleadingly implies that the product functions more effectively than other products, including prescription-strength lidocaine patch products. |
| • *"[product has] 4% of lidocaine which I'd argue is close to the 5% lidocaine patch you would get with a prescription"* (Salonpas® patch social media)<br>• *"Salonpas® followed the same principles used for the Rx (5% Lidocaine) version, making it the same size and using the same hydrogel technology as its Rx cousin. The only change they made was to improve the price so as to make the product more accessible to the general public."* (Salonpas® patch social media) | • Misleadingly implies that Defendants' products contain and deliver the same amount of lidocaine to the area of pain as prescription patch products<br>• Misleadingly implies that Defendants' products and prescription patch products are interchangeable<br>• Misleadingly implies that Defendants' products are equivalent in efficacy and results to prescription products |

| Defendants' Statements and Sources | False/Misleading Messages |
|---|---|
| • *"fast acting"* (IcyHot® patch packaging)<br>• *"relieve[s] pain fast"* (IcyHot® patch product webpage)<br>• *"FAST ACTING"* (Aspercreme® patches packaging and print advertisements)<br>• *"quickly desensitizes aggravated nerves"* (Aspercreme® patches commercials) | • Misleadingly implies that Defendants' products provide immediate pain relief |

61. Defendants' false and misleading advertising causes consumers to be misled and to choose Defendants' products over prescription lidocaine patches, including Scilex's ZTlido® product, causing Scilex significant harm.

62. ZTlido® contains 1.8% lidocaine dissolved into a single-layer nonaqueous polymer matrix system—a system which has been shown through clinical testing to deliver the same amount of lidocaine to the area of pain as prescription-only 5% lidocaine patches, which use a multi-layer hydrogel matrix.

63. Defendants represent that their patches, like prescription 5% lidocaine patches, use a hydrogel matrix to transfer lidocaine to the skin. However, Defendants' patches only include 4% lidocaine. Defendants' marketing claims that their products deliver the "maximum strength lidocaine" are false and misleading, as their patches contain less lidocaine than prescription patches.

64. Moreover, Defendants "maximum strength" and "fast acting" claims are misleading because their OTC Lidocaine Patches use a thicker patch matrix than ZTlido®, which results in less effective delivery of the lidocaine to the area of pain, meaning Defendants' products deliver a lower amount of lidocaine to the area of pain and require a longer amount of time for that delivery. Lidocaine patch studies have found that "topical system delivery technologies have advanced such that product strength and drug load are not necessarily indicators of biopharmaceutical efficiency, and thus, can be misleading and may contribute to physician, pharmacy, and patient confusion over strength and dose."

65. On information and belief, consumers using Defendants' OTC Lidocaine Patches have experienced considerable problems with patch adhesion and patch detachment prior to the 8 to 12 hours for which Defendants claim their patches adhere. This is critical because, as the FDA has noted, when a transdermal drug delivery product, such as Defendants' OTC Lidocaine Patches, becomes even "partially detached, there may be uncertainty about the resulting drug delivery profile and, hence, uncertainty about the rate and extent of drug absorption." Defendants' advertising claims present a false and misleading message that their OTC Lidocaine Patches both adhere to the skin for a full 8-12 hours and deliver adequate amounts of lidocaine to provide "maximum strength" pain relief and to "target" and "desensitize" a consumer's "aggravated nerves," "stop" or completely "block" pain or pain receptors, and completely "numb away pain" for a full 8-12 hours.

66. In addition, Defendants' claims that their products target and desensitize aggravated nerves, stop or block pain or pain receptors, and numb away pain misleadingly describe how the products function. As stated above, lidocaine acts by blocking sodium channels that are on the nerve endings, which prevents action potential from propagating in the nerve cell and thereby interrupts the conduction of the pain signal. By claiming that their products *target* and *desensitize aggravated* nerves, Defendants convey the false or misleading message that their products specifically locate and then completely deactivate the aggravated nerves, rather than blocking the sodium channels on the nerve endings. Further, Defendants present the false or misleading message that their products function by *stopping* or completely *blocking* pain or pain receptors and *numbing* the pain away, as opposed to merely interrupting the conduction of the pain signal.

67. In addition, due to the lack of any records of FDA approval for Defendants' OTC Lidocaine Patch products, and the lack of any publicly available studies or testing on Defendants' OTC Lidocaine Patches, Scilex is informed and believes and therefore alleges that none of Defendants has either performed, nor had any third party perform, scientific testing or clinical trials to determine the accuracy of the marketing statements Defendants have made

regarding effectiveness, method of effectiveness, duration of effectiveness, strength of lidocaine, or results portrayed in their marketing of their respective OTC Lidocaine Patch products.

## CAUSES OF ACTION

### Count I – False and Deceptive Advertising

### (15 U.S.C. § 1125(a)(1)(B))

68. Scilex incorporates and realleges by references the allegations above, as if fully set forth herein.

69. Defendants' marketing and advertising of their OTC Lidocaine Patch products, which directly compete with Scilex's ZTlido® product, constitute false and deceptive advertising under the Lanham Act.

70. Defendants have made, and continue to make, false and deceptive statements and claims about their OTC Lidocaine Patch products by representing to current and potential consumers—in advertising material and on their products' packaging—that the products "block[] pain receptors," "numb away pain," "desensitize[] nerves," are "fast acting," provide relief and adhere to the skin for 8 or 12 hours, are "maximum strength" and/or provide the "maximum strength of lidocaine available, and provide "close" to the same amount of lidocaine as prescription lidocaine patches, such as ZTlido®, among other claims. Defendants knew or should have known that their advertising claims have not been substantiated and, in any event, are false and deceptive.

71. These statements constitute commercial advertising or promotion within the meaning of the Lanham Act.

72. Defendants' false and deceptive advertising statements and claims have a tendency to confuse, mislead, and deceive a substantial segment of its audience as to the nature, characteristics, and qualities of their OTC Lidocaine Patch products.

73. Defendants' false and deceptive advertising statements and claims are material in that they are likely to influence consumer purchasing decisions.

74. Defendants placed these false and deceptive advertising statements and claims in interstate commerce by disseminating these representations nationwide.

75. As a direct and proximate result of these deceptive acts, Scilex has been damaged, and will continued to be damaged, in an amount that will be ascertained according to proof. Scilex's damages include actual damages in the form of the diminished goodwill of the ZTlido® mark associated with its product offered under that mark and lost profits stemming from reduced demand for ZTlido® caused by Defendants' false and deceptive advertising; the disgorgement of any profits that Defendants unfairly realized, retained, or gained through their unlawful conduct in the course of their false and deceptive marketing campaigns; and the costs of this action. Scilex will continue to suffer injury to the goodwill of its ZTlido® brand and to its business associated with the sale of ZTlido® patches unless and until Defendants and any others in active concert with Defendants are enjoined from continuing their wrongful acts, as described herein.

76. Based on the foregoing, Defendants have engaged in false and deceptive advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

77. On information and belief, Defendants have engaged in this activity knowingly, willfully, and in bad faith, justifying the assessment of enhanced damages against them.

78. Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and Scilex is thus entitled to an award of its attorneys' fees and costs.

**Count II – Violations of California's False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

79. Scilex incorporates and realleges by references the allegations above, as if fully set forth herein.

80. The FAL makes it "unlawful for any person…to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

81. Defendants committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of their OTC Lidocaine Patches representing—in

advertising material and on the products' packaging—that the products "block[] pain receptors," "numb away pain," "desensitize[] nerves," are "fast acting," provide relief and adhere to the skin for 8 or 12 hours, are "maximum strength" and/or provide the "maximum strength of lidocaine available, and provide "close" to the same amount of lidocaine as prescription lidocaine patches, such as ZTlido®, among other claims. Defendants knew or should have known that their advertising claims have not been substantiated and are misleading and/or false.

82. Defendants knew or should have known, through the exercise of reasonable care, that their representations were false and misleading and likely to deceive consumers and cause them to purchase Defendants' OTC Lidocaine Patches.

83. Defendants' wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

84. Section 17535 effectively provides that the Court may enjoin any corporation or other person who violates the FAL and may make such orders or judgments as may be necessary to prevent the use of such practices, or which may be necessary to restore to any person in interest any money or property which may have been acquired by means of such practices.

85. As a direct and proximate result of these deceptive acts, Scilex has been damaged and will continue to be damaged by Defendants' unlawful, unfair, and fraudulent business practices, as described above. Accordingly, Scilex is entitled to an injunction prohibiting Defendants from continuing their practices in violation of the FAL, as described above.

**Count III – Violations of California's Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

86. Scilex incorporates and realleges by references the allegations above, as if fully set forth herein.

87. The UCL broadly prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Defendants' acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*

88. Defendants have engaged in unlawful conduct by virtue of their promotion and sale of their respective OTC Lidocaine Patches through means of false advertisements in violation of Section 43(a) of the Lanham Act and the FAL.

89. Defendants have engaged in unfair conduct by impairing competition within the market for lidocaine patch products because their false and misleading advertising claims have prevented consumers from making fully informed decisions regarding the lidocaine patch products they wish to purchase and deceived consumers into buying Defendants' patches instead of prescription patches, such as ZTlido®.

90. Defendants have engaged in fraudulent conduct because their material misrepresentations regarding their OTC Lidocaine Patches are likely to deceive a reasonable consumer, and the true facts would be material to a reasonable consumer.

91. Defendants' wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

92. As a direct and proximate result of these deceptive acts, Scilex has been damaged and will continue to be damaged by Defendants' unlawful, unfair, and fraudulent business practices described above. Accordingly, Scilex is entitled to an injunction prohibiting Defendants from continuing their practices in violation of the UCL, as described above.

## PRAYER FOR RELIEF

WHEREFORE, Scilex seeks a judgment against Defendants, as follows:

a. An injunction enjoining Defendants, and any person or entity acting in active concert with Defendants, from continuing to make false and/or misleading representations of fact about their respective OTC Lidocaine Patch products, or otherwise unfairly competing with Scilex in any manner whatsoever, or engaging in any unfair, fraudulent, or deceptive business practices that relate in any way to the marketing and advertising of Defendants' OTC Lidocaine Patch products;

b. An order directing Defendants to file with the Court and serve upon Scilex's counsel, within thirty (30) days after entry of the order of injunction, respective reports setting forth the manner and form in which Defendants have complied with the injunction;

c. An order finding that, by the acts complained of herein, Defendants have engaged in false advertising and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(B);

d. An order finding that, by the acts complained of herein, Defendants have engaged in false and misleading advertising in violation of California Business & Professions Code § 17500;

e. An order finding that, by the acts complained of herein, Defendants have engaged in unfair competition and acts of unfair and deceptive business practices in violation of California Business & Professions Code § 17200;

f. An order that Defendants must pay and provide for appropriate corrective advertisements;

g. An order awarding Scilex damages, in an amount to be fixed by the Court in accordance with proof, as well as all of Defendants' profits or gains of any kind from its acts of false advertising and unfair business practices; and further for an order that such acts were willful, thereby justifying an award of treble or enhanced or exemplary damages pursuant to 15 U.S.C. § 1117;

h. An order awarding Scilex its costs and expenses of suit, including all reasonable attorneys' fees it has incurred and will incur in this matter;

i. An order awarding Scilex prejudgment and post-judgment interest; and

j. An order awarding Scilex such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Scilex respectfully demands a trial by jury on all matters so triable.

Dated: September 7, 2021

LATHAM & WATKINS LLP

/s/ Steven N. Feldman

Steven N. Feldman (*CA Bar No. 281405*)
steve.feldman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Jamie L. Wine (*CA Bar No. 181373*)
jamie.wine@lw.com
885 Third Avenue
New York, NY 10022
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

David K. Callahan (*pro hac vice*)
david.callahan@lw.com
Matthew W. Walch (*pro hac vice*)
matthew.walch@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767

*Attorneys for Plaintiff*
*Scilex Pharmaceuticals Inc.*