LATHAM & WATKINS LLP
Steven N. Feldman (SBN 281405)
steve.feldman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Jamie L. Wine (SBN 181373)
jamie.wine@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

David K. Callahan (*pro hac vice*)
david.callahan@lw.com
Matthew W. Walch (*pro hac vice*)
matthew.walch@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767

*Attorneys for Plaintiff Scilex Pharmaceuticals Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| SCILEX PHARMACEUTICALS INC.,<br><br>Plaintiff,<br><br>v.<br><br>SANOFI-AVENTIS U.S. LLC, CHATTEM, INC., and HISAMITSU AMERICA, INC.,<br><br>Defendants. | CASE NO. 4:21-cv-01280-JST<br><br>**PLAINTIFF SCILEX PHARMACEUTICAL INC.'S OPPOSITION TO DEFENDANTS SANOFI-AVENTIS U.S. LLC AND CHATTEM, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>The Honorable Jon S. Tigar<br>Hearing Date: December 9, 2021<br>Hearing Time: 2:00 PM<br>Courtroom: 6 (2nd Floor) |

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STATEMENT OF THE FACTS .......... 1

III. LEGAL STANDARDS .......... 3

A. Federal Rule of Civil Procedure 12(b)(6) .......... 3

B. Federal Rule of Civil Procedure 9(b) .......... 4

IV. ARGUMENT .......... 4

A. Chattem's Advertisements Are Actionable Under The Lanham Act, UCL, And FAL. .......... 4

1. Chattem Fails to Accept Scilex's Allegations as True .......... 5

a. The Complaint Alleges That Chattem's "Block" Or "Numb" Pain And "Target[]" Or "Desensitize[]" Nerve Claims Are False Or Misleading .......... 6

b. The Complaint Alleges That Chattem's "Maximum Strength" Claims Are False Or Misleading. .......... 9

c. The Complaint Alleges That Chattem's "Fast-Acting" Claims Are False Or Misleading .......... 12

d. The Complaint Alleges That Chattem's "Use 1 Patch For Up to 12 Hours" Claim Is False Or Misleading .......... 13

B. The Complaint Adequately Alleges Consumer Deception with Sufficient Particularity. .......... 16

C. The Complaint Adequately Alleges Materiality with Sufficient Particularity. .......... 18

V. CONCLUSION .......... 19

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*,
No. C 08-cv-3931-RS, 2009 WL 55178 (N.D. Cal. Jan. 7, 2009)....17

*Bailey v. Rite Aid Corp.*,
Case No. 18-CV-06926-YGR, 2019 WL 4260394 (N.D. Cal. Sept. 9, 2019)....13

*Brady v. Bayer Corp.*,
237 Cal. Rptr. 3d 683 (2018)....15

*Broomfield v. Craft Brew All., Inc.*,
Case No. 17-CV-01027-BLF, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017)....8

*Brown v. Hain Celestial Grp., Inc.*,
913 F. Supp. 2d 881 (N.D. Cal. 2012)....15

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011)....4

*Cisco Sys., Inc. v. Beccela's Etc., LLC*,
403 F. Supp. 3d 813 (N.D. Cal. 2019)....5, 8, 12, 18

*City & Cty. of San Francisco v. Purdue Pharma L.P.*,
491 F. Supp. 3d 610 (N.D. Cal. 2020)....11

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
398 F. Supp. 3d 623 (N.D. Cal. 2019)....4, 16, 17, 18

*Cook v. Brewer*,
637 F.3d 1002 (9th Cir. 2011)....3

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018)....4, 16, 18

*Dorsey v. Rockhard Laboratories, LLC*
Case No. CV 13-07557 DDP RZX, 2014 WL 4678969 (C.D. Cal. Sept. 19, 2014)....13

*Ferring Pharmaceuticals v. Braintree Laboratories*,
38 F. Supp. 3d 169 (D. Mass. 2014)....14

*Fink v. Time Warner Cable*,
837 F. Supp. 2d 279 (S.D.N.Y. 2011), aff'd, 714 F.3d 739 (2d Cir. 2013)....12

*Gonzalez v. Ariz.*,
677 F.3d 383 (9th Cir. 2012) ....................9

*Guido v. L'Oreal, USA, Inc.*,
Nos. CV 11-1067 CAS (JCx), CV 11-5465 CAS (JCx), 2013 WL 454861 (C.D. Cal. Feb. 6, 2013) ....................14

*Guido v. L'Oreal, USA, Inc.*,
Nos. CV 11-1067 CAS ....................15

*Ham v. Hain Celestial Grp., Inc.*,
70 F. Supp. 3d 1188 (N.D. Cal. 2014) ....................8

*Instant Checkmate, Inc. v. Background Alert, Inc.*,
Case No. 3:14-CV-01182MMADHB, 2014 WL 12526275 (S.D. Cal. Dec. 5, 2014) ....................5

*Kang v. P.F. Chang's China Bistro, Inc.*,
844 F. App'x 969 (9th Cir. 2021) ....................17

*Lincoln Diagnostics, Inc. v. Panatrex, Inc.*,
Case No. 07-CV-2077, 2009 WL 3010840 (C.D. Ill. Sept. 16, 2009) ....................14

*Loomis v. Slendertone Distribution, Inc.*
420 F. Supp. 3d 1046 (S.D. Cal. 2019) ....................10

*Lorentzen v. Kroger Co.*,
Case No. 2:20-CV-06754-SB-RAO, 2021 WL 1573719 (C.D. Cal. Apr. 2, 2021) ....................15

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ....................3

*Millennium Dental Techs. Inc.*, *v. Terry*,
Case No. SA CV 18-0348-DOC, 2018 WL 5094965 (C.D. Cal. July 16, 2018) ....................7

*Nathenson v. Zonagen Inc.*,
267 F.3d 400 (5th Cir. 2001) ....................12

*In re NJOY, Inc. Consumer Class Action Litig.*,
Case No. CV 14-00428 MMM, 2015 WL 12732461 (C.D. Cal., May 27, 2015) ....................10, 12

*Orchard Supply Hardware LLC v. Home Depot USA*,
967 F. Supp. 2d 1347 (N.D. Cal. 2013) (Tigar, J.) ....................17

*Palmer v. Apple Inc.*,
Case No. 5:15-CV-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ....................12

*PAX Water Techs., Inc. v. Medora Corp.*,
Case No. LACV1809143JAKAGRX, 2019 WL 4390567 (C.D. Cal. Aug. 5, 2019) ....................6

*Pestube System., Inc. v. HomeTeam Pest Defense, LLC*
No. CV 05-2832-PHX-MHM, 2007 WL 973964 (D. Ariz. Mar. 30, 2007)...........................11

*Quidel Corp. v. Siemens Med. Sols. USA, Inc.*,
Case No. 16-CV-3059-BTM-AGS, 2017 WL 4654644 (S.D. Cal. Oct. 16, 2017)..................4

*R & A Synergy LLC v. Spanx, Inc.*,
No. 2:17-cv-09147-SVW-AS, 2019 WL 4390564 (C.D. Cal. May 1, 2019).........................17

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ....................................................................................7, 10

*Stiles v. Wal-Mart Stores, Inc.*,
No. 2:14–CV–2234–GEB–CMK, 2015 WL 5173060 (E.D. Cal. Sept. 2, 2015)...................16

*ThermoLife Int'l, LLC v. BPI Sports LLC*,
No. CV-20-02091-PHX-SPL, 2021 WL 661981 (D. Ariz. Feb. 19, 2021)............................17

*ThermoLife Int'l, LLC v. Compound Sols., Inc.*,
848 F. App'x 706 (9th Cir. 2021) ........................................................................................5

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ..............................................................................4, 16, 18

*William H. Morris Co. v. Grp. W, Inc.*,
66 F.3d 255 (9th Cir. 1995) ..............................................................................................16

*Williams v. Gerber Prod. Co.*,
552 F.3d 934 (9th Cir. 2008) ..............................................................................................4

## STATUTES

15 U.S.C. § 1125(a) ..........................................................................................................3

Cal. Bus. & Prof. Code
§§ 17200–17210.................................................................................................................3
§§ 17500–1509...................................................................................................................3

Lanham Act................................................................................................................ *passim*

## RULES

Fed. R. Civ. P. 9(b) ................................................................................................... *passim*

Fed. R. Civ. P. 10b-5..........................................................................................................12

Fed. R. Civ. P. 12(b)(6)..........................................................................................3, 16, 17

Fed. R. Civ. P. 15(a) ............................................................................................................4

**REGULATIONS**

48 Fed. Reg. 5852-01 (Feb 8, 1983) ....................................................................................2

**ISSUES TO BE DECIDED**

As required by Local Rule 7-4, Scilex Pharmaceuticals Inc. ("Scilex") identifies the following three issues raised by Sanofi-Aventis U.S. LLC and Chattem, Inc. (collectively, "Chattem") in its Motion to Dismiss Second Amended Complaint (the "Motion to Dismiss") that require resolution by the Court:

1. Whether Scilex has adequately alleged a claim for false and misleading representations against Chattem under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B);

2. Whether Scilex has adequately alleged a claim against Chattem under the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500–17509 ("FAL"); and

3. Whether Scilex has adequately alleged a claim against Chattem under the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210 ("UCL").

## I. INTRODUCTION

Throughout its Opening Brief in Support of its Motion to Dismiss ("Chattem Mem."), Chattem repeatedly asks the Court to resolve factual disputes in its favor. Specifically, Chattem contends that the following four advertising claims are not false or misleading, notwithstanding the detailed factual allegations to the contrary in Scilex's Second Amended Complaint (the "Complaint" or "SAC"): (1) Chattem's over the counter ("OTC") lidocaine patches "target" or "desensitize" nerves and "block" or "numb" pain; (2) Chattem's OTC lidocaine patches are "maximum strength"; (3) Chattem's OTC lidocaine patches are "fast-acting"; and (4) Chattem's OTC lidocaine patches can be "use[d] [] for up to 12 hours."[1] Since the Court cannot resolve these kinds of factual disputes on a motion to dismiss, Chattem's motion should be denied.

Chattem also argues that Scilex has not alleged materiality or consumer deception with the requisite particularity under Rule 9(b). These claims fail because Scilex has surpassed Rule 9(b)'s heightened pleading standard for claims grounded in fraud by stating the time, place, nature, and specific content of Chattem's false and misleading advertisements.

For the foregoing reasons, and as explained in more detail below, the Court should deny Chattem's Motion to Dismiss.

## II. STATEMENT OF THE FACTS

In November 2018, Scilex received FDA approval for its lidocaine patch, ZTlido®, to treat patients suffering from post-herpetic neuralgia ("PHN"), a complication of shingles. SAC ¶ 7. PHN is regularly associated with pain, in addition to itching, burning, aching, or throbbing from damaged nerve fibers. *Id.* ¶ 24.

Doctors also frequently prescribe ZTlido® for various off-label uses, including general neuropathic pain, such as back and spinal pain, and there is ample evidence that prescription-strength lidocaine patches, such as ZTlido®, can be an effective first-line therapy in the treatment

---

[1] In its Second Amended Complaint, Scilex responded to this Court's invitation to correct the limited deficiencies identified in its First Amended Complaint ("FAC"). Specifically, Scilex removed the allegations maintaining that Chattem and Hisamitsu America, Inc.'s ("Hisamitsu") (collectively, "Defendants") advertising suggests their OTC products are FDA approved and clarified the manner in which certain of Hisamitsu's advertising statements are false or misleading.

of such pain. *Id.* ¶ 26. A 2012 study found that 82% of prescription lidocaine patches were used off-label. *Id.*

ZTlido® utilizes a proprietary single-layer, nonaqueous polymer technology to deliver a controlled dose of lidocaine through the skin to provide analgesic effects. *Id.* ¶ 27. This proprietary formulation allows ZTlido® to use a thinner patch with improved adhesion to the skin and provide the same efficacy as prescription 5% lidocaine patches with less lidocaine by weight. *Id*. Due to the superior adhesion of ZTlido® over other lidocaine patches, it adheres to the body for a full 12 hours and provides pain relief for 24 hours. *Id.* ¶ 28. ZTlido® patches to continue to work and have the same efficacy during physical exercise. *Id.* Moreover, formulations that deliver less lidocaine through the skin have not been shown to be as effective (or more effective) than ZTlido®. *Id.* ¶ 27.

The FDA regulates the sale and advertising of all drugs, whether available by prescription or OTC. *Id.* ¶ 30. Pursuant to the FDA's current statutory and regulatory framework, an OTC drug can be marketed and sold if: (1) it complies with an applicable monograph; (2) it is the subject of an FDA-approved New Drug Application ("NDA"), or in the case of generic approval, an Abbreviated New Drug Application; or (3) through an FDA-approved switch from a prescription to OTC drug. *Id*.

Chattem manufactures and sells OTC lidocaine patches under the ICYHOT® and ASPERCREME® brands (collectively, the "Chattem OTC Lidocaine Patches"). *Id*. ¶¶ 1, 9, 18-19. Chattem OTC Lidocaine Patches are sold pursuant to the first path above as they contain 4% lidocaine by weight and are not FDA approved. *Id*. ¶¶ 9, 11. Rather, Chattem OTC Lidocaine Patches are subject to the FDA's Tentative Final Monograph ("TFM") for external analgesic products, which is published at 48 Fed. Reg. 5852-01 (Feb 8, 1983). *Id*. ¶ 30. In 2003, after expressing concern about the lack of data concerning the safety and efficacy of external analgesic patches, the FDA proposed an amendment to the TFM clarifying that the FDA did not have sufficient data to support a finding that OTC lidocaine patches were "generally recognized as safe and effective." *Id.* ¶ 32. Until the FDA could conduct further study of OTC lidocaine patches, the FDA proposed classifying external analgesic patches as Category III products, which may be

marketed and sold only following FDA testing, review, and approval through either the NDA or ANDA process. *Id.* ¶ 34.

Despite not complying with federal guidance regarding OTC products nor seeking FDA approval for a prescription product, Chattem has marketed, distributed, and sold Chattem OTC Lidocaine Patches. *Id.* ¶ 9. Independent of the FDA approval issues highlighted above, Chattem has engaged in false and misleading advertising of those products. Specifically, Chattem's labeling and advertising of its OTC Lidocaine Patches falsely, misleadingly, and deceptively represent that those products: (1) contain and deliver the "maximum" amount of lidocaine available in patch form; (2) can be "used" for "up to 12 hours"—i.e., that Chattem OTC Lidocaine Patches adhere to the skin and relieve pain for up to 12 hours; (3) completely block pain receptors and numb away pain; (4) target or desensitize nerves and/or pain receptors; and (5) provide immediate pain relief. *Id.* ¶ 60.

Based on the foregoing conduct, Scilex asserted claims against Chattem for false, misleading, and deceptive advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count I), false advertising in violation of the FAL, Cal. Bus. & Prof. Code §§ 17500–1509 (Count II), and unfair competition in violation of the UCL, Cal. Bus. & Prof. Code §§ 17200–17210 (Count III).[2]

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

In ruling on a Rule 12(b)(6) motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (quotations and citation omitted). Additionally, "[t]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's

[2] Scilex asserted the same claims against Hisamitsu to address its false, misleading, and deceptive advertising, and unfair competition. Hisamitsu has filed its own motion to dismiss, to which Scilex is responding separately.

case." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation omitted). If "the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief," the motion to dismiss must be denied. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).

### B. Federal Rule of Civil Procedure 9(b)

When alleging claims grounded in fraud, a plaintiff is subject to the pleading standard of Rule 9(b). To meet the Rule 9(b) standard, a plaintiff must allege "the who, what, when, where, and how" with respect to the fraudulent conduct. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). This information need only be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citation and quotations omitted).

## IV. ARGUMENT

### A. Chattem's Advertisements Are Actionable Under The Lanham Act, UCL, And FAL.

Scilex has stated actionable claims under the Lanham Act, UCL, and FAL. To state a claim under the Lanham Act, a plaintiff must demonstrate that: "(1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in a commercial advertisement or promotion; (3) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (4) the deception is material, in that it is likely to influence the purchasing decision; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by lessening of goodwill associated with the plaintiff's product." *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 635 (N.D. Cal. 2019) (citation and quotations omitted). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, Case No. 16-CV-3059-BTM-AGS, 2017 WL 4654644, at *3 (S.D. Cal. Oct. 16, 2017) (citation and quotations omitted). Claims

arising under the UCL and FAL "are substantially congruent to claims made under the Lanham Act," and thus share the same analysis. *ThermoLife Int'l, LLC v. Compound Sols., Inc.*, 848 F. App'x 706, 709 (9th Cir. 2021) (citation and quotations omitted).

Chattem argues that Scilex has failed to state a claim under the Lanham Act, UCL, and FAL because its challenged advertisements are "true and not misleading." *See* Chattem Mem. at 5-13. As set forth below, Chattem's argument necessarily fails because Scilex has adequately alleged that the challenged statements are false and misleading, and Chattem's contentions to the contrary necessarily raise fact issues that cannot be resolved on a motion to dismiss in its favor.

**1. Chattem Fails to Accept Scilex's Allegations as True.**

Notwithstanding the standard of review on a 12(b)(6) motion and Scilex's well-pled allegations to the contrary, Chattem argues that its claims are "true and not misleading." Chattem Mem. at 5-13. Specifically, Chattem contends:

- "The Advertising Claims That The Chattem Patches 'Block' Or 'Numb Pain, 'Target[],' Or 'Desensitize[] Nerves'" are "true and not misleading." *Id*. at 6-7.
- "Chattem's claim of 'Maximum Strength Lidocaine' is [ ] true and accurate." *Id*. at 8.
- "The Chattem Patches' 'fast-acting' claim is true and not misleading." *Id*. at 10.
- "It is [ ] inapt and inconsistent" to suggest that Chattem's claim to "'use [the patch] for up to 12 hours' is somehow a misleading claim that implies 12-hour pain relief." *Id*. at 14.

The Complaint includes detailed factual allegations explaining how each of the aforementioned statements is false and misleading. *See* SAC ¶¶ 10-12, 60-67. Chattem cannot, through a motion to dismiss, simply contradict those well-pled allegations. "[A]s the Ninth Circuit has unequivocally held, the question of whether a particular statement is false and misleading is a question of fact that is inappropriate for adjudication on a motion to dismiss." *Instant Checkmate, Inc. v. Background Alert, Inc.*, Case No. 3:14-CV-01182MMADHB, 2014 WL 12526275, at *5 (S.D. Cal. Dec. 5, 2014) (denying motion to dismiss, holding that whether a statement is misleading is a question of fact); *see also Cisco Sys., Inc. v. Beccela's Etc., LLC*, 403 F. Supp. 3d

813, 827 (N.D. Cal. 2019) (denying motion to dismiss, finding that whether an advertisement is false or misleading is a "question of fact not suitable for resolution on a motion to dismiss").

Additionally, the challenged claims contain allegations of false, misleading, and deceptive statements concerning medical, scientific, and technical matters that, by their very nature, are particularly ill-suited for resolution by a motion to dismiss given the need for expert testimony. *See, e.g., PAX Water Techs., Inc. v. Medora Corp.*, Case No. LACV1809143JAKAGRX, 2019 WL 4390567, at *5 (C.D. Cal. Aug. 5, 2019) ("Where the advertising at issue 'involves medical, scientific, or technical matters, expert witnesses will be necessary to unravel truth from falsity'") (citation omitted); *see* SAC ¶¶ 61-67. Such allegations will be supported by documents and fact and expert testimony that the Court and jury must weigh before adjudicating Scilex's claims.

As explained in the following sections, Chattem's attempts to overcome this procedural deficiency are unavailing because Scilex has adequately pled that the statements are false and/or likely to mislead or confuse consumers in violation of the Lanham Act, UCL, and FAL. Scilex addresses the statements in the order in which Chattem raises them.

**a. The Complaint Alleges That Chattem's "Block" Or "Numb" Pain And "Target[]" Or "Desensitize[]" Nerve Claims Are False Or Misleading.**

Chattem relies heavily on the Court's August 5, 2021 Order Granting in Part and Denying In Part Motions to Dismiss; Denying Motion to Strike (subsequently, the "Opinion") regarding the "effect and purpose of Hisamitsu's products" to argue that its claims that "Chattem Patches '[b]lock' [o]r '[n]umb [p]ain, '[t]arget[]' [o]r '[d]esentize [n]erves' [a]ccurately [d]escribe [t]he [e]ffects [o]f [l]idocaine." Chattem Mem. at 6. In doing, so however, Chattem pays mere lip service to the fact that Scilex has amended its Complaint to clarify and allege the manner in which lidocaine operates and how and why Chattem's advertising claims are false and misleading.

Specifically, Chattem cites to the Court's holding that "because Scilex acknowledges that lidocaine 'is used to treat pain by depressing sensory receptors in the nerve endings in the skin, which prevents pain signals from reaching the brain,' it is unclear how statements regarding the effects of lidocaine patches are misleading." Opinion at 17-18 (citing FAC ¶ 2) (emphasis added).

Given this holding, Scilex has amended the Complaint explicitly to make clear why the contended statements are false and misleading, including:

- "The claims with respect to blocking or stopping pain receptors or pain falsely suggest that Defendants' products block pain receptors or pain when, even if they delivered an adequate amount of lidocaine, they merely block sodium channels on the nerve endings which interrupts the conduction of the pain signals." SAC ¶ 60.
- The claims with respect to "[t]arget[ing]" and "[d]esenstiz[ing]" nerves "[m]isleadingly assert[] that the products function by specifically targeting, desensitizing, and relieving aggravated nerves and/or pain receptors; even if the products delivered an adequate amount of lidocaine, such lidocaine blocks sodium channels in the nerve endings and interrupts the conduction of the pain signal." *Id.*
- "The 'targets more pain receptors' claim misleadingly implies that the product functions more effectively than other products, including prescription-strength lidocaine patch products." *Id.*

In sum, by claiming that its "products *target* and *desensitize* aggravated nerves, [Chattem] convey[s] the false or misleading message that [its] products specifically locate and then completely deactivate the aggravated nerves, rather than blocking the sodium channels on the nerve endings." *Id.* at ¶ 66. Additionally, Chattem's advertising claim presents the "false or misleading message that [its] products function by *stopping* or completely *blocking* pain or pain receptors and numbing the pain away, as opposed to merely interrupting the conduction of the pain signal." *Id.* Given these well-pled allegations, Chattem's reliance on the Court's Opinion with respect to these statements is misplaced.

Chattem also argues that there is "no legal requirement that [it] explain the mechanism of action of lidocaine in painstaking biological detail." Chattem Mem. at 7. In support of that statement, Chattem references cases that merely recite the elements of Lanham Act, UCL, and FAL claims—the elements a plaintiff must plead to defeat a motion to dismiss. Chattem Mem. at 7 (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *Millennium Dental Techs. Inc., v. Terry*, Case No. SA CV 18-0348-DOC (KESx), 2018 WL 5094965, at *7

(C.D. Cal. July 16, 2018)). As described above, Scilex has, in fact, more than sufficiently pled that Chattem's claims that its OTC Lidocaine Patches "block," "stop," and "numb," pain, "[t]arget[] [m]ore [p]ain [r]eceptors," and "[d]esensitize" nerves are false or misleading, regardless of whether Chattem has described the lidocaine mechanism in "painstaking detail." *See* SAC ¶¶ 60, 66. This factual dispute cannot be resolved on a motion to dismiss. *Cisco Sys., Inc.*, 403 F. Supp. 3d at 827.

Chattem goes on to argue that a "reasonable person" would not be misled by Chattem's advertisements. Chattem Mem. at 7. However, the Court has acknowledged that "the reasonable consumer standard raises questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations."[3] Opinion at 21 (citation and quotations omitted); *see also Broomfield v. Craft Brew All., Inc.*, Case No. 17-CV-01027-BLF, 2017 WL 3838453, at *5 (N.D. Cal. Sept. 1, 2017) ("Courts granting motions to dismiss under the reasonable consumer test are upheld in 'rare situations.'") (citation omitted). Given Scilex's detailed and reasoned explanations as to why the contended statements are misleading to consumers (*see* SAC ¶¶ 60, 66), this is not one of the "rare" situations where it would be appropriate to resolve this factual question on a motion to dismiss.

Lastly, Chattem misapplies the Court's Opinion to argue that "the numbing and blocking claims must be decided by the FDA alone." Chattem Mem. at 8. Specifically, Chattem points to the Court's statement in the Opinion that the:

> implication of the FAC seems to be that these statements are misleading because the FDA's Tentative Final Monography for External Analgesic Drug Products for Over-the-Counter Human Use ("TFM") 'declined to grant approval for external analgesic products to be permitted to state on product labels that these products 'numb[]' pain or 'completely block[] pain receptors.' [FAC] ¶ 67…However, any

[3] A "rare situation" involves an instance where it is "simply not plausible" that a reasonable consumer would be deceived by a statement. *See, e.g., Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (finding that it was plausible a reasonable consumer would expect that an "all natural" product contains only natural ingredients, whereas it was not plausible that a reasonable consumer would be deceived into believing that cereal named "Crunch Berries" derived significant nutritional value from fruit). The advertising claims challenged by Scilex's Complaint are easily distinguished from those involving a sweetened cereal such as "Crunch Berries."

> determination regarding Defendants' compliance with FDA regulations is for the FDA. Opinion at 18.

This statement is no longer relevant because Scilex has amended its Complaint to remove Paragraph 67 in the FAC and has clarified why these statements are false and misleading independent of any FDA compliance issues raised by those statements. *See* SAC ¶¶ 60, 66. Indeed, as Scilex has alleged in its Complaint and will prove at trial, such claims can and do create false and deceptive impressions amongst consumers regarding the characteristics of Chattem's OTC Lidocaine Patches.

**b. The Complaint Alleges That Chattem's "Maximum Strength" Claims Are False Or Misleading.**

In Paragraph 60 of the Complaint, Scilex identifies six variations of Chattem's claims that its OTC Lidocaine Patches contain and deliver "maximum strength" lidocaine or relief and explains in detail why those claims are false and misleading. Through the allegations in that paragraph and elsewhere in the Complaint, Scilex has adequately alleged the falsity and misleading nature of Chattem's claims, and, therefore, Chattem's argument that the claims are "exactly as advertised" fails for three reasons.

First, the Court has already denied Chattem's "reasonable consumer" argument as it relates to "maximum strength" advertisements. Chattem Mem. at 8-9; Opinion at 22. Specifically, the Court held that "Scilex has carried its burden at this stage of the litigation to allege how Defendants' advertising and marketing has the capacity, likelihood or tendency to deceive or confuse the public." Opinion at 22 (citation and quotations omitted). Under the law of the case doctrine—which encourages the conservation of limited judicial resources and promotes consistency by allowing court decisions to govern the same issues in subsequent stages of the same case—the Court does not need to revisit its prior decision on this issue. *See, e.g., Gonzalez v. Ariz.*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (courts, at their own discretion, "will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case"). In any event, Chattem's argument that "no reasonable consumer would believe" that its "maximum strength" claims mean the "product contains 100% lidocaine" (Chattem Mem. at 8)

ignores Scilex's actual allegation—that a reasonable consumer would be misled to believe Chattem's OTC Lidocaine Patches contain or deliver the maximum amount of lidocaine ***available in patch form***. *See* SAC ¶ 60.

Second, Chattem's "maximum strength" claims are not puffery as Chattem claims in its Motion to Dismiss. Chattem Mem. at 10. Puffery "is exaggerated advertising, blustering, and boasting upon which ***no reasonable buyer would rely***." *Southland Sod Farms,* 108 F.3d at 1145 (9th Cir. 1997) (citation and quotations omitted). As explained above, the Court has already held that Scilex has adequately alleged that Chattem's "maximum strength" statements could deceive a reasonable consumer and, thus, the Court should reject Chattem's argument to the contrary. Opinion at 22.

Additionally, because the "maximum strength" claims "address product attributes of importance to customers and make statements that are measurable by comparative research," they cannot be mere puffery. *In re NJOY, Inc. Consumer Class Action Litig.*, Case No. CV 14-00428 MMM (JEMx), 2015 WL 12732461, at *10 (C.D. Cal., May 27, 2015). In *In re NJOY, Inc*., the court held that an e-cigarette advertisement stating that "Friends Don't Let Friends Smoke" was not puffery. *Id.* at *11. In making this decision, the court explained that (1) the assertion that an e-cigarette was "healthier or safer" concerns "product characteristic[s] of importance to consumers," and (2) whether the e-cigarette was "safer or healthier" than other types of cigarettes was "capable of verification through comparative research." *Id*. The same is true here. The strength of a pharmaceutical product—which directly relates to a consumer's health—is of great importance. And whether the Chattem OTC Lidocaine Patches provide "maximum strength lidocaine" can be verified through studies comparing the strength of different lidocaine patches and the amount of lidocaine delivered to the area of pain by those patches. Accordingly, consumers could reasonably rely upon Chattem's factual statements regarding "maximum strength" to believe they are receiving, and/or the patches are delivering, the maximum amount of lidocaine available in patch form. *See* SAC ¶ 60.

The puffery cases on which Chattem relies are readily distinguishable. *See* Chattem Mem. at 10. In *Loomis v. Slendertone Distribution, Inc.,* the use of the statement "maximum core

strength" in an advertisement for an electrical muscle stimulator was "nonspecific to the effects of the [fitness device] on physical appearance." 420 F. Supp. 3d 1046, 1083 (S.D. Cal. 2019). Unlike the claim "core strength," Chattem's claims for maximum strength lidocaine are specific and objectively verifiable because it is possible to determine which patch products provide the most lidocaine and/or deliver the most lidocaine to the area of pain. *See, e.g., City & Cty. of San Francisco v. Purdue Pharma L.P.,* 491 F. Supp. 3d 610, 694 (N.D. Cal. 2020) (explaining that statements that are "objectively verifiable" are not puffery).

Similarly, in *Pestube System., Inc. v. HomeTeam Pest Defense, LLC,* an advertisement indicating that a pest control system "maximizes the effectiveness of the pest control materials" was puffery because it was a "bald statement" "subject to wide and varying degrees of interpretation." No. CV 05-2832-PHX-MHM, 2007 WL 973964, at *13 (D. Ariz. Mar. 30, 2007). There is a clear difference here between "*maximizes*" effectiveness and "*maximum* strength." Again, Chattem's "maximum strength" claims are not subject to "varying degrees of interpretation" because it is possible that a reasonable consumer might believe based on this statement that Chattem's products provide the *most* lidocaine available in patch form and/or delivers the most lidocaine to the area of pain.

Third, Chattem's arguments regarding its "maximum strength" claims fail because Chattem mischaracterizes Scilex's allegations. Scilex does not contend that "'maximum strength' on the front of an OTC lidocaine patch is a specific representation that the product contains 5% (or more) lidocaine." Chattem Mem. at 8 (emphasis added). Rather, Scilex alleges these claims falsely represent that Chattem's products deliver the "maximum amount of lidocaine available in patch form" and misleadingly imply that Chattem's products are "superior, or at least equivalent, in efficacy and results to prescription patch products." SAC ¶ 60. Scilex does not contend Chattem's packaging specifically states the products contain 5% lidocaine. Contrary to Chattem's assertion, the fact that Chattem's packaging states the products contain 4% lidocaine (Chattem Mem. at 8-9) only supports Scilex's argument. Coupled with the accompanying "maximum strength" claims, the packaging misleadingly implies that 4% lidocaine is the maximum amount of lidocaine available in patch form and/or delivers the maximum amount of lidocaine to the area

of pain. *See* SAC ¶¶ 60, 63, 66. Again, this factual dispute as to whether Chattem's "maximum strength" claims are false or misleading cannot be resolved on a motion to dismiss. *See, e.g., Cisco Sys., Inc.*, 403 F. Supp. 3d at 827.[4]

**c. The Complaint Alleges That Chattem's "Fast-Acting" Claims Are False Or Misleading.**

Scilex has adequately alleged that Chattem's claims that its OTC Lidocaine Patches are "fast-acting" are misleading. For example, the Complaint explains that the "fast-acting" claims "[m]isleadingly impl[y] that Defendants' products provide immediate pain relief," (SAC ¶ 60) and because Chattem's OTC Lidocaine Patches use a thicker patch matrix than ZTlido®, Chattem's products "deliver a lower amount of lidocaine to the area of pain and require a longer amount of time for that delivery." *Id.* ¶ 64. Given the sufficiency of these allegations, the parties' factual dispute regarding whether the claim "fast-acting" is false or misleading cannot be determined on a motion to dismiss. *See, e.g., Cisco Sys., Inc.*, 403 F. Supp. 3d at 827.

Moreover, the "fast-acting" claims are not puffery.[5] As discussed in Section IV(A)(1)(b) above, speed of delivery of medication is a "product attribute[] of importance to customers." *See In re NJOY, Inc. Consumer Class Action Litig.*, 2015 WL 12732461, at *10.

Additionally, Scilex has "asserted facts which would plausibly lead to the conclusion that a reasonable consumer could interpret the ["fast-acting" claims] to contain factual statements upon

---

[4] Chattem references one statement on an Aspercreme webpage, which states that the product is the "maximum strength lidocaine available without a prescription." Chattem Mem. at 9. It is of no import that Chattem includes a more specific statement on a portion of its webpage. Here, the separate statement alleged in the Complaint on the Aspercreme webpage—that the product provides "maximum strength pain relief"—is false and misleading as to the product's "efficacy and results," as compared to stronger prescription patches. *See* SAC ¶ 60. Because the Icyhot webpage Chattem references (Chattem Mem. at 9) is not included in the Complaint, Scilex will not separately address the claim, but notes that the same argument applies to this reference. *See* SAC ¶ 60.

[5] Chattem cites three cases in support of this point, none of which are operative. Chattem Mem. at 11. *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 419 (5th Cir. 2001) involves a securities fraud claim under Rule 10b-5, not a false advertising claim under the Lanham Act, and is nonetheless not binding authority. *Palmer v. Apple Inc.*, Case No. 5:15-CV-05808-RMW, 2016 WL 1535087, at *5 (N.D. Cal. Apr. 15, 2016) and *Fink v. Time Warner Cable*, 837 F. Supp. 2d 279, 283 (S.D.N.Y. 2011), aff'd, 714 F.3d 739 (2d Cir. 2013) discuss puffery in the context of internet speed, which is not factually analogous to the delivery speed of medication.

which he or she could rely." *Bailey v. Rite Aid Corp*., Case No. 18-CV-06926-YGR, 2019 WL 4260394, at *7 (N.D. Cal. Sept. 9, 2019). In *Bailey*, the court denied the defendant's motion to dismiss regarding an advertisement classifying a medication as a "rapid release" product. *Id*. The court explained that the term "rapid release" is not "mere puffery" and is misleading because it "does not actually mean the drug works faster than non-rapid release products," and the defendant should have known that other products "can be equally effective in the same, if not faster, time period." *Id*. at *2, 7. Similarly, as alleged in the Complaint, Chattem OTC Lidocaine Patches "require a longer amount of time" for product delivery than ZTlido®, and Chattem's "fast-acting" claim is therefore misleading. SAC ¶ 64. Further, in *Dorsey v. Rockhard Laboratories, LLC,* the Central District of California rejected similar arguments regarding advertising claims concerning the benefits of the medical product at issue. Case No. CV 13-07557 DDP RZX, 2014 WL 4678969, at *6 (C.D. Cal. Sept. 19, 2014) (finding that advertising statements including "Fast & Effective," which described a performance enhancement pill, were not puffery because they made "specific claims regarding the benefits of taking [the product]. These statements create the impression that by taking the product…the effect will happen quickly").

#### d. The Complaint Alleges That Chattem's "Use 1 Patch For Up to 12 Hours" Claim Is False Or Misleading.

Chattem argues that its claim to "use 1 patch for up to 12 hours" is not actionable because it is a "direction for how to use the product and not a claim or representation as to patch performance." Chattem. Mem. at 11. Regardless of how Chattem chooses to label the statement, Scilex has sufficiently alleged that this claim is misleading and is therefore a violation of the Lanham Act, UCL, and FAL. *See* Chattem Mem. at 11-12; SAC ¶ 60. Specifically, the claim "[m]isleadingly implies that Defendants' products continuously adhere to the body and continuously relieve pain" for up to 12 hours. SAC ¶ 60. Scilex has also alleged that consumers using Chattem OTC Lidocaine Patches have experienced considerable problems with patch adhesion and detachment prior to the 12 hours Chattem claims its patch will adhere. SAC ¶ 65.

At threshold, the Court has already determined that substantially similar arguments made by Hisamitsu about its advertisements were "not persuasive." Opinion at 19. Specifically, the

Court addressed Hisamitsu's argument that the claim "'apply for 8 hours' does not say how long the product adheres to the skin or if the strength of the product remains effective for all eight hours." *Id*. at 19. The Court held that "Scilex has plausibly alleged that the statement 'apply for 8 hours' misleads consumers to believe that the product will adhere to their skin and be effective for eight hours," and that consumers have experienced "considerable problems with patch adhesion and patch detachment" prior to the stated time. *Id*. at 19-20. Given the Court's prior analysis and holding on this issue, it should reject Chattem's similar argument here.

Moreover, Chattem has raised only arbitrary and non-supported arguments as to why this "direction" is not actionable. For instance, Chattem states that "[c]ourts have expressly found that statements relating to how a product is intended to be used should not be construed as representations about product characteristics or superiority." Chattem Mem. at 12. Chattem, however, misrepresents the holding of the case on which it relies.[6] *Id.* In *Ferring Pharmaceuticals*, the court held that the term "flexible dosing" (with respect to an advertisement that stated "FLEXIBLE DOSING using either a split dose or day-before regimen") is not false or misleading because "[a]t most, the term 'flexible' is ambiguous, and no reasonable person reading the advertisement as a whole would fail to understand that, as used in context, 'flexible dosing' refers to 'either a split dose or day-before regimen.'" 38 F. Supp. 3d 169, 179 (D. Mass. 2014). In contrast, Chattem's claim to "use 1 patch for up to 12 hours" misleadingly implies that the product may continuously adhere to the body and be effective for up to 12 hours—a claim that can be proven false and misleading.[7] SAC ¶ 60.

Chattem's analysis of *Guido* similarly misses the mark. *See* Chattem Mem. at 12 (citing *Guido v. L'Oreal, USA, Inc.,* Nos. CV 11-1067 CAS (JCx), CV 11-5465 CAS (JCx), 2013 WL

---

[6] Chattem also cites *Lincoln Diagnostics, Inc. v. Panatrex, Inc*., Case No. 07-CV-2077, 2009 WL 3010840, at *7 (C.D. Ill. Sept. 16, 2009). However, that case is not binding authority and involves a motion to correct a false statement in a proposed findings order after trial, and is therefore inapposite to the procedural posture here.

[7] As explained in the Complaint, this claim is false and misleading because, on information and belief, consumers using Chattem's OTC Lidocaine Patches have experienced considerable problems with patch adhesion and patch detachment prior to the 12 hours for which Chattem claims its patches adhere. SAC ¶ 65.

454861, at *9 (C.D. Cal. Feb. 6, 2013)). Chattem argues that the case supports the assertion that "false advertising claims only arise out of package instructions if the instructions themselves are inaccurate or misleading." Chattem Mem. at 12. The holding in *Guido*, however, did not rest on the fact that the claim at issue was a "form of instruction," (*id.*) nor does it mention that the statement at issue was an instruction. Rather, the court merely held that describing a hair serum as a "leave-in" product "would not lead a reasonable consumer to believe that the product is safe to use around open flames," and there is nothing false or misleading about the statement because the "description affirms nothing about the product's flammability." *Guido*, 2013 WL 454861, at *9.

Chattem also cites several cases discussing the alleged difference between information found on the front versus the back of product packaging. Chattem Mem. 13-14. These cases do not advance Chattem's arguments. All the cited cases, by Chattem's own admission, involve situations where information on one side of the package directly contradicts information on the other. *See Brady v. Bayer Corp.*, 237 Cal. Rptr. 3d 683, 700 (2018) (finding the front advertisement claim of "one-a-day" gummies actionable because directions on the back state consumers must chew two gummies daily); *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 886 (N.D. Cal. 2012) (description of product as "organic" on the front packaging was actionable where the ingredient list on the back showed otherwise); *Lorentzen v. Kroger Co.*, Case No. 2:20-CV-06754-SB-RAO, 2021 WL 1573719, at *5 (C.D. Cal. Apr. 2, 2021) (claim as to the amount of coffee a canister would make was actionable where the instructions on the back would not produce the described amount of coffee on the label). Those holdings were not based on the location of the information; rather, they found the statements at issue to be actionable because they were false or misleading. Scilex does not argue that Chattem's claim to "use 1 patch for up to 12 hours" is false or misleading because it contradicts information elsewhere in the advertisement. Nor is it a requirement for a false advertising claim based on any of the cases Chattem cites. Rather, Scilex claims the statement alone is actionable because it is false and misleading. *See* SAC ¶ 60.

In sum, this Court should reject Chattem's argument that Scilex's well-pled allegation—that the "use 1 patch for up to 12 hours" claim is misleading—is not actionable under the Lanham Act, UCL, or FAL.

### B. The Complaint Adequately Alleges Consumer Deception with Sufficient Particularity.

Scilex has adequately alleged consumer deception under Rules 9(b) and 12(b)(6). *See, e.g.*, *Clorox Co.*, 398 F. Supp. 3d at 635 (under the Lanham Act, plaintiff must show the "statement actually deceived or has the tendency to deceive" consumers). Chattem argues that Scilex "fails to adequately allege that consumers would actually be misled by the challenged" statements. Chattem Mem. at 14. Chattem, however, has misconstrued the appropriate pleading standard for "consumer confusion" under both Rule 9(b) and 12(b)(6). For Rule 9(b), Chattem cites the non-binding, district court decision *Stiles v. Wal-Mart Stores, Inc*. to argue that "[w]hen a claim is literally true, it is not actionable under the Lanham Act unless a plaintiff 'allege[s] specific facts showing that the statement actually conveyed the implied misleading message thereby deceiving a significant number of people.'" Chattem Mem. at 14 (quoting *Stiles v. Wal-Mart Stores, Inc.*, No. 2:14–CV–2234–GEB–CMK, 2015 WL 5173060, at *4 (E.D. Cal. Sept. 2, 2015)). *Stiles*, however, is an "outlier case" that relied on *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 256 (9th Cir. 1995) as its authority. *Clorox*, 398 F. Supp. 3d at n.6. *William H. Morris* addressed the standard of proof at trial and therefore provides no guidance on how a court must review a plaintiff's allegations on a motion to dismiss. *See id.*

Rather, under Rule 9(b), a plaintiff must allege the "the who, what, when, where, and how" with respect to the fraudulent conduct. *Davidson,* 889 F.3d at 964. This information need only be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United States v. United Healthcare Ins. Co*., 848 F.3d at 1180 (quotations omitted). Moreover, to sufficiently allege falsity and actual or likely deception, "the plaintiff need only allege specific misleading statements and explain why they are misleading in accordance with Rule 9(b)" and need not provide evidentiary proof of actual or likely deception.

*Clorox*, 398 F. Supp. 3d at 636. Scilex has easily met this pleading standard. The Complaint alleges specific facts regarding the precise advertising claims at issue (*see* SAC ¶ 60); explains why those claims are false or misleading (*id.*); and alleges lost sales and loss of goodwill for ZTlido® as a result of Chattem's false and misleading advertisements (*id.* ¶¶ 12, 75). These non-conclusory factual allegations are not "generic or vague claims, and [Scilex] has pled enough facts to put [Chattem] on notice regarding the specific advertisements in question, and to describe the who, what, when, where, and how of the alleged fraud." *Orchard Supply Hardware LLC v. Home Depot USA*, 967 F. Supp. 2d 1347, 1366 (N.D. Cal. 2013) (Tigar, J.) (denying motion to dismiss Lanham Act, UCL, and FAL claims on Rule 9(b) grounds).

Chattem similarly mischaracterizes the 12(b)(6) pleading standard for consumer deception. Chattem cites *ThermoLife Int'l, LLC v. BPI Sports LLC* to argue that "consumer testimony or survey evidence, showing some factual basis for plaintiff's allegations [is needed] to survive a motion to dismiss." Chattem Mem. at 15 (citing *ThermoLife Int'l, LLC v. BPI Sports LLC*, No. CV-20-02091-PHX-SPL, 2021 WL 661981, at *5 (D. Ariz. Feb. 19, 2021)). *ThermoLife*, however, does not impose such a high standard. The court explicitly held that plaintiffs need not "submit 'evidence' of the kind that is required at the trial stage," and that it would "accept less than 'survey data'" at the motion to dismiss posture to determine whether the parties were direct competitors. *ThermoLife Int'l, LLC,* 2021 WL 661981, at *5; *see also R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-cv-09147-SVW-AS, 2019 WL 4390564, at *12 (C.D. Cal. May 1, 2019) ("[T]he Court recognizes that consumer deception is typically proved through consumer surveys, which may be appropriately conducted during the discovery phase."); *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. C 08-cv-3931-RS, 2009 WL 55178, at *4 (N.D. Cal. Jan. 7, 2009) (rejecting that a "false advertising claim should be dismissed because it fails to aver evidence of actual or likely deception to purchasers"). Scilex has easily met the 12(b)(6) pleading standard, which requires Scilex to "plausibly allege that reasonable consumers 'are likely to be deceived'" by Chattem's advertisements. *Kang v. P.F. Chang's China Bistro, Inc.*, 844 F. App'x 969, 970 (9th Cir. 2021). Scilex has provided in its Complaint a detailed chart that identifies the claims at issue and describes how consumers are likely to be misled and/or deceived by those claims. Through

such allegations, Scilex has satisfied the pleading requirements of Rule 9(b) and Rule 12(b)(6) as to alleged consumer deception. *See* SAC ¶¶ 60-67.

**C. The Complaint Adequately Alleges Materiality with Sufficient Particularity.**

Scilex has adequately alleged that the consumer deception caused by Chattem's false and misleading advertisements is material, in that the statements are "likely to influence purchasing decisions." *Cisco Sys., Inc.,* 403 F. Supp. 3d at 829 (citation and quotations omitted). A plaintiff can establish materiality "by showing that the defendants misrepresented an inherent quality or characteristic of the product." *Clorox Co.*, 398 F. Supp. 3d at 644 (citation and quotations omitted). For example, in *Clorox*, the plaintiff established materiality by alleging that the advertisements at issue concerned the cleaning product's "efficacy, safety, and durability," which all "implicate inherent qualities and characteristics" of the product. *Id.*

In its Complaint, Scilex alleges that Chattem's false and misleading advertisements implicate the "inherent qualities and characteristics" of the Chattem OTC Lidocaine Patches. For example, Chattem's claims that its products provide "max strength lidocaine," "numb[]," and "block" pain, "target[]" and "desensitize[]" nerves, and are "fast-acting" all speak to the inherent qualities of the patches, namely efficacy and function. *See* SAC ¶ 60. Moreover, Scilex has alleged that those false and misleading advertisements influence consumers' purchasing decisions. SAC ¶¶ 11-12; 61 (Chattem's advertisements have "duped consumers and others into purchasing Defendants' OTC Lidocaine Patches" rather than ZTlido®).

As explained above in Section IV(B), Rule 9(b) requires a plaintiff to allege the "the who, what, when, where, and how" with respect to the fraudulent conduct. *Davidson*, 889 F.3d at 964. But this information need only be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United States v. United Healthcare Ins. Co.*, 848 F.3d at 1180 (quotations omitted). Accordingly, Chattem's argument that Scilex must lay out an entire story as to how consumers could be misled—from seeing the advertisement, to making an appointment with their doctor, to submitting an insurance claim—is in no way required. *See* Chattem Mem. at 16. Rather, Scilex has more than sufficiently pleaded materiality

because it has alleged with particularity that Chattem's advertisements set forth false and misleading information regarding the efficacy, processes, and function of its products—claims which have influenced consumers' purchasing decisions. *See* SAC ¶¶ 11-12; 60-67.

**V. CONCLUSION**

For the foregoing reasons, Chattem's Motion to Dismiss should be denied.

Dated: October 27, 2021

LATHAM & WATKINS LLP

/s/ Steven N. Feldman

Steven N. Feldman (SBN 281405)
steve.feldman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Jamie L. Wine (SBN 181373)
jamie.wine@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

David K. Callahan (*pro hac vice*)
david.callahan@lw.com
Matthew W. Walch (*pro hac vice*)
matthew.walch@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767

*Attorneys for Plaintiff Scilex Pharmaceuticals Inc.*