LATHAM & WATKINS LLP
Steven N. Feldman (SBN 281405)
steve.feldman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Jamie L. Wine (SBN 181373)
jamie.wine@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

David K. Callahan (*pro hac vice*)
david.callahan@lw.com
Matthew W. Walch (*pro hac vice*)
matthew.walch@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767

*Attorneys for Plaintiff Scilex Pharmaceuticals Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

SCILEX PHARMACEUTICALS INC.,

Plaintiff,

v.

SANOFI-AVENTIS U.S. LLC, CHATTEM, INC., and HISAMITSU AMERICA, INC.,

Defendants.

CASE NO. 4:21-cv-01280-JST

**PLAINTIFF SCILEX PHARMACEUTICALS INC.'S OPPOSITION TO DEFENDANT HISAMITSU AMERICA, INC.'S MOTION TO DISMISS PURSUANT TO FED R. CIV. P 12(B)(6)**

The Honorable Jon S. Tigar
Hearing Date: December 9, 2021
Hearing Time: 2:00 PM
Courtroom 6 (2nd Floor)

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. STATEMENT OF THE FACTS ..... 2

III. LEGAL STANDARD ..... 4

A. Federal Rule of Civil Procedure 12(b)(6) ..... 4

IV. ARGUMENT ..... 5

A. Scilex Has Alleged Its Claims Grounded in Fraud with Sufficient Particularity. ..... 5

B. Hisamitsu Improperly Seeks Judicial Notice of Extraneous Factual Material ..... 6

C. Law of the Case Bars Hisamitsu's Attempt to Re-Litigate Portions of the Case ..... 7

1. "MAXIMUM STRENGTH" ..... 8

2. "Apply for 8 Hours" ..... 9

3. Advertisements Involving Dr. Bob Arnot ..... 10

4. Standing ..... 11

5. Claims Involving Consumer Reliance and/or Deception ..... 11

D. Hisamitsu Fails to Accept Scilex's Allegations as True. ..... 13

1. "Maximum Strength" ..... 13

2. "Apply for 8 Hours" ..... 16

3. "Blocks Pain Receptors" ..... 17

4. "Desensitizes Aggravated Nerves" ..... 18

5. Advertising Involving Dr. Bob Arnot ..... 19

6. State Law Claims ..... 19

E. Scilex Adequately Pleads the Remaining Elements of a Lanham Act Claim. ..... 21

V. CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AECOM Energy & Constr., Inc. v. Ripley*,
348 F. Supp. 3d 1038 (C.D. Cal. 2018) ....................22

*Allergan USA Inc. v. Imprimis Pharms., Inc.*,
Case No. SA CV 17-1551-DOC (JDEx), 2017 WL 10526121 (C.D. Cal. Nov. 14, 2017)....................15, 21

*Am. Civil Liberties Union v. F.C.C.*,
523 F.2d 1344 (9th Cir. 1975) ....................7

*Animal Legal Def. Fund v. HVFG LLC*,
939 F. Supp. 2d 992 (N.D. Cal. 2013) ....................18, 19

*Astiana v. Hain Celestial Grp.*,
783 F.3d 753 (9th 2015)....................20

*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*,
No. 08-cv-3931-RS, 2009 WL 55178 (N.D. Cal. Jan. 7, 2009) ....................22

*Bailey v. Rite Aid Corp.*,
Case No. 18-cv-06926-YGR, 2019 WL 4260394 (N.D. Cal. Sept. 9, 2019) ....................15

*Biocell Tech. LLC v. Arthro-7*,
No. 12-cv-00516-JVS, 2012 WL 12892937 (C.D. Cal. Nov. 19, 2012) ....................23

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) ....................5

*Bruton v. Gerber Prods. Co.*,
Case No. 12–CV–02412–LHK, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014)....................20

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ....................5

*Chacanaca v. Quaker Oats Co.*,
752 F. Supp. 2d 1111 (N.D. Cal. 2010)....................20

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
398 F. Supp. 3d 623 (N.D. Cal. 2019)....................10, 22, 23

*Cook v. Brewer*,
637 F.3d 1002 (9th Cir. 2011) ....................4

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ....................5

*Davis v. HSBC Bank Nev., N.A.*,
691 F.3d 1152 (9th Cir. 2012) ....................20, 21

*Dinan v. SanDisk LLC*,
Case No. 18-CV-05420-BLF, 2020 WL 364277 (N.D. Cal. Jan. 22, 2020), *aff'd*,
844 F. App'x 978 (9th Cir. 2021) ....................14

*Factory Direct Wholesale, LLC v. Itouchless Housewares & Prods.*,
411 F. Supp. 3d 905 (N.D. Cal. 2019) ....................22

*Ferring Pharms. Inc. v. Braintree Lab'ys, Inc.*,
38 F. Supp. 3d 169 (D. Mass. 2014) ....................16

*Gerritsen v. Warner Bros. Ent. Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) ....................7

*Gonzalez v. Ariz.*,
677 F.3d 383 (9th Cir. 2012) ....................7, 8

*Gustavson v. Wrigley Sales Co.*,
961 F. Supp. 2d 1100 (N.D. Cal. 2013) ....................7

*Jeffries v. Wood*,
114 F.3d 1484 (9th Cir. 1997) ....................8

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................6

*Lexmark Int'l. Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)....................11

*Lona's Lil Eats, LLC v. DoorDash, Inc.*,
Case No. 20-cv-06703-TSH, 2021 WL 151978 (N.D.Cal. Jan. 18, 2021)....................18

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ....................4, 13

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
290 F.3d 578 (3d Cir. 2002)....................14

*Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*,
310 F. Supp. 3d 1089 (S.D. Cal. 2018)....................22

*Orchard Supply Hardware LLC v. Home Depot USA*,
967 F. Supp. 2d 1347 (N.D. Cal. 2013) (Tigar, J.) ....................6

*POM Wonderful LLC v. Purely Juice, Inc.*,
No. CV-07-023633 CAS, 2008 WL 4222045 (C.D. Cal. July 17, 2008) ....21

*R & A Synergy LLC v. Spanx, Inc.*,
Case No. 2:17-cv-09147-SVW-AS, 2019 WL 4390564 (C.D. Cal. May 1, 2019) ....22

*Rollins v. Dignity Health*,
338 F. Supp. 3d 1025 (N.D. Cal. 2018) ....7

*Schaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th at 1139, 1135 (2020) ....8

*Skydive Ariz., Inc. v. Quattrocchi*,
673 F.3d 1105 (9th Cir. 2012) ....22

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) ....15

*Sponchiado v. Apple Inc.*,
Case No. 18-CV-07533-HSG, 2019 WL 6117482 (N.D. Cal. Nov. 18, 2019) ....9

*Sterling Drug, Inc. v. FTC*,
741 F.2d 1146 (9th Cir. 1984) ....15

*Tucker v. Post Consumer Brands, LLC*,
Case No. 19-CV-03993-YGR, 2020 WL 1929368 (N.D. Cal. Apr. 21, 2020) ....14

*United States v. Houser*,
804 F.2d 565 (9th Cir. 1986) ....7

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ....5

*Upper Deck Co. v. Panini Am., Inc.*,
469 F. Supp. 3d 963 (S.D. Cal. June 29, 2020) ....22

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....23

*Williams v. Gerber Prod. Co.*,
552 F.3d 934 (9th Cir. 2008) ....5, 14

**STATUTES**

15 U.S.C. § 1125(a)(1)(B) ....4

Cal. Bus. & Prof. Code
§§ 17200, *et seq* .......... 20
§§ 17200–17210 .......... 4
§§ 17500–1509 .......... 4
§§ 17500, *et seq* .......... 20

**RULES**

Fed. R. Civ. P.
9(b) .......... *passim*
12(b)(6) .......... 4, 6
201(b) .......... 6

Fed. R. Evid. 201(b) .......... 6

**REGULATIONS**

48 Fed. Reg. 5852-01 (Feb 8, 1983) .......... 3, 4

**ISSUES TO BE DECIDED**

As required by Local Rule 7-4, Scilex Pharmaceuticals Inc. ("Scilex") identifies the following three issues raised by Hisamitsu America, Inc.'s ("Hisamitsu") Motion to Dismiss Pursuant to Fed R. Civ. P. 12(b)(6) (the "Motion to Dismiss"):

1. Whether Scilex has adequately alleged a claim for false and deceptive advertising against Hisamitsu under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B);

2. Whether Scilex has adequately alleged a claim against Hisamitsu under the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500–17509 ("FAL");

3. Whether Scilex has adequately alleged a claim against Hisamitsu under the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210 ("UCL").

## I. INTRODUCTION

With its Second Amended Complaint (the "Complaint" or "SAC"), Scilex responded to the Court's invitation to correct the limited deficiencies identified in its First Amended Complaint. Specifically, Scilex removed allegations that Hisamitsu's advertising suggests its product is FDA approved and clarified the manner in which certain other Hisamitsu statements at issue are false or misleading.

Throughout its Memorandum and Points of Authorities in Support of its Motion to Dismiss and Strike (the "Memorandum" or "Mem."), Hisamitsu asks the Court to revisit a number of claims already resolved by the Court's August 5, 2021 Order Granting in Part and Denying In Part Motions to Dismiss; Denying Motion to Strike (subsequently, the "Opinion" or "Order"). For example, Hisamitsu asks the Court to find that Scilex has not sufficiently alleged that Hisamitsu's claims "MAXIMUM STRENGTH," "apply for eight hours," and its advertising suggesting SALONPAS®' non-prescription strength is comparable to that of prescription lidocaine products are false and deceptive under federal and state law. Hisamitsu also argues that Scilex has failed to meet the heightened pleading standard found in Fed. R. Civ. P. 9(b), even though Scilex has alleged with particularity how Hisamitsu's advertising is false and deceptive. Like its first motion to dismiss, Hisamitsu again argues more generally that reasonable consumers are not likely to be deceived regarding various other challenged advertising claims that Hisamitsu makes. The prudential doctrine of "law of the case" should bar the re-litigation of these – and other – matters considered and ruled upon by the Court in its initial Order.

Further, Hisamitsu again asks the Court to decide new factual disputes relating to Scilex's claims between the parties in Hisamitsu's favor—an approach that is entirely inappropriate at the motion to dismiss stage. For example, Hisamitsu urges the Court to find that Hisamitsu's advertising claim that its SALONPAS® products are "maximum strength" could not be misleading or deceptive even though Scilex has specifically alleged how consumers have been misled or deceived by such a claim—that is, by construing the claim to mean that Hisamitsu's product delivers the "maximum strength" of lidocaine available to the area of pain when it does not do so, and Hisamitsu's product contains the "maximum strength" lidocaine when there are other higher

concentration lidocaine patches available. Similarly, Hisamitsu argues that various other advertising claims it has made regarding its SALONPAS® products could not be misleading as a matter of fact, again insisting that the Court should determine on a motion to dismiss that Hisamitsu's advertising is not false, misleading or deceptive notwithstanding Scilex's allegations to the contrary. Since the Court cannot resolve these kinds of factual disputes on a motion to dismiss, Hisamitsu's motion should be denied.

For the foregoing reasons, and as explained in more detail below, the Court should deny Hisamitsu's Motion to Dismiss.

## II. STATEMENT OF THE FACTS

In November 2018, Scilex received FDA approval for its ZTlido® product to treat patients suffering from post-herpetic neuralgia ("PHN"), a complication of shingles. SAC ¶¶ 7. PHN is a syndrome of persistent neuropathic pain, which often occurs after a patient experiences an outbreak of shingles. *Id.* at ¶ 23. PHN is regularly associated with pain, in addition to itching, burning, aching, or throbbing from damaged nerve fibers. *Id.* at ¶ 24. The FDA-approved product labeling of ZTlido® authorizes up to three patches to be applied for up to 12 hours within a 24-hour period. *Id.* at ¶ 25.

While ZTlido® has received FDA approval only for the treatment of PHN, it is frequently prescribed for off-label uses, including general neuropathic pain, such as back and spinal pain. *Id.* at ¶¶ 7, 25. There is ample evidence that prescription-strength lidocaine patches, such as ZTlido®, can be an effective first-line therapy in the treatment of such pain. *Id.* at ¶ 26. Prescribing clinicians often recommend off-label usage of prescription lidocaine patches for such pain, with a 2012 study finding that 82% of lidocaine patches were intended for off-label usage. *Id.* at ¶ 26.

The ZTlido® patch, which utilizes a proprietary single-layer, nonaqueous polymer technology, delivers a controlled dose of lidocaine through the skin to provide analgesic effects. *Id.* at ¶ 27. This proprietary formulation allows ZTlido® to use a thinner patch with improved adhesion to the skin and provide the same efficacy as prescription 5% lidocaine patches with less lidocaine by weight. *Id.* at ¶ 27. Due to the superior adhesion of ZTlido® over other lidocaine patches, that product adheres to the body for a full 12 hours and provides pain relief for 24 hours.

*Id.* at ¶ 28. ZTlido® patches to continue to work and have the same efficacy, for example, during physical exercise. *Id.* This superior adhesion also reduces the incidence of possible negative consequences of patch detachment, including the risk of dangerous consumption of patches by children or pets and the costs of replacement patches. *Id.* at ¶ 28. Moreover, formulations that deliver less lidocaine through the skin have not been shown to be as effective (or more effective) than Scilex's products. *Id.* at ¶ 27.

The FDA regulates the sale and advertising of all drugs, whether available by prescription or OTC. *Id.* at 30. Pursuant to the FDA's current statutory and regulatory framework, an OTC drug can be marketed and sold if: (1) it complies with an applicable monograph; (2) it is the subject of an FDA-approved New Drug Application ("NDA"), or in the case of generic approval, an Abbreviated New Drug Application; or (3) through an FDA-approved switch from a prescription to OTC drug. *Id.* at ¶ 30. SALONPAS®, Hisamitsu's OTC lidocaine patch, is sold pursuant to the first path, as it contains between .5% to 4% lidocaine by weight: it is subject to the FDA's Tentative Final Monograph ("TFM") for external analgesic products, which is published at 48 Fed. Reg. 5852-01 (Feb 8, 1983). *Id.* at ¶ 30. In 2003, the FDA, after expressing concern about the lack of data concerning the safety and efficacy of external analgesic patches, proposed an amendment to the TFM clarifying that the FDA did not have sufficient data to support a finding that OTC lidocaine patches were "generally recognized as safe and effective." *Id.* at ¶ 32. Until the FDA could conduct further study of OTC lidocaine patches, the FDA proposed classifying external analgesic patches as Category III products, which may only be marketed and sold only following FDA testing, review and approval through either the NDA or ANDA process. *Id.* at ¶ 34.

Despite not complying with federal guidance regarding OTC products nor seeking FDA approval for a prescription product, Hisamitsu has marketed, distributed and sold SALONPAS®, which contains 4% lidocaine by weight. *Id.* at ¶ 9. Independent of the FDA approval issue highlighted above, Hisamitsu has engaged in a false, misleading, and deceptive marketing campaign to promote SALONPAS® through advertisements on television, social media and the use of celebrity promoters. *Id.* In such marketing, Hisamitsu makes the following false or

misleading claims regarding SALONPAS®: (1) it is "Maximum Strength"—*i.e.*, it contains ***and*** delivers the maximum amount of lidocaine in patch form; (2) a customer can "apply [the product] for 8 hours"—*i.e.*, it adheres to the body ***and*** "provides pain relief for up to 8 hours"; (3) it "blocks pain receptors for effective, non-addictive relief"; (4) it "desensitizes aggravated nerves"; and (5) SALONPAS® is superior to other prescription lidocaine patches (which necessarily includes Scilex's ZTlido® product). *Id.* at ¶ 60. Hisamitsu's misleading and false marketing campaign also relies on celebrity spokesperson Dr. Bob Arnot, who claims, *inter alia*, in certain of his advertising testimonials that: (1) SALONPAS® has "4% of lidocaine which I'd argue is close to the 5% lidocaine you would get with a prescription"; and (2) SALONPAS® "followed the same principles used for the Rx (5% Lidocaine) version, making it the same size and using the same hydrogel technology as its Rx cousin. The only change they made was to improve the price so as to make the product more accessible to the general public." *Id.*

Based on the foregoing conduct, Scilex asserts claims against Hisamitsu for false, misleading, and deceptive advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count I), false advertising in violation of the FAL, Cal. Bus. & Prof. Code §§ 17500–1509 (Count II), and unfair competition in violation of the UCL, Cal. Bus. & Prof. Code §§ 17200–17210 (Count III).[1]

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

In ruling on a Rule 12(b)(6) motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). "A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (internal quotations and citation omitted). Additionally, "[t]he motion [to dismiss] is not a procedure for resolving a contest between the parties about the facts or the substantive merits of

---

[1] Scilex asserts the same claims against Defendants Sanofi-Aventis US LLC and Chattem, Inc. (collectively, "Chattem") to address their false, misleading, and deceptive advertising, and unfair competition. Chattem has filed its own motion to dismiss, to which Scilex is responding separately.

the plaintiff's case." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "If the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief," the motion to dismiss must be denied. *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011).

## IV. ARGUMENT

### A. Scilex Has Alleged Its Claims Grounded in Fraud with Sufficient Particularity.

Hisamitsu argues that all of Scilex's claims are "grounded in fraud" and are therefore subject to the heightened pleading standard of Rule 9(b). *See* Mem. at 5.[2] While Scilex does not dispute that at least certain of its claims are subject to the standards of Rule 9(b) regarding claims "grounded in fraud," it nonetheless surpasses that heightened pleading standard because it states its claims with particularity and identifies the time, place, nature, and specific content of Hisamitsu's false and misleading advertisements. As the Ninth Circuit recognizes, to meet the burden of Rule 9(b), a plaintiff must allege "the who, what, when, where, and how" with respect to the fraudulent conduct. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018). This information need only be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Scilex's Complaint alleges specific facts regarding the precise Hisamitsu advertising claims at issue (*see* SAC ¶¶ 52-56, 60), explains why those advertising claims are false or misleading (*see id.* at ¶¶ 60-67), states how Hisamitsu specifically targeted consumers for medical issues that the ZTlido® patch is commonly used to treat (*see* SAC ¶ 55), and alleges lost sales and loss of goodwill for its ZTlido® mark as a result of Hisamitsu's false and misleading

[2] Hisamitsu raised this argument in its prior Motion to Dismiss, *see* Dkt 57 at 7 ("Plaintiff's claims under the Lanham Act, UCL, and FAL are grounded in *fraud* and thus subject to the heightened pleading standard of Fed. R. Civ. P. 9(b)") (emphasis in original). Given the Court's prior ruling on many of the same claims at issue, law of the case bars any further litigation of the Rule 9(b) issue.

advertisements (*see* SAC ¶ 75). These non-conclusory factual allegations are plausible and form the basis of each of Scilex's three claims against Hisamitsu. *See* SAC ¶¶ 68-92. In sum, Scilex's allegations are not "generic or vague claims, and [Scilex] has pled enough facts to put [Hisamitsu] on notice regarding the specific advertisements in question, and to describe the who, what, when, where, and how of the alleged fraud." *Orchard Supply Hardware LLC v. Home Depot USA*, 967 F. Supp. 2d 1347, 1366 (N.D. Cal. 2013) (Tigar, J.) (denying motion to dismiss Lanham Act, UCL, and FAL claims on Rule 9(b) grounds).

**B. Hisamitsu Improperly Seeks Judicial Notice of Extraneous Factual Material**

Through an attorney affidavit and 28 appended exhibits, Hisamitsu seeks to introduce improper material on a motion to dismiss, attaching irrelevant and unreliable information. *See generally* Mem. Such additional material cannot be considered on a Rule 12(b)(6) motion and should be disregarded by the Court when resolving Hisamitsu's Motion to Dismiss. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure"). Judicial notice of material beyond the pleadings may be permissible only for facts that "are not subject to reasonable dispute because [they are]…(1) generally known with the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts are instructed to exercise caution in employing judicial notice, as the "use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja*, 899 F.3d at 998.

While Scilex—for the purposes of this Motion—will not contest the extension of judicial notice to government websites, SALONPAS®' packaging and advertising, and the TFM, Hisamitsu may not seek judicial notice of third party websites under Federal Rule of Civil Procedure 201(b), as those materials lack the indicia of reliability required under the Federal Rules of Evidence. Documents are not susceptible to judicial notice "simply because it appears on a publicly available website, regardless of who maintains the website or the purpose of the

document." *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2018); *see also Gerritsen v. Warner Bros. Ent. Inc.,* 112 F. Supp. 3d 1011, 1028-29 (C.D. Cal. 2015) ("As a general matter, courts are hesitant to take notice of information found on third party websites and routinely deny requests for judicial notice…."). Accordingly, the following exhibits to the Declaration of Armin Ghiam should not be considered by the Court: Exhibits B (Wikipedia Article), C (Woundsource.com article), F (Study "A Randomized, Open-Label, Bioequivalence Study of Lidocaine Topical System 1.8% and Lidocaine Patch 5% in Healthy Subjects"), H (springer.com article), I (article entitled "Phospholipid microemulsion-based hydrogel for enhanced topical delivery of lidocaine and prilocaine: QbD-based development and evaluation"), J (Taylor&Francis Online article), L (Neuroscience Online article), M (Wikipedia article), O (Weebly.com article), P (medicinenet.com article), R (Merriam Webster online definition), S (Johns Hopkins Medicine article), T (cervicalspinesurgeon.com article), U (pilates4physico.ca article); V (University Hospitals Article), W (Dolman Law article), X (Sciaticapatients.com), Y (webmd article), Z (Wikipedia), and AA (medical-dictionary.thefreedictionary.com entry).[3]

### C. Law of the Case Bars Hisamitsu's Attempt to Re-Litigate Portions of the Case

Under the law of the case doctrine, courts—at their discretion—"will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case." *Gonzalez v. Ariz.*, 677 F.3d 383, 389 n.4 (9th Cir. 2012); *see also United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986). The doctrine encourages the conservation of limited judicial resources and promotes consistency by allowing court decisions to govern the same issues in subsequent stages of the same case. *See Am. Civil Liberties Union v. F.C.C.,* 523 F.2d 1344, 1346 (9th Cir. 1975). Under the law of the case standard, prior decisions should be followed, unless: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice; (2) intervening controlling authority makes reconsideration appropriate; or (3) substantially different

[3] Plaintiff does not challenge the Court's assessment of Exhibits BB and CC, as they are arguably incorporated by reference in Plaintiff's Complaint. Scilex further does not object to judicial notice of the government websites appended to the Ghiam declaration. *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) ("The Court may take judicial notice of materials available on government agency websites").

evidence was adduced at a subsequent trial." *Gonzalez*, 677 F.3d 383 at 389 n.4 (quoting *Jeffries v. Wood*, 114 F.3d 1484, 1488-89 (9th Cir. 1997). None of these exceptions applies to the Court's earlier Order, and the law of the case doctrine thus applies.

As evident in the Court's previous Order, Hisamitsu has already advanced many of the same arguments found in its current Motion to Dismiss. The Court noted that "Hisamitsu argues that Scilex fails to allege how or why Hisamitsu's statements – including "'Maximum Strength,' 'Apply for 8 Hours,' 'Numbing Relief,' 'Blocks Pain Receptors,' 'Desensitizes Aggravated Nerves,' 'for temporary relief of pain . . . back, neck, shoulders' and certain statements in a television commercial and blog posts by Dr. Bob Arnot, M.D." – are false or misleading, "that the consumers tend to be deceived by these statements[,] or that they are material to the consumers." Opinion at 17. Hisamitsu also previously argued that Scilex has failed to state a claim under the UCL or FAL because it has not "plausibly show[n] that a 'reasonable consumer' is 'likely to be deceived' by [any] allegedly false and misleading statement." *Id.* at 21. The Court previously concluded: "in sum, the Court denies Hisamitsu's motion to dismiss as it relates to the statements 'Maximum Strength' and 'Apply for 8 Hours,' and any statement comparing Hisamitsu's product to prescription lidocaine patches." *Id.* at 21. The Court similarly held that Scilex's state law claims should not be dismissed, finding that "Scilex has carried its burden at this stage of the litigation to allege how Defendants' advertising and marketing has 'the capacity, likelihood, or tendency to deceive or confuse the public.'" *Id.* at 22 (quoting *Schaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th at 1139, 1135 (2020)). The Court should not revisit its prior analysis on these issues.

**1. "MAXIMUM STRENGTH"**

The Court noted that "Scilex alleges that the statement 'MAXIMUM STRENGTH' on Hisamitsu's patch's packaging "[f]alsely states that [the] product[] contain[s] and deliver[s] to the area of pain the maximum amount of lidocaine available in patch form' and '[m]isleadingly implies that [the] product[] [is] superior, or at least equivalent, in efficacy and results to prescription-strength lidocaine patch products.'" Opinion at 18. As it argued in its prior Motion to Dismiss, Hisamitsu contends that this statement must be read in the context of the entire package, which includes a disclaimer that the tagline 'Maximum Strength' refers to products

available without a prescription. The Court denied Hisamitsu's prior Motion to Dismiss Scilex's claim regarding the "Maximum Strength" claim on this ground. *Id.* at 19 ("The Court holds that 'the presence of a disclaimer on the [Hisamitsu] product[] does not require dismissal of the fraudulent advertising claims at this stage of the proceedings,' and denies Hisamitsu's motion to dismiss Scilex's cause of action insofar as it is based on this statement.").

Hisamitsu revisits its prior argument – and the Court's ruling – in its instant Motion to Dismiss. Hisamitsu again argues that "a disclaimer is provided which explains that the 'maximum strength' tagline refers to patches 'available without an RX', or 'Available OTC'".[4] Mem. at 3. Relying on the disclaimer and the Monograph, Hisamitsu argues that the "Maximum Strength tagline is therefore accurate," and Scilex's Complaint must be dismissed on this ground. *Id.* at 7. The Court considered—and dismissed—this rationale in its prior Order, finding that the disclaimer, which is in small font and on a separate panel from the "Maximum Strength" tagline, did not "require dismissal of the fraudulent advertising claims at this stage of the proceedings." Opinion at 19. The Court should similarly reject Hisamitsu's renewed argument here.

**2. "Apply for 8 Hours"**

As the Court recognized in its initial Order, Scilex alleges that the statement "apply for 8 hours" is misleading, as it suggests that SALONPAS® continuously adheres to the body and continuously relieves pain for the specified period of time. *Id.* at 19. Hisamitsu previously challenged Scilex's allegations, arguing that this statement "does not say how long the product adheres to the skin or if the strength of the product remains effective for all eight hours." *Id.* at 19. Hisamitsu also argued that Scilex failed to allege the materiality of this statement to the consumer, because Scilex purportedly did not identify the problems experienced by consumers. The Court concluded that Hisamitsu's arguments were "not persuasive," finding that Scilex plausibly alleged that consumers may interpret the "apply for 8 hours" statement to mean that "the product will adhere to their skin and be effective for eight hours." Opinion at 19. The Court also explained

[4] Hisamitsu's reliance on *Sponchiado v. Apple Inc.*, Case No. 18-CV-07533-HSG, 2019 WL 6117482, at *4 (N.D. Cal. Nov. 18, 2019) is misplaced. Mem. at 7. In that case, the court found that one disclaimer was adequately conspicuous to the consumer. Unlike in *Sponchiado*, the Court here noted that the disclaimer was in small text and on a separate panel from the primary statement. Opinion at 19.

that, "[w]hile [Scilex] has not yet produced actual evidence of these consumer beliefs, at the motion to dismiss stage, the Court can accept allegations of such facts as sufficient." *Id.* at 20 (quoting *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D. Cal. 2019)).

Notwithstanding the Court's clear ruling, Hisamitsu encourages the Court to reconsider its prior Order. Hisamitsu states that its packaging does not "make any representation about consistency of lidocaine delivery when the patch is applied to the skin over the entire period of time that [it] is applied to the body." Mem. at 4. Hisamitsu concludes that any claims related to the "apply for 8 hours" statement must be dismissed because "[n]owhere on the package is there any representation or statement concerning how long the product adheres to the skin or whether the 'Maximum Strength' of the product remains equally effective for all 8 hours." *Id.* at 12. The Court considered Scilex's allegations of falsity and materiality regarding the "apply for 8 hours claim" in the original Motion to Dismiss, and denied Hisamitsu's attempt to remove these claims for this litigation. Scilex has kept those allegations in its Complaint. SAC ¶¶ 52, 60. Thus, the Court's prior ruling continues to be law of the case and should govern the Court's ruling on Hismitsu's latest Motion to Dismiss.

### 3. Advertisements Involving Dr. Bob Arnot

Following the Court's Order, Scilex removed any claims regarding Hisamitsu's advertising featuring Dr. Bob Arnot and his implication that Hisamitsu's product is FDA-approved or prescription only. Opinion at 20. The Court, however, noted that two other statements made by Dr. Arnot could be the subject of discovery: (1) that SALONPAS® represents that it "has 4% of lidocaine which [Dr. Bob would] argue is close to the 5% lidocaine patch you would get with a prescription"; and (2) that SALONPAS® "followed the same principles used for the Rx (5% Lidocaine) version, making it the same size and using the same hydrogel technology as its Rx cousin. The only change they made was to improve the price so as to make the product more accessible to the general public." *See Id.* at 20-21. The Court, in rejecting Hisamitsu's Motion to Dismiss Scilex's claim related to these statements, stated that consumers may still be misled even if advertising directs them to consult with a physician; a contrary rule "would allow any manner of misleading advertisement." *Id.* at 21. The Court also stated that Hisamitsu's statements

regarding its product being "close" to the prescription lidocaine patches, "using the same hydrogel technology," and are "only" different from the prescription patch because they are lower cost items – could mislead a "consumers to believe that Hisamitsu's patch is interchangeable with or as effective as a prescription lidocaine patch." *Id.* at 21. The Court accordingly denied Hisamitsu's motion to dismiss regarding these particular statements.

Undeterred by the Court's Order, Hisamitsu claims in its second Motion to Dismiss that the potentially misleading statements advanced in the Dr. Arnot advertisement "do not actually appear in [the relevant] blog post, and there is no support for making these 'inferences' based on Hisamitsu's marketing content." Mem. at 20. Hisamitsu also argues that Scilex's Complaint fails to allege "how or why" a consumer would be deceived. *Id.* at 21. The Court has previously assessed these arguments, and denied them. The law of the case thus requires the Court to reach the same result here.

**4. Standing**

Hisamitsu also revisits its standing claims from its initial motion to dismiss, arguing that Scilex has failed to allege injury as a result of the false statement. Mem at 11 (citing *Lexmark Int'l. Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133-34 (2014). As the Court previously found, Scilex has standing to assert its claims because it "has adequately pleaded injury-in-fact through a 'chain of inferences.'" Opinion at 5. Hisamitsu also argues SALONPAS® is engaged in a "different channel of trade" than Scilex's product and accordingly consumers will not be deceived by Hisamitsu's advertising. Mem. at 8. The Court also explicitly rejected this argument. In its prior decision, the Court wrote, "the extra steps necessary to acquire a prescription patch – including getting the prescription from a doctor – does not change the fact that Scilex and Defendants are competing for the same consumers. " Opinion at 6. The Court's prior Opinion regarding standing should govern here under the law of the case doctrine.

**5. Claims Involving Consumer Reliance and/or Deception**

Finally, Hisamitsu advances arguments regarding consumer reliance and/or deception through its Memorandum that have previously been considered and rejected by the Court. *See* Mem. at 6 ("Plaintiff also fails to provide any non-conclusory allegations to plead that the

consumers tend to be deceived by these statements or that they are material to the consumers"); *id.* at 8 ("Plaintiff has, therefore, failed to allege how or why a statement about an over-the-counter product has a tendency to deceive a substantial segment of the consumers for prescription patches."); *id.* at 12 ("Plaintiff does not offer any explanation as to how or why these assertions may be implied or have a tendency to deceive a substantial segment of its consumers"); *id.* at 21 ("Given the clarity of Hisamitsu's advertising material, and Plaintiff's once again speculation that a consumer may misinterpret these 4 year old blogposts as alleged by Plaintiff, the Second Amended Complaint fails to explain how or why a consumer would be deceived"); *id.* at 21 ("Count II which alleges violations of the California False Advertising Law (Second Am. Compl. ¶¶ 79-85), contains no facts or statements that any consumer deception occurred with Plaintiff's products.").

The Court previously considered these arguments, and rejected them:

- Regarding "**Apply for 8 Hours**": "While [Scilex] has not yet produced actual evidence of these consumer beliefs, at the motion to dismiss stage, the Court can accept allegations of such facts as sufficient." Opinion at 20.
- Regarding the **California law claims**: "California courts have also recognized that an ad or practice may be 'fraudulent' even without any 'individualized proof of deception, reliance and injury.'" *Id.* at 22.
- "[C]ourts recognize the reasonable consumer standard 'raises questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations.'" *Id.* at 21.
- "These allegations ['Maximum Strength,' 'Apply for 8 hours'] do not require any 'inferential leaps,' and Scilex has carried its burden at this stage of the litigation to allege how Defendants' advertising and marketing has 'the capacity, likelihood or tendency to deceive or confuse the public.'" *Id.* at 22.
- "Scilex has carried its burden at this stage of the litigation to allege how Defendants' advertising and marketing has 'the capacity, likelihood or tendency to deceive or confuse the public.'" *Id.*

Hisamitsu's claims regarding materiality and consumer deception were dismissed by the Court in its prior Opinion, and so too should the Court dispose of the claims here.

**D. Hisamitsu Fails to Accept Scilex's Allegations as True.**

Notwithstanding the procedural standard of review on a Rule 12(b) motion, Hisamitsu repeatedly disputes the well-pled allegations in Scilex's Complaint in its Memorandum. *See Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008) (the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party"). Hisamitsu principally challenges Scilex's allegation that five statements made in Hisamitsu's advertising of SALONPAS® are false or misleading: (1) "Maximum Strength…Available Without a Prescription;" (2) "Apply for 8 Hours"; (3) "Blocks Pain Receptors;" (4) "Desensitizes Aggravated Nerves;" and (5) certain Blog posts by Dr. Bob Arnot. *See* Mem. at 6. Hisamitsu similarly claims that, because Scilex's Lanham Act claims fail to "establish" the false and misleading nature of these advertising claims, its UCL and FAL must also be dismissed. *Id.* at 21. Such allegations raise issues of fact that will be supported by documents and testimony that the Court and/or a jury must weigh before resolving the question as to whether the advertising claims are false, misleading and/or deceptive. As noted above, the Court cannot resolve such questions on a motion to dismiss.

Scilex addresses the arguments advanced by Hisamitsu regarding the identified, advertising statements in the order in which Hisamitsu addresses the statements.

**1. "Maximum Strength"**

In Paragraph 60 of the Complaint, Scilex identifies Hisamitsu's advertising of SALONPAS® as "MAXIMUM STRENGTH" as false or misleading. Scilex alleges that this advertising is false because it "states that Defendants' products contain and deliver to the area of pain the maximum amount of lidocaine available in patch form." SAC ¶ 60. Scilex also alleges that this advertising is misleading, explaining that the advertising "implies that Defendants' products are superior, or at least equivalent, in efficacy and results to prescription-strength lidocaine patch products." *Id.*

Hisamitsu proceeds to question the factual underpinning of Scilex's allegations, arguing that Scilex's claims "lack factual support." Mem. at 7. Specifically, Hisamitsu contends that – because the maximum amount of lidocaine that can be included in OTC products is 4% consistent

with the Monograph, that its advertising is "therefore accurate." *Id*. Such contentions disregard Scilex's allegations and require the Court to make the following findings of fact in Hisamitsu's favor even though such assertions are contradicted by the allegations in the Second Amended Complaint:

- SALONPAS' product disclaimer, reading "[a]vailable without a prescription" "dispels any notion of deception or confusion." Mem. at 7.[5]
- SALONPAS is engaged in a "different channel of trade" than Scilex's product and accordingly consumers will not be deceived by Hisamitsu's advertising. Mem. at 8.[6]
- The "Maximum Strength" tagline is "indeed accurate," because Scilex's patches contain less lidocaine than Hisamitsu's patches. Mem. at 11.[7]

Hisamitsu also challenges the adequacy of Scilex's pleading. Hisamitsu argues that Scilex's allegation that SALONPAS "use[s] a thicker patch matrix than ZTLido, which results in less effective delivery of the lidocaine to the area of pain" is unsupported and requires further factual support. Mem. at 8. Hisamitsu also argues that the conclusions reached in a 2020 study referenced by Scilex in its Complaint do not provide factual support for Plaintiff's allegations about ZTLido's superior delivery. *Id*. at 8-9. Hisamitsu, moreover, argues—after providing a chart detailing the Lidocaine Load and Lidocaine Strength of ZTlido, Hisamitsu's Patches, and Prescription patches—that "merely comparing the lidocaine load and strength of the products is

---

[5] As previously noted, a disclaimer—even if lengthy—on the side of a box that is unlikely to be noticed by consumers cannot remedy advertising "that necessarily conveys a false message to the consumer." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 598 (3d Cir. 2002); *see also Tucker v. Post Consumer Brands, LLC*, Case No. 19-CV-03993-YGR, 2020 WL 1929368, at *5 (N.D. Cal. Apr. 21, 2020) (a reasonable consumer "is not expected to pick up the product and examine the fine print on the ingredient list") (citing *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939-40 (9th Cir. 2008)) ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception."). Hisamitsu's invocation of *Dinan v. SanDisk LLC*, Case No. 18-CV-05420-BLF, 2020 WL 364277, at *8 (N.D. Cal. Jan. 22, 2020), *aff'd*, 844 F. App'x 978 (9th Cir. 2021), Mem. at 7, is readily distinguishable; there, the statement modified by the disclaimer was not on its face misleading.

**6** As noted, *supra* at Section IV(C)(4), the Court previously ruled that Scilex and Hisamitsu are competitors. Opinion at 6 ("The Court rejects Defendants' arguments that their OTC patches do not compete with Scilex's prescription lidocaine patch.").

insufficient to establish that Hisamitsu's patches do not deliver the 'Maximum Strength.'" *Id.* at 10. Hisamitsu, finally, challenges Scilex's description of Hisamitsu's drug delivery system, maintaining that Scilex's allegations regarding Hisamitsu's use of a "hydrogel" matrix are not sufficient. Per Hisamitsu's telling, and with reference to extraneous material appended to an attorney declaration, "there are a wide variety of hydrogel delivery technologies, each of which offers different delivery, flux and permeability rates, thereby delivering a different amount of lidocaine." *Id.* at 10-11. These arguments all demonstrate the need for substantial discovery relating to, among other matters: (1) the role of patch matrixes in lidocaine delivery; (2) how to properly assess lidocaine strength; (3) what scientific data is available to inform this discussion; and (4) the precise matrix technology utilized by Hisamitsu, and how that technology does (or does not) support Scilex's claims. In any event, these highly fact-specific issues cannot be resolved on a motion to dismiss.

Hisamitsu also offers a single sentence in this section of its Memorandum that the "Maximum Strength" tagline is puffery. Mem. at 8. Hisamitsu does not describe why this tagline should be considered puffery—i.e., "exaggerated advertising, blustering and boasting upon which no reasonable buyer would rely." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997). In any event, the claim does not qualify as puffery because it may be assessed as true or false. *See Allergan USA Inc. v. Imprimis Pharms., Inc.*, Case No. SA CV 17-1551-DOC (JDEx), 2017 WL 10526121, at *10 (C.D. Cal. Nov. 14, 2017) (statement that eye drops protected against "infection and inflammation even more effectively" than other products was quantifiable and not puffery); *see also Sterling Drug, Inc. v. FTC*, 741 F.2d 1146, 1151-53 (9th Cir. 1984) (statements that a brand is "consistently better" for "purity, stability, speed of disintegration" were "therapeutic claims" that could be measured and were not puffery); *Bailey v. Rite Aid Corp.*, Case No. 18-cv-06926-YGR, 2019 WL 4260394, at *7 (N.D. Cal. Sept. 9, 2019) (advertising statement that products provided "faster relief than other, cheaper acetaminophen products" was not puffery).

**2. "Apply for 8 Hours"**

Hisamitsu explains that SALONPAS®' labeling "*clearly* indicate[s] that the product may not be applied to skin for more than 8 hours – and nothing more." Mem. at 12 (emphasis added). Hisamitsu also claims that "[n]owhere on the package is there any representation or statement concerning how long the product adheres to the skin or whether the 'Maximum Strength' of the product remains equally effective for all 8 hours," and avers that any allegations regarding SALONPAS® are conclusory. Mem. at 12-13. Hisamitsu concludes by arguing that Scilex has not put forward evidence of any "investigation (whether or not conducted by Plaintiff), consumer complaints, studies, or papers that address Hisamitsu's SALONPAS patches." *Id*. at 13.

Scilex's Complaint more than adequately alleges the facts to support its challenge to Hisamitsu's advertising claim. In that Complaint, Scilex alleges that the packaging claim that consumers may "apply [the product] for 8 hours" is false and deceptive. SAC ¶ 52. Scilex alleges that, contrary to SALONPAS® advertising, consumers using SALONPAS® have experienced problems with patch adhesion and patch detachment prior to the 8 hours Hisamitsu claims its patch will adhere. SAC ¶ 61. Accordingly, if SALONPAS® no longer adheres – or only partially adheres – "there may be uncertainty about the resulting drug delivery profile, and hence, uncertainty about the rate and extent of drug absorption." *Id* at ¶ 65. In Paragraph 61 of the Complaint, Scilex explains the false or misleading message conveyed by Hisamitsu's "apply for 8 hours" statement. Scilex alleges that Hisamitsu's advertising misleadingly implies that Defendants' products continuously adhere to the body and continuously relieve pain for the specified amount of time. *Id*. Hisamitsu's argument that Scilex has not yet provided evidence of Hisamitsu's patch adherence issues ignores the pleading requirements for a Complaint. The evidence Hisamitsu demands at this stage of the proceeding is—and will be—developed through discovery.

Hisamitsu, finally, cites *Ferring Pharms. Inc. v. Braintree Lab'ys, Inc.,* 38 F. Supp. 3d 169, 179 (D. Mass. 2014) to support its claim that the challenged statements "are directions of use for the product, and therefore they do not make any representation about the characteristics of the product." Mem. at 12. *Ferring* does not support Hisamitsu's argument. This case involved a disputed claim regarding whether a statement constituted a direct comparison between product; it

provides no support for the contention that alleged product directions cannot be actionable as false or misleading advertising. *Id.*

**3. "Blocks Pain Receptors"**

Hisamitsu disputes the factual allegations contained in Scilex's Second Amended Complaint that Hisamitsu's claim that SALONPAS® "blocks pain receptors for effective, non-addictive relief" is misleading. Mem. at 13. In its Complaint, Scilex alleges that this statement is misleading for at least four reasons. First, the claim suggests that SALONPAS® has higher efficacy in treating pain than is possible. SAC ¶ 61. Second, the claim misleadingly asserts that SALONPAS® functions by completely blocking or stopping pain or pain receptors. *Id.* Third, the statement implies that SALONPAS® blocks pain receptors or pain, when, at most, SALONPAS® merely blocks sodium channels on the nerve endings which interrupt the conduction of pain signals. *Id.* Fourth, Hisamitsu's advertising implies that its product delivers adequate lidocaine to the skin to completely block or stop pain. *Id.*

Hisamitsu again merely disagrees with Scilex's allegations. By way of limited example, Hisamitsu:

- States that Plaintiff's description of lidocaine's method of action is imprecise, because "lidocaine does indeed block the sodium channels ***within*** the pain receptors." Mem. at 13 (emphasis in original).
- Explains its understanding of how pain receptors and lidocaine functions. *Id*. at 13-14.
- Avers that "[n]umerous scientific publications and articles also use the term 'blocks' without any reference to whether the blockage is 'complete' or 'partial.'" *Id.* at 15.
- Describes the time period in which lidocaine generally begins to affect sensation. *Id*. at 16.
- States that Scilex's allegations about patch detachment is a "mere possibility" rather than a "probability." *Id.* at 16.

Hisamitsu fails to accept Scilex's well-pled arguments as true and, instead, asks the Court to assess scientific literature regarding pain receptors and lidocaine, while also attempting to short-circuit needed discovery on Scilex's allegations that Hisamitsu's product may detach,

thereby inhibiting any—or full—blocking of pain receptors. "Reading the Complaint in the light most favorable to [Scilex], as the Court must do," Scilex "sufficiently alleges that consumers were misled" by Hisamitsu's advertising. *Lona's Lil Eats, LLC v. DoorDash, Inc.,* Case No. 20-cv-06703-TSH, 2021 WL 151978, at *8 (N.D.Cal. Jan. 18, 2021).

**4. "Desensitizes Aggravated Nerves"**

In its Complaint, Scilex alleges that Hisamitsu's claim that its product "desensitizes aggravated nerves" is misleading for at least two reasons. First, this claim asserts that SALONPAS® functions by specifically targeting, desensitizing, and relieving aggravated nerves and/or pain receptors. SAC ¶ 60. However, as alleged in the Complaint, even if SALONPAS® delivered an adequate amount of lidocaine, it still merely functions by blocking sodium channels in the nerve endings and interrupts the conduction of the pain signal. *Id.* Second, Hisamitsu's claim regarding the desensitization of aggravated nerves is misleading because it implies that SALONPAS® delivers adequate lidocaine to the skin to desensitize nerves and/or target pain receptors. *Id.*

In its motion, Hisamitsu engages in a discussion of radiculopathy not tethered to the allegations in Scilex's Complaint. Mem. at 17. Hisamitsu argues that its product does indeed desensitize aggravated nerves, and thus its advertising is true. *Id.* at 17-18 ("Plaintiff's claim fail because Hisamitsu's patches do indeed work by desensitizing nerves."). To make this argument, Hisamitsu cites numerous secondary sources to describe lidocaine's mechanism of action. Hisamitsu also argues that Scilex does not adequately explain why a consumer would understand "desensitizes aggravated nerves" to mean "completely desensitizes aggravated nerves." *Id*. at 19. These assertions are directly contradicted by the allegations of the Complaint and thus cannot provide adequate grounds for a motion to dismiss. These assertions will be the subject matter of substantial discovery and will need to resolved after a fulsome record on the issues are developed. *Animal Legal Def. Fund v. HVFG LLC*, 939 F. Supp. 2d 992, 1002 (N.D. Cal. 2013) ("At this stage in litigation, it suffices that a slogan indicating a product" has a particular characteristic that could be "proved false" or "reasonably interpreted as a statement of objective fact").

**5. Advertising Involving Dr. Bob Arnot**

In its Complaint, Scilex identifies two advertisements involving Dr. Bob Arnot as misleading. In one advertisement, Dr. Arnot states that SALONPAS® has "4% of lidocaine which I'd argue is close to the 5% lidocaine patch you would get with a prescription." SAC ¶ 55. In the second advertisement, Dr. Arnot says that "SALONPAS® followed the same principles used for the Rx (5% Lidocaine) version, making it the same size and using the same hydrogel technology as its Rx cousin. The only change they made was to improve the price so as to make the product more accessible to the general public." *Id.* Scilex claims that these statements are misleading for at least three reasons. First, Dr. Arnot's statements imply that SALONPAS® contains and delivers the same amount of lidocaine to the area of pain as prescription patch products. *Id.* Second, the statements imply that SALONPAS® and prescription patch products are interchangeable. *Id.* Third, the statements imply that SALONPAS® is equivalent in efficacy and results to prescription products. *Id.*

Hisamitsu argues that there is "no support" for making "these inferences" based on Hisamitsu's advertising. Mem. at 20. To make this argument, Hisamitsu recasts the advertising involving Dr. Arnot as "explicitly highlighting" that SALONPAS® contains less lidocaine than prescription patches, without any reference to the advertising content challenged by Scilex. *Id.* Hisamitsu also maintains that Dr. Arnot's reference to consulting with a doctor before switching to Hisamitsu's product "would have clarified any possibility of confusion." *Id.* at 21. Such arguments present factual disputes that need to be resolved through the weighing of the evidence, including documents and fact and expert testimony relating to the claims and consumer perceptions of those claims. The Court should thus reject Hisamitsu's motion to dismiss with respect to this advertising.

**6. State Law Claims**

Hisamitsu argues that "not a single fact appears to support the basis for Count III under the California Unfair Competition Law that any of the commercials is unfair, or unlawful or even that the advertising practices engaged in are fraudulent." *Id.* at 21. In making this argument, Hisamitsu ignores the numerous allegations in Scilex's Complaint detailing how Hisamitsu's advertising is

unfair, false, and misleading. *See, e.g.,* SAC ¶ 61 (identifying statements and explanation for why the statements are false and/or misleading).

Hisamitsu further argues that "Count II which alleges violation of the California False Advertising Law contains no facts or statements that any consumer deception occurred with Plaintiff's products." Mem. at 21. Hisamitsu argues that Scilex has failed to show that a reasonable consumer is likely to be deceived by the false and misleading statements, as required under the UCL and FAL. *See Id.* at 21-22. This argument fails for many of the reasons previously explained. In its Complaint, Scilex alleged with specificity how Hisamitsu, through its advertisements, disseminated untrue and misleading statements concerning professional services, and that Hisamitsu knew, or should have known, that the statements were untrue or misleading. *See* Cal. Bus. & Prof. Code §§ 17500, *et seq*; SAC ¶¶ 52-56, 60, 61, 79-85. Scilex also made detailed allegations showing that Hisamitsu engaged in unlawful, unfair and fraudulent business practices. *See* Cal. Bus. & Prof. Code §§ 17200, *et seq*; SAC ¶¶ 52-56, 60, 61, 86-92. Moreover, the detailed descriptions of Hisamitsu's false and misleading advertisements, in conjunction with the allegations that Hisamitsu has specifically targeted consumers who would otherwise purchase ZTlido® patches, demonstrate the likelihood of deception. *See* SAC ¶¶ 10-12, 26, 52-56, 60.

Additionally, disputes regarding consumer deception are questions of fact ill-suited for resolution on a motion to dismiss. To the extent that Hisamitsu argues that no consumer could be deceived by its advertisements, "th[at] argument goes to the merits of" a plaintiff's claims and is not appropriate at the motion to dismiss stage. *Astiana v. Hain Celestial Grp.*, 783 F.3d 753 at 758 n.3 (9th 2015); *see also Bruton v. Gerber Prods. Co.*, Case No. 12–CV–02412–LHK, 2014 WL 172111, at *11 (N.D. Cal. Jan. 15, 2014) (citing *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125-26 (N.D. Cal. 2010)); *see also Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) ("In applying [the reasonable consumer] test, we are mindful that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss.") (quotations and citations omitted). Where a plaintiff claims that a statement is literally false, moreover, courts presume those statements actually misled consumers and are

material. *See POM Wonderful LLC v. Purely Juice, Inc.*, No. CV-07-023633 CAS (JWJx), 2008 WL 4222045, at *11 (C.D. Cal. July 17, 2008).

Here, Scilex alleges that Hisamitsu engaged in deceptive business practices through its false and misleading advertisements, and therefore applying the reasonable consumer test is a question of fact "not appropriate for decision on a motion to dismiss." *Davis*, 691 F.3d at 1162. Similarly, Scilex alleges that Hisamitsu made false claims in its advertisements, and therefore courts "assume those statements actually mislead consumers." *POM Wonderful*, 2008 WL 4222045, at *11. These well-pled allegations must be allowed to proceed to discovery.

Moreover, Scilex has sufficiently alleged that Hisamitsu's false and misleading advertisements indicate that its SALONPAS® products are superior—or at least equivalent—to prescription lidocaine products. Hisamitsu's statements are actionable when viewed in the context of their marketing as a whole. "[T]he fact that the statement does not name a competing product does not save it," as the "claim must always be analyzed in its full context." *Allergan*, 2017 WL 10526121, at *10-11 (holding that where Defendant claimed elsewhere on its website that its product was "more effective[] than…topical medications," the statement that "95% of cataract surgeons surveyed would prefer [the product]" necessarily implied superiority over other products and was thus actionable.). Here, Hisamitsu states that its product is "MAXIMUM STRENGTH" (*see* SAC ¶ 52), and when viewed in conjunction with its social media posts claiming that its product "is close to the 5% lidocaine patch you would get with a prescription" and represents that its product "us[es] the same size and hydrogel technology as the prescription lidocaine patch" (*see* SAC ¶¶ 55, 56), it necessarily implies that Hisamitsu's OTC lidocaine patches are superior, or at least equivalent, to prescription lidocaine patches, including ZTlido®. Like in *Allergan*, by identifying the specific advertising claims made by Hisamitsu in its Complaint, Scilex has sufficiently alleged its false and misleading advertisement claims against Hisamitsu under California law.

**E. Scilex Adequately Pleads the Remaining Elements of a Lanham Act Claim.**

To the extent that Hisamitsu more generally argues that Scilex fails to state a claim under the Lanham Act, that argument should also be rejected. To state a claim for false advertising,

Scilex must allege: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). Scilex has pled each of these elements more than adequately in its Complaint. Courts typically consider the first element (i.e., whether the defendant made a false and misleading statement) and the second element (i.e., whether the statement deceives or has a tendency to deceive a substantial segment of its audience) together. *See, e.g.*, *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1124 (S.D. Cal. 2018) (addressing "falsity and deception together…is consistent with Ninth Circuit case law").

At the pleading stage, a plaintiff need not provide evidentiary proof of actual or likely deception. *See, e.g.*, *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D. Cal. 2019); *R & A Synergy LLC v. Spanx, Inc.*, Case No. 2:17-cv-09147-SVW-AS, 2019 WL 4390564, at *12 (C.D. Cal. May 1, 2019) ("[T]he Court recognizes that consumer deception is typically proved through consumer surveys, which may be appropriately conducted during the discovery phase."); *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. 08-cv-3931-RS, 2009 WL 55178, at *4 (N.D. Cal. Jan. 7, 2009) (rejecting that a "false advertising claim should be dismissed because it fails to aver evidence of actual or likely deception to purchasers").[8] And when a statement is literally false, deception is presumed at the pleading stage. *See Factory Direct Wholesale, LLC v. Itouchless Housewares & Prods.*, 411 F. Supp. 3d 905, 924 (N.D. Cal. 2019) (quoting *AECOM Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1056 (C.D. Cal. 2018)) ("With regard to the second element, 'where a statement is literally false or the defendant intentionally set out to deceive,…actual deception' is presumed."); *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 976 (S.D. Cal. June 29, 2020). Accordingly, at the pleading stage, to

sufficiently allege falsity and actual or likely deception "the plaintiff need only allege specific misleading statements and explain why they are misleading in accordance with Rule 9(b)." *Clorox Co.*, 398 F. Supp. 3d at 636. Rule 9(b) only requires that a plaintiff allege sufficient facts to "give defendants notice of the particular misconduct and set out what is false or misleading." *Biocell Tech. LLC v. Arthro-7*, No. 12-cv-00516-JVS (RNBx), 2012 WL 12892937, at *11 (C.D. Cal. Nov. 19, 2012) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). As detailed above with respect to Rule 9(b), Scilex alleges that Hisamitsu made five false or misleading statements, identifying not only the claims at issue but also the false or misleading message conveyed by these claims. SAC ¶ 60. Scilex has further alleged that Hisamitsu's false and misleading statements are material and have caused it injury. Specifically, Scilex has alleged that Hisamitsu's advertising has: (i) led consumers to purchase SALONPAS® OTC patches; and (ii) that Scilex has incurred lost sales and diminution of goodwill as a result of Hisamitsu's unlawful conduct. *Id.* ¶¶ 11-12, 59-61. Accordingly, Scilex has alleged each element of its Lanham Act claims.

## V. CONCLUSION

For the foregoing reasons, Hisamitsu's Motion to Dismiss should be denied.

Dated: October 27, 2021

LATHAM & WATKINS LLP

By: /s/ Steven N. Feldman
Steven N. Feldman (SBN 281405)
steve.feldman@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

Jamie L. Wine (SBN 181373)
jamie.wine@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864

David K. Callahan (*pro hac vice*)
david.callahan@lw.com
Matthew W. Walch (*pro hac vice*)
matthew.walch@lw.com
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: +1.312.876.7700
Facsimile: +1.312.993.9767

*Attorneys for Plaintiff*
*Scilex Pharmaceuticals Inc.*