UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SCILEX PHARMACEUTICALS INC.,

Plaintiff,

v.

SANOFI-AVENTIS U.S. LLC, et al.,

Defendants.

Case No. 21-cv-01280-JST

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

Re: ECF Nos. 97, 98

Before the Court are motions to dismiss filed by Defendants Sanofi-Aventis U.S. LLC and Chattem, Inc. (collectively, "Chattem"), ECF No. 97, and Defendant Hisamitsu America, Inc. ("Hisamitsu"), ECF No. 98. The Court will grant the motions in part and deny them in part.

## I.    BACKGROUND

Plaintiff Scilex Pharmaceuticals Inc. ("Scilex") "markets, distributes, and sells the FDA-approved, prescription-strength topical analgesic self-adhesive patch under the brand name ZTlido®." ECF No. 90 ¶ 17. Hisamitsu and Chattem (collectively, "Defendants") manufacture and sell over-the-counter lidocaine pain relief products. *Id.* ¶ 19, 20, 31. Scilex brings this action to address Defendants' "ongoing false and deceptive advertising of their respective over-the-counter ("OTC") lidocaine patch products." *Id.* ¶ 1. Scilex alleges that ZTlido "is often prescribed for off-label uses, including general neuropathic pain, such as back and spinal pain," *id.* ¶ 26, and that Defendants' OTC lidocaine patch products "directly compete with Scilex's ZTlido," *id.* ¶ 69. Scilex contends that "Defendants' false and misleading advertising causes consumers to be misled and to choose Defendants' products over prescription lidocaine patches, including Scilex's ZTlido® product, causing Scilex significant harm." *Id.* ¶ 61.

Scilex filed a second amended complaint ("SAC") against Defendants on September 7,

2021.  ECF No. 90.  The operative complaint brings three causes of action: (1) false and deceptive advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (2) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and (3) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. SAC ¶¶ 68-92.  Hisamitsu and Chattem each filed a motion to dismiss.  ECF Nos. 97, 98.  Scilex filed separate oppositions, ECF Nos. 101, 102, and Defendants replied, ECF Nos. 103, 104.

**II.    JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**III.    LEGAL STANDARD**

A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted).  In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) (citation omitted).

Any claims that are "grounded in fraud . . . must satisfy the traditional plausibility standards of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  The heightened pleading standard of Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they

United States District Court
Northern District of California

can defend against the charge and not just deny that they have done anything wrong. Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quotation marks, alteration, and citations omitted).

## IV.    DISCUSSION

Defendants move to dismiss the SAC on the grounds that Scilex fails to state a cause of action under the Lanham Act, the False Advertising Law, or the Unfair Competition Law.

### A.    Law of the Case Doctrine

Scilex argues that "[t]he prudential doctrine of 'law of the case' should bar the re-litigation" of matters considered and ruled upon by the Court in its prior order granting in part and denying in part Defendants' motion to dismiss Scilex's first amended complaint. ECF No. 86; ECF No. 102 at 8. In its reply, Hisamitsu contends that the law of the case doctrine is inapplicable here, because the Court's prior order "was not a final decree or judgment." ECF No. 98 at 5.

Hisamitsu is correct. The law of the case doctrine does not apply to Scilex's second amended complaint because "[t]he amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits." *Askins v. United States Dep't of Homeland Sec'y*, 899 F.3d 1035, 1043 (9th Cir. 2018). Nonetheless, although the Court is not bound by its prior determinations, it may still choose to decide the "second motion to dismiss in the same way it decided the first." *Id.; see also San Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1046 (S.D. Cal. 2019) (finding that although the law of the case doctrine did not apply to an amended complaint, it nonetheless relied on its reasoning in a prior order because it already "conducted a careful and detailed analysis" on the issue and the factual allegations remained the same). This rule allows district courts "to correct any errors or misunderstandings without having to find its prior decision was 'clearly erroneous.'" *Askins*, 899 F.3d at 1043.

### B.    Lanham Act

A false advertising claim under the Lanham Act has five elements:

> (1) a false statement of fact by the defendant in a commercial

*United States District Court*
*Northern District of California*

3

advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (citation omitted).

Defendants claim that Scilex "fails to allege how or why the [challenged marketing] statements are false or misleading," "that the consumers tend to be deceived," "or that they are material to the consumers." ECF No. 98 at 13; *see also* ECF No. 97 at 13-18, 21-23. Defendants also argue that the phrases "maximum strength" and "fast-acting" are mere puffery, and therefore not actionable under the Lanham Act. ECF No. 97 at 17-18; ECF No. 98 at 15. Scilex responds that the Court should apply its prior reasoning and find that the Rule 9(b) standard is met with regards to the statements "Maximum Strength," "Apply for 8 Hours," "use 1 patch for up to 12 hours," and social media posts featuring Dr. Bob Arnot. ECF No. 82; ECF No. 102 at 15. Scilex also argues that it has amended its complaint to clarify "how statements regarding the effects of lidocaine patches are misleading." ECF No. 101 at 13-14. Finally, Scilex contends that it has adequately alleged that Chattem's "fast-acting" claim is misleading because Defendants' products "require a longer amount of time for delivery than ZTlido." *Id.* at 20.

### 1. "Maximum Strength," "Apply for 8 Hours," "use 1 patch for up to 12 hours," Dr. Bob Arnot posts

"California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing cases). Although courts have occasionally found business practices deceptive at the motion to dismiss stage, they have done so only in "rare situations." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (cleaned up). In

4

United States District Court
Northern District of California

determining whether a statement is misleading, courts ask whether it is "necessary to evaluate additional evidence regarding whether the advertising [is] deceptive." *Williams*, 552 F.3d at 939. For example, in *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995), the Ninth Circuit affirmed the district court's decision to dismiss claims that sweepstake promotional materials were fraudulent, deceptive, and misleading. The court in *Freeman* relied on the fact that "[t]he promotions expressly and repeatedly state the conditions which must be met in order to win," "[t]he qualifying language appears immediately next to the representations it qualifies," and is not "hidden or unreadably small." *Id.* By contrast, the Ninth Circuit in *Williams* found that the appellants plausibly alleged that a reasonable consumer would be deceived by a food label despite clarifying language because "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." 552 F.3d at 939.

### a.      Maximum Strength[1]

In its prior order, the Court rejected Hisamitsu's argument that the phrase "Maximum Strength" is not misleading because there is a disclaimer in small font at the back of the product that states that it is the maximum strength "available without a prescription." The Court held that "the presence of a disclaimer on the [Hisamitsu] product[] does not require dismissal of the fraudulent advertising claims at this stage of the proceedings." ECF No. 86 at 19; *see Madenlian v. Flax USA Inc.*, No. SACV 13-01748 JVS, 2014 WL 7723578, at *3 n.3 (C.D. Cal. Mar. 31, 2014) (holding that the extent to which a disclaimer in small text clarified an ambiguous representation on defendant's packing "is a fact question not suitable for resolution at this stage in

---

[1] The Court took judicial notice of images of the complete packaging of the products in its prior order, ECF No. 86 at 18, and does so again here, although Hisamitsu has placed the materials before the Court without making a request for judicial notice. ECF No. 98-2. The Court also takes judicial notice of Exhibits K and N to the Declaration of Armin Ghiam. ECF Nos. 98-1, 98-2, as these documents are public records, maintained on government agency websites. *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018). As to the balance of the documents, however, Hisamitsu has failed to demonstrate that the documents are appropriate subjects of judicial notice. *Id.* ("reject[ing] the notion that a document is judicially noticeable simply because it appears on a publicly available website, regardless of who maintains the website or the purpose of the document"). The Court was also unable to gain access to the blog posts at the web address provided by Hisamitsu. ECF No. 98-1 at 5.

the litigation"). But Hisamitsu again argues that its disclaimer requires dismissal of any claims arising from the "maximum strength" language. ECF No. 98 at 14. In its motion, Hisamitsu focuses on the fact that there is an asterisk directly after the phrase "Maximum Strength" that leads to a disclaimer on the back of the package. *Id.*

The presence of an asterisk and disclaimer do not automatically require dismissal of claims related to false or misleading advertising. *See Madenlian*, *supra*, 2014 WL 7723578, at *3 n.3. Instead, as one of Hisamitsu's cited cases establishes, courts must consider the "totality of the information made available to the plaintiff." *See In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 922 (N.D. Ill. 2017) (citing *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). The Court already considered the "totality of the information" in its first order and held that "the presence of a disclaimer on the [Hisamitsu] product[] does not require dismissal of the fraudulent advertising claims at this stage of the proceedings." ECF No. 86 at 19. Faced with the same mix of information here as in its prior order, the Court again reaches the same result: Hisamitsu's motion to dismiss is denied regarding claims about the "maximum strength" language.

The two other cases Hisamitsu cites do not change the Court's conclusion. In both cases, courts granted motions to dismiss after finding that the asterisks and corresponding disclaimers confirmed, rather than contradicted, the expectations raised on the front of the packaging. *See Dinan v. SanDisk LLC*, No. 18-cv-5420-BLF, 2020 WL 364277, at *8-9 (N.D. Cal. Jan. 22, 2020) (finding that a reasonable consumer would not "be deceived by the number of bytes in the storage device, given that the packaging tells her exactly how many bytes she will be getting" and the asterisk and disclaimer simply confirmed the expectations raised by the large print); *Moreno v. Vi-Jon*, No. 20cv1446 JM(BGS), 2021 WL 807683, at *6 (S.D. Cal. March 3, 2021) (finding that the asterisk and disclaimer "confirm . . . and clarif[y] the expectation raised on the front panel"). Because the Court cannot determine at this stage of the litigation what expectations are created by the phrase "maximum strength," neither can the Court resolve whether the asterisk and disclaimer "confirm" or "contradict" those expectations.

The Court also rejects Defendants' arguments that the "'maximum strength lidocaine'

claim is no more than mere puffery and not reasonably relied on by consumers." ECF No. 97 at 17; *see also* ECF No. 98 at 15. "Puffing is exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Southland Sod Farms*, 108 F.3d at 1145 (quotation marks omitted). In the Ninth Circuit:

> A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. The common theme that seems to run through cases concerning puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions. Thus, a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery.

*Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (quotation marks and citations omitted). Examples of puffery include representations that "less is more"; that a defendant provides the "best technology" and "better customer service" than its competitors; that a product is "the best" in the world; that a car manufacturer "has its best quality ever"; and that a mortgage broker offers "the best mortgage rate possible for [a borrower's] home. *Fisher v. Monster Beverage Corp.*, No. EDCV 12-02188-VAP, 2013 WL 4804385, at *13 (C.D. Cal. July 9, 2013) (citing cases). By contrast, a factual representation that makes "a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact[,]" is not puffery. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1998).

Although the word "'maximum,' viewed in isolation, [is] the kind of subjective term[] that [is] typical of puffery," it must be viewed in the context of the entire product label. *Vigil v. General Nutrition Corp.*, No. 15-cv-0079 JM (DBH), 2015 WL 2338982, at *8 (S.D. Cal. May 13, 2015). In this case, Scilex alleges that a reasonable consumer could imply from the language on the label that "Defendants' products contain and deliver the maximum amount of lidocaine available in patch form" and that the "products are superior, or at least equivalent, in efficacy and results to prescription-strength lidocaine patch products." ECF No. 90 ¶ 60. These are measurable factual allegations regarding an attribute of importance— the dosage strength and

7

efficacy of the lidocaine in the product. *See In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-00428 MMM (JEMx), 2015 WL 12732461, at *11 (C.D. Cal. May 27, 2015) ("Courts generally hold that 'allegedly false claims that explicitly or implicitly address product attributes of importance to customers and make statements that are measurable by comparative research are not puffery.'") (citing cases); c*f. Silver v. BA Sports Nutrition, LLC*, No. 20-cv-00633-SI, 2020 WL 2992873, at *6 (N.D. Cal. June 4, 2020) (dismissing as puffery 'Superior Hydration" and "More Natural Better Hydration" because "there is nothing specific in the statements . . . that is measurable, capable of verification, or capable of being proved false"). Because "maximum strength" on the product packaging "arguably *could* mislead a reasonable consumer" about important and measurable attributes of the product, the Court cannot find that this language constitutes non-actionable puffery as a matter of law. *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1126 (N.D. Cal. 2010) (emphasis in original).

### b.    "Apply for 8 Hours" and "Use 1 Patch for Up to 12 Hours,"

Scilex alleges that the statements "apply for 8 hours" and "use 1 patch for up to 12 hours" "misleadingly impl[y] that Defendants' products continuously adhere to the body and continuously relieve pain for the specified amount of time." ECF No. 90 ¶ 60. In fact, the complaint alleges, consumers "have experienced considerable problems with [Defendants'] patch adhesion and patch detachment." *Id.* ¶ 65. In its prior order, the Court found that Scilex's allegations regarding these statements were plausible. ECF No. 86 at 19-20. In reaching this conclusion, the Court rejected many of the arguments that Hisamitsu resurrects in its motion to dismiss the SAC. The Court's conclusions have not changed.

First, Hisamitsu argues that Scilex's claims fail because the package does not contain "any representation or statement concerning how long the product adheres to the skin or whether the 'Maximum Strength' of the product remains equally effective for all 8 hours." ECF No. 98 at 19; *see also* ECF No. 86 at 19-20. The Court once again holds that "Scilex has plausibly alleged that the statement 'apply for 8 hours' misleads consumers to believe that the product will adhere to their skin and be effective for eight hours." ECF No. 86 at 20.

Second, Hisamitsu contends that Scilex's allegations regarding patch adhesion is "nothing

*United States District Court*
*Northern District of California*

more than a conclusory assertion without any factual support" and that the "considerable problems" consumers allegedly experience "may be due to factors unrelated to Hisamitsu's products." ECF No. 98 at 20.  Once again, the Court finds that "[w]hile [Scilex] has not yet produced actual evidence of these consumer beliefs, at the motion to dismiss stage, the Court can accept allegations of such facts as sufficient."  ECF No. 86 at 20 (citing *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 636 (N.D. Cal. 2019) (citation omitted)).

Chattem raises a new argument when it argues that the Court should dismiss claims regarding the statement "Use 1 Patch for Up to 12 Hours" because it is a direction for use, not an advertising claim.  ECF No. 97 at 18.  But Chattem does not cite a single case where the court dismissed a claim solely because it involved directions for use.[2]  Instead, Chattem cites cases where courts applied the traditional "reasonable consumer" test and found that the statements were not misleading.  *See Ferring Pharms. Inc. v. Braintree Labs., Inc.,* 38 F. Supp. 3d 169, 179 (D. Mass. 2014) (finding that "no reasonable person reading the advertisement as a whole would fail to understand that, as used in context, 'flexible dosing' refers to 'either a split dose or day-before regimen'"); *Guido v. L'Oreal, USA, Inc.*, Nos. CV 11-1067 CAS (JCx), CV 11-5465 CAS (JCx), 2013 WL 454861, at *9 (C.D. Cal. Feb. 6, 2013) (describing a hair serum as a "leave-in" product "would not lead a reasonable consumer to believe that the product is safe to use around open flames," and there is nothing false or misleading about the statement because the "description affirms nothing about the product's flammability").[3]  After applying this test the Court concludes

_____

[2] The only case Chattem cites that even mentions a distinction between instructions and advertisements is a case from the Central District of Illinois.  *Lincoln Diagnostics*, *Inc. v. Panatrex, Inc.*, No. 07-CV-2077, 2009 WL 3010840 (C.D. Ill. Sep. 16, 2009).  In *Lincoln Diagnostics*, the court granted the plaintiff's motion to correct a false statement in defendant's proposed statement of decision after finding that "claims in a package insert, unrelated to directions for using the products, are in fact advertising and used for the purpose of selling the products." *Id.* at *7.  The court engaged in no further discussion regarding the implications of this finding.  Thus, *Lincoln Diagnostics* simply supports the unremarkable proposition that statements unrelated to product instructions may be considered advertising.

[3] Chattem also argues unpersuasively that these claims should be dismissed because there are no allegations that the back panel instructions contradict statements made on the front of the package.  ECF No. 97 at 19-20.  Although contradictory messages can form the basis for an actionable claim, the absence of such messages does not mean that packaging is not misleading.

9

that a reasonable consumer could understand "apply for 8 hours" and "use up to 12 hours" to mean that the products "continuously adhere to the body and continuously relieve pain for the specified amount of time." ECF No. 90 ¶ 60. Chattem fails to persuade the Court to change its conclusion simply because the statements involve directions for use.

### c.    Dr. Bob Arnot Blog Posts

The Court, in its prior order, denied Hisamitsu's motion to dismiss Scilex's claims regarding two blog posts which featured a doctor comparing Hisamitsu's product with prescription products. ECF No. 86 at 20-21. Hisamitsu raises no new arguments regarding these blog posts, and the factual allegations remain the same. Seeing no reason to depart from its prior conclusions, the Court again denies this aspect of Hisamitsu's motion. *See San Diego Cty. Credit Union*, 360 F. Supp. 3d at 1046 (relying on its reasoning in prior order because it already "conducted a careful and detailed analysis" on the issue and the factual allegations had not changed).

### 2.    Lidocaine's Effects

The SAC alleges that reasonable consumers would be misled by claims regarding the effect and purpose of Defendants' products, including "targets more pain receptors," "desensitizes aggravated nerves," "block pain," and "numbs away pain." ECF No. 90 ¶ 60. Defendants argue that these statements accurately describe the effects of lidocaine and that it is unreasonable to expect the packaging to provide "granular detail" on how their products function. ECF No. 98 at 21; ECF No. 97 at 13-15.

At the outset, the Court rejects Scilex's argument that these claims are inappropriate for a decision at the motion to dismiss stage because they relate to "medical, scientific, or technical matters" for which "expert witnesses will be necessary to unravel truth from falsity." ECF No. 101 at 13 (citing *PAX Water Techs., Inc. v. Medora Corp.*, No. LA CV18-09143 JAK (AGRx), 2019 WL 4390567, at *5 (C.D. Cal. Aug. 5, 2019)). The parties agree that "[l]idocaine is a topical anesthetic that is used to treat pain by depressing sensory receptors in the nerve endings in the skin, which prevents pain signals from reaching the brain." ECF No. 90 ¶ 2; ECF No. 97 at 13; ECF No. 98 at 21. And no one disputes the fact that lidocaine works by "blocking the sodium channels on the nerve endings." ECF No. 90 ¶ 66; ECF No. 97 at 13-14; ECF No. 98 at 21-23.

United States District Court
Northern District of California

United States District Court
Northern District of California

Because the parties do not disagree on these scientific or medical facts regarding lidocaine, there is no need for an expert to "unravel truth from falsity." ECF No. 101 at 13 (citing *PAX Water*, 2019 WL 4390567, at *5).[4]

The Court also rejects Scilex's argument that the Court cannot dismiss the claims regarding lidocaine's effects because "the question of whether a particular statement is false and misleading is a question of fact that is inappropriate for adjudication on a motion to dismiss." ECF No. 101 at 12 (citing *Instant Checkmate, Inc. v. Background Alert, Inc.*, Case No. 3:14-cv-01182-MMA-DHB, 2014 WL 12526275, at *5 (S.D. Cal. Dec. 5, 2014)). Were the actual rule that broad, no motion to dismiss a deceptive advertising claim could ever be granted.[5] In fact, many courts have granted motions to dismiss in deceptive advertising cases when they have determined either that the claims depend on "unreasonable or fanciful interpretations of labels or other advertising," *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882–83 (9th Cir. 2021); *see also Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1231 (9th Cir. 2019) (affirming district court's motion to dismiss because the plaintiff "failed to sufficiently allege that reasonable consumers understand the word 'diet' in Diet Dr Pepper's brand name to promise weight loss, healthy weight management, or other health benefits").

       a.       **"Desensitizes aggravated nerves," "block pain," "numbs away pain," "targets more pain receptors"**

"Under the reasonable consumer standard, [Scilex] must show that members of the public are likely to be deceived" by Defendants' statements regarding the effects of lidocaine. *Williams*, 552 F.3d at 938 (cleaned up). The standard requires more than a mere possibility that Defendants' label "might conceivably be misunderstood by some few consumers viewing it in an unreasonable

---

[4] Although the parties appear to disagree about whether lidocaine blocks sodium channels within pain receptors, ECF No. 102 at 24-25, the Court's conclusion is the same under either theory. Therefore, an expert is not required to determine the veracity of that message.

[5] Scilex accurately quotes *Instant Checkmate*, but that court overreads *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038 (9th Cir. 2008). In *Newcal Industries*, the court held only that it could not decide a motion to dismiss a false or misleading statement claim where determining the false or misleading nature of the statement required considering additional facts beyond those in the complaint. *Id.* at 1053-54.

matter." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Instead, it requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* Hisamitsu argues that there is nothing wrong with consumers assuming that the product "blocks pain receptors . . . because lidocaine does indeed block the sodium channels ***within*** the pain receptors." ECF No. 98 at 21. Scilex contends that this is a factual dispute that cannot be decided at the motion to dismiss stage. ECF No. 102 at 24-25.

In its prior order, the Court found that "because Scilex acknowledges that lidocaine 'is used to treat pain by depressing sensory receptors in the nerve endings in the skin, which prevents pain signals from reaching the brain,' it is unclear how Defendants' statements regarding the effects of lidocaine patches are misleading." ECF No. 86 at 18. The Court therefore dismissed with leave to amend "Scilex's Lanham Act cause of action insofar as it [was] based on these statements regarding the effect of lidocaine." *Id.* Scilex has since "amended its [c]omplaint to clarify and allege the manner in which lidocaine operates and how and why [Defendants'] advertising claims are false and misleading." ECF No. 101 at 13. Specifically, Scilex argues that statements regarding the effects of lidocaine (1) "falsely suggest that Defendants' products block pain receptors or pain when . . . they merely block sodium channels on the nerve endings which interrupts the conduction of the pain signal;" (2) misleadingly assert that the products "function by completely blocking or stopping pain or pain receptors or completely numbing away pain;" and (3) "mischaracterize how the products function and suggest a higher level of efficacy than is possible." ECF No. 90 ¶ 60. If Defendants are correct that lidocaine does "block the sodium channels ***within*** the pain receptors," then Scilex has once again failed to demonstrate "how [Defendants'] statements regarding the effects of lidocaine patches are misleading," ECF No. 86 at 18, and this claim must be dismissed.

Dismissal is still appropriate, however, even if lidocaine does not "block pain receptors," because Scilex has not adequately demonstrated that "a significant portion of the general consuming public" would be misled by these statements. A reasonable consumer at a drug store does not possess the level of sophistication required to assume that "block pain" or "stop pain"

United States District Court
Northern District of California

means that the product "block[s] pain receptors" when "they merely block sodium channels." ECF No. 90 ¶ 60. Instead, a "reasonable consumer would necessarily require more information before they could reasonably" reach conclusions regarding lidocaine's method of treating pain. *Moore*, 4 F.4th at 882. Those who do take the time to locate additional information would discover lidocaine's method of blocking pain and would not assume that the product works in "impossible" ways. *See id.* (holding that "reasonable consumers would necessarily require more information before they could reasonably conclude Trader Joe's label promised a honey that was 100% derived from a single, floral source"); *see also Sugawara v. Pepsico, Inc.*, No. 2:08-cv-01335-MCE-JFM, 2009 WL 1439115, at*3 (E.D. Cal. May 21, 2009) (finding it unlikely that a reasonable consumer would "be deceived into believing that the Product in the instant case contained a fruit that does not exist"). [6]

The Court therefore dismisses Scilex's allegations that Defendants' descriptions of how lidocaine works are misleading. Because Scilex has already had an opportunity to cure this deficiency and has failed to do so, dismissal is with prejudice. *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended.") (citation omitted).

However, Scilex has plausibly alleged that a reasonable consumer could understand the statements "block pain" and "stop pain" to mean that the product will "deliver adequate amounts of lidocaine" to treat pain. The complaint alleges that these statements are misleading because "Defendants' OTC Lidocaine Patches have experienced considerable problems with patch adhesion and patch detachment," which may impact "the rate and extent of drug absorption." ECF No. 90 ¶ 65. How much pain could reasonably be expected to be stopped or blocked is a question of fact that the Court will not determine at this stage of the litigation. *See Reid*, 780 F.3d at 959

---

[6] Even if a reasonable consumer thought that the product treated pain by blocking pain receptors, not by blocking sodium channels, Scilex has not adequately explained why lidocaine's process for treating pain is material to consumers "and likely to influence the[ir] purchasing decision." *Southland Sod Farms*, 108 F.3d at 1139. Thus, this claim also fails the materiality element of the Lanham Act. *See R and A Synergy LLC v. Spanx, Inc.*, No. 17-cv-09147-SVW-AS, 2019 WL 4390564, at *12-13 (C.D. Cal. May 1, 2019) (granting motion to dismiss where claim failed the materiality component of the Lanham Act).

(refusing to determine at the motion to dismiss stage whether a reasonable consumer understands "that a product containing partially hydrogenated vegetable oil necessarily has trans fat"). Therefore, the Court denies the motion to dismiss this category of Scilex's allegations.

### 3.    "Fast Acting" Claim

Chattem argues that the Court should dismiss Scilex's "fast acting" claim as puffery. ECF No. 97 at 17-18. Scilex responds that it has adequately pleaded that the claims are misleading because the claims imply that "Defendants' products provide immediate pain relief." ECF No. 101 at 19. In reality, Scilex alleges, Defendants' products "deliver a lower amount of lidocaine . . . and require a longer amount of time for that delivery" compared to other products. *Id.* Scilex also argues that the "fast acting" statement is not puffery because it relates to the "speed of delivery," which is an important attribute of the product. *Id.* (citing *In re NJOY*, *Inc.* 2015 WL 12732461, at *10).

In determining whether a phrase is puffery, courts do not ask only whether the statement involves an attribute of importance. Courts also assess whether the statement is "specific and measurable," "capable of being proved false," or "reasonably interpreted as a statement of objective fact." *Coastal Abstract Serv., Inc.*, 173 F.3d at 731; *see also In re NJOY, Inc.*, 2015 WL 12732461, at *11 ("Courts generally hold that 'allegedly false claims that explicitly or implicitly address product attributes of importance to customers *and* make statements that are measurable by comparative research are not puffery.'") (citing cases) (emphasis added).

Here, the phrase "fast acting" is subjective, general, and non-quantifiable. *See Palmer v. Apple Inc.*, No. 5:15-cv-05808-RMW, 2016 WL 1535087, at *5 (N.D. Cal. Apr. 15, 2016) ("Statements regarding 'lightening [sic] fast internet and video' are little more than subjective puffery [and] are not actionable."); *Cook, Perkiss, and Liehe, Inc. v. N. Cal. Collective Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (dismissing as puffery alleged misrepresentations that were "merely general in nature"); *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 420 (5th Cir. 2001) (dismissing as puffery the phrase "fast-acting" because it is "little more than [an] optimistic generalization . . ."); *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1121 (10th Cir. 1997) (finding the phrase "moving faster than we thought it would" to be an immaterial statement of corporate

14

optimism). Because the product label's use of the phrase "fast acting" is not quantifiable, the Court rejects as unreasonable the claim that this phrase implies "immediate pain relief." Further, because the phrase "fast acting" is not comparative, the fact that Defendants' patches may not work as fast as other products does not render the statement misleading. The Court therefore grants Chattem's motion to dismiss insofar as it is based on the "fast acting" statement. Because these statements are not misleading as a matter of law, dismissal is with prejudice.

### C.     UCL and FAL Claims

Defendants argue that the UCL and FAL suffer from the same issues as the Lanham Act claims. Namely, the disputed conduct is not likely to deceive a reasonable consumer. ECF Nos. 97 at 13 (when UCL, FAL, and Lanham act claims "are based on the same allegations of false and misleading advertising, the Court need only conduct a single analysis that pertains to all three claims") (cleaned up); 98 at 28 ("Claims under UCL and FAL fail for the Same Reasons that the Lanham Act Claims Fail").

"In the Ninth Circuit, claims of unfair competition and false advertising under [the FAL and the UCL] are substantially congruent to claims made under the Lanham Act." *Kwan Software Eng'g, Inc. v. Foray Techs., LLC*, No. C 12-03762 SI, 2014 WL 572290, at *4 (N.D. Cal. Feb. 11, 2019) (cleaned up); *see also Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) (finding UCL and Lanham Act claims to be "substantially congruent" and subject to the same analysis). Under all three claims, "[p]laintiffs must allege that [d]efendants' representations are likely to deceive a reasonable consumer." *Shaker v. Nature's Path Foods, Inc.*, No. EDCV 13-1138-GW(OPx), 2013 WL 6729802, at *3 (C.D. Cal. Dec. 16, 2013).

Scilex alleges that Defendants' advertising and marketing is likely to deceive a reasonable consumer into believing, among other things, that Defendants' patches offer "the maximum amount of lidocaine available in patch form," "adhere to the skin and provide pain relief for periods of 8 or 12 hours, depending on the product," "deliver adequate amounts of lidocaine" to stop or block pain; and are interchangeable with prescription patch products. SAC ¶¶ 60, 65 (pointing to statements such as "MAX STRENGTH LIDOCAINE;" "max strength pain relief;" "use 1 patch for up to 12 hours;" "apply for 8 hours;" "numb pain away;" "block pain"). As the

15

United States District Court
Northern District of California

Court explained in its analysis of the Lanham Act claims, these allegations do not require any "inferential leaps," and Scilex has adequately alleged at this stage of the litigation that Defendants' advertising and marketing has "the capacity, likelihood or tendency to deceive or confuse the public." *Schaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1139 (2020).

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss Scilex's second amended complaint are granted in part and denied in part.

**IT IS SO ORDERED.**

Dated:  February 24, 2022



JON S. TIGAR
United States District Judge